# Exhibit A

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | | FOR COURT USE ONLY |
|---|---|---|
| Shawn A. Williams (213113)<br>Robbins Geller Rudman & Dowd LLP<br>One Montgomery Street, Suite 1800<br>San Francisco, CA 94104 | | |

TELEPHONE NO.: 415/288-4545   FAX NO. (Optional): 415/288-4534

E-MAIL ADDRESS: shawnw@rgrdlaw.com

ATTORNEY FOR (Name): Plaintiff Anthony Morris

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Francisco

STREET ADDRESS: 400 McAllister Street

MAILING ADDRESS:

CITY AND ZIP CODE: San Francisco, CA 94102

BRANCH NAME: San Francisco

CASE NAME: Morris v. Wells Fargo & Company, et al.

| CIVIL CASE COVER SHEET<br>[X] Unlimited     [ ] Limited<br>(Amount          (Amount<br>demanded        demanded is<br>exceeds $25,000)  $25,000 or less) | Complex Case Designation<br>[ ] Counter    [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | CASE NUMBER:<br><br>JUDGE:<br>DEPT.: |
|---|---|---|

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| **Auto Tort** | **Contract** | **Provisionally Complex Civil Litigation** |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | (Cal. Rules of Court, rules 3.400–3.403) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | [ ] Other collections (09) | [ ] Construction defect (10) |
| **Damage/Wrongful Death) Tort** | [ ] Insurance coverage (18) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Other contract (37) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | **Real Property** | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | [ ] Eminent domain/Inverse | [ ] Insurance coverage claims arising from the |
| [ ] Other PI/PD/WD (23) | condemnation (14) | above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | types (41) |
| [X] Business tort/unfair business practice (07) | [ ] Other real property (26) | **Enforcement of Judgment** |
| [ ] Civil rights (08) | **Unlawful Detainer** | [ ] Enforcement of judgment (20) |
| [ ] Defamation (13) | [ ] Commercial (31) | **Miscellaneous Civil Complaint** |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] RICO (27) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | [ ] Other complaint (not specified above) (42) |
| [ ] Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Partnership and corporate governance (21) |
| **Employment** | [ ] Petition re: arbitration award (11) | [ ] Other petition (not specified above) (43) |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [X] is   [ ] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:

   a. [X] Large number of separately represented parties   d. [X] Large number of witnesses

   b. [X] Extensive motion practice raising difficult or novel   e. [ ] Coordination with related actions pending in one or more
   issues that will be time-consuming to resolve      courts in other counties, states, or countries, or in a federal
   court

   c. [X] Substantial amount of documentary evidence   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [X] monetary  b. [ ] nonmonetary; declaratory or injunctive relief  c. [ ] punitive

4. Number of causes of action (specify): Four

5. This case [X] is   [ ] is not   a class action suit.

6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: May 23, 2023

Shawn A. Williams                                    ▶
_____                      _____
(TYPE OR PRINT NAME)                                 (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev.September 1, 2021]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courts.ca.gov

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET** CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS (SBN 213113)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com

Attorneys for Plaintiff and the Class

[Additional counsel listed in signature block.]

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

| | |
|---|---|
| ANTHONY MORRIS, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　　Plaintiff,<br><br>　　vs.<br><br>WELLS FARGO & COMPANY, WELLS FARGO BANK, N.A., and WELLS FARGO HOME MORTGAGE, INC.,<br><br>　　　　　　　Defendants. | Case No. _CGC-23-606682_<br><br>CLASS ACTION<br><br>COMPLAINT FOR UNJUST ENRICHMENT AND RELATED CLAIMS<br><br>JURY TRIAL DEMANDED |

Plaintiff Anthony Morris ("Plaintiff"), individually and on behalf of all others similarly situated, by his undersigned attorneys, brings this Class Action Complaint against Defendants Wells Fargo & Company, Wells Fargo Bank, N.A., and Wells Fargo Home Mortgage, Inc. (collectively, "Wells Fargo," the "Company," or "Defendants") based on personal knowledge as to himself and upon information and belief as to all other matters based on the investigation of counsel.

**NATURE OF THE ACTION**

1.　　This is a case about Wells Fargo's failure to return to its borrowers massive amounts of money Wells Fargo made after it wrongly charged borrowers rate lock extension fees

("RLEFs") on the borrowers' respective Wells Fargo mortgage applications.  RLEFs extend the period in which a quoted mortgage interest rate is "locked in" against potential market fluctuations.

2.      Wells Fargo has effectively admitted that it wrongfully charged the borrowers at issue, including Plaintiff, RLEFs on their Wells Fargo mortgage applications.

3.      Beginning in late 2020, Wells Fargo tried to assuage these borrowers by returning the wrongfully charged RLEFs along with the interest those borrowers paid on the fees as part of their respective mortgages, as well as a nominal amount supposedly to "compensate [borrowers] for the time [they] did not have these funds."  The amounts distributed do not properly compensate borrowers for Wells Fargo's misappropriation and use of these funds for up to 18 years.

4.      In reality, Wells Fargo enjoyed a return of investment on these funds over the time period at issue vastly in excess of the amounts returned to borrowers.

5.      It is reasonably believed that Wells Fargo's actual return on its investment of these funds above the nominal amounts returned will be determined to be in the ***billions of dollars***.

6.      Thus, Wells Fargo's minimal payments to borrowers, including Plaintiff, are wholly inadequate, inequitable, and in reality do nothing but try to cover up the enormous profits that Wells Fargo obtained from its nearly two-decades-long practice of wrongfully charging, withholding, and reinvesting the RLEFs at issue.

7.      Wells Fargo's loan documents during the relevant time period strictly limit refunds on many RLEFs, stating "You will ***not*** be entitled to a refund or credit for this fee at any time (whether or not your loan is ever approved or closed) ***for any reason other than <u>willful misconduct</u>*** on the part of [Wells Fargo]."[1]

8.      Nevertheless, Wells Fargo issued these refunds to borrowers on its own initiative, without any initiating request from or other interaction with the borrowers, and expressly disclaimed that the Company had done so pursuant to any settlement or direction of a government organization.

---

[1]    Emphasis added throughout.

9.      This case seeks full disgorgement from Wells Fargo of the funds the Company wrongfully made as a result of its illegal RLEF charges and its failure to return in full the money it made on those funds over the course of almost two decades.  This class action asserts claims for unjust enrichment, money had and received, conversion, and civil theft.

10.     Plaintiff and all members of the proposed Class (defined below) were all: (a) improperly charged an RLEF by Wells Fargo; (b) sent a refund of the improperly charged RLEF and a nominal amount purportedly to compensate the borrowers for the time the borrowers did not have such funds; and (c) were not fully paid the returns on investment that Wells Fargo reaped from its wrongdoing.

## PARTIES

11.     Plaintiff Anthony Morris is a natural person and a resident and citizen of the State of New York.

12.     Defendant Wells Fargo & Company is a Delaware corporation and a citizen of California, headquartered at 420 Montgomery Street, San Francisco, California 94104.  Wells Fargo & Company conducts business throughout California and the United States.  According to Wells Fargo & Company, it is:

> a leading financial services company with approximately $1.9 trillion in assets. In the U.S., it serves one in three households and more than 10% of small businesses, and is a leading middle-market banking provider. Wells Fargo works to create positive social impact in the communities it serves by supporting housing affordability, small business growth, financial health, and a low-carbon economy.[2]

13.     Defendant Wells Fargo Bank, N.A. is a national banking association and a citizen of South Dakota, headquartered at 101 North Phillips Avenue, Sioux Falls, South Dakota 57104. Wells Fargo Bank, N.A. has hundreds of banking locations throughout California and conducts business throughout California and the United States.

14.     Defendant Wells Fargo Home Mortgage, Inc. ("Wells Fargo Home Mortgage") is a Delaware corporation with its headquarters at 1 Home Campus, Des Moines, Iowa 50328.  Wells

---

[2]  *About Wells Fargo*, WELLS FARGO JOBS,  https://www.wellsfargojobs.com/en/life-at-wells-fargo/about-us/ (last visited Feb. 15, 2023).

1  Fargo Home Mortgage is held out as a division of Defendant Wells Fargo Bank, N.A. and also
2  does business throughout the State of California and the United States.  Wells Fargo Home
3  Mortgage is, as its name implies, a mortgage lender, operating approximately 725 mortgage offices
4  nationwide (including in California), and originating approximately $300 billion worth of loans
5  per year.

6  **JURISDICTION AND VENUE**

7  15.  This Court has jurisdiction over the causes of action asserted herein pursuant to the
8  California Constitution, art. VI, §10, because this case is a cause not given by statute to other trial
9  courts.

10  16.  This Court has jurisdiction over Defendants because Wells Fargo & Company is a
11  citizen of California and has its principal place of business at 420 Montgomery Street, San
12  Francisco, California 94104, and, during the relevant time period, Wells Fargo Bank, N.A. and
13  Wells Fargo Home Mortgage did sufficient business in, had sufficient contacts with, and
14  intentionally availed themselves of the laws and markets of California through the promotion, sale,
15  marketing, distribution, and operation of their banking and mortgage products and services as to
16  render exercise of jurisdiction by California courts permissible.

17  17.  Venue is proper in this Court because Wells Fargo & Company resides in this
18  county and the conduct at issue took place and had an effect in this county.

19  **GENERAL ALLEGATIONS**

20  18.  At the time of application, and because weeks and sometimes months separate
21  applications from closing, original and refinancing mortgage-lending applicants receive a quoted
22  interest rate from lenders that is "locked in" for a set period.  To protect against the possibility that
23  a mortgage will fail to close within that period, borrowers can elect to extend the lock period by
24  paying an RLEF, which is usually calculated as a function of a percentage of the proposed loan's
25  principal balance and the length of the extension.

26  19.  Who pays the RLEF is a matter of lender policy.  In general, when the delay is the
27  fault of the lender (*e.g.*, Wells Fargo), that lender typically pays the RLEF.  When the borrower is
28  at fault, however, the cost of the extension is typically borne by the borrower.

COMPLAINT FOR UNJUST ENRICHMENT AND RELATED CLAIMS                                    - 4 -

20.     As a practical matter, borrowers generally pay any RLEFs for which they are responsible through an increase in the principal amount of the underlying loan by the RLEF amount at closing.

21.     Like most other national banks with mortgage-lending practices, Wells Fargo has and had during the relevant time period a policy that purports to charge borrowers for RLEFs only when the borrowers are at fault for delay and absorbs those fees itself (or simply does not charge the borrower such fees) when the fault is Wells Fargo's.  Wells Fargo did not deny this policy in a Consent Order with the Office of the Comptroller of the Currency.[3]

22.     In addition, Wells Fargo's policy is and was at all relevant times to limit its obligation to refund RLEFs to its borrowers **only** in the case of Wells Fargo's "**willful misconduct.**"  On information and belief, Wells Fargo's loan documents during the relevant time period strictly limit refunds on many RLEFs, stating "You will **not** be entitled to a refund or credit for this fee at any time (whether or not your loan is ever approved or closed) **for any reason other than willful misconduct** on the part of [Wells Fargo]."

23.     Because Wells Fargo refunded RLEFs to Plaintiff and Class members beginning in or around 2020, it has effectively admitted that it engaged in willful misconduct by charging those RLEFs in the first place.

24.     Thus, until Wells Fargo sent RLEF refund checks to Plaintiff and other Class members, neither Plaintiff nor any other Class member would have been on notice that Wells Fargo had engaged in willful misconduct by charging them RLEFs and by holding onto proceeds obtained by Wells Fargo as a result of its decision to wrongfully charge those RLEFs.

---

[3]     *See* Consent Order at ¶7, *In re Wells Fargo Bank, N.A.*, No. AA-EC-2018-15 (U.S. Dep't Treasury OCC Apr. 20, 2018) ("Beginning in at least September 2013 and continuing through March 2017, it was the Bank's policy that if (a) a mortgage loan application did not close within its initial interest rate lock period in circumstances where the Bank was responsible for the failure of the loan to close and (b) the customer chose to extend the interest rate lock period, the extension fee was to be charged to the Bank, and not the customer."), https://www.occ.gov/static/enforcement-actions/ea2018-025.pdf.

25.     Notwithstanding the refunds distributed by Wells Fargo beginning in or around 2020, Wells Fargo has never paid nor disgorged to its victims the full profits Wells Fargo obtained on the wrongfully charged RLEFs during this several years-long scheme.

26.     Wells Fargo must be ordered to do so now.

## PLAINTIFF'S EXPERIENCES

27.     In or around early 2005, Plaintiff applied for a home mortgage with Wells Fargo.

28.     Plaintiff closed on his Wells Fargo mortgage on or around August 2005.

29.     Wells Fargo charged Plaintiff an RLEF in the amount of $4,087.13 in connection with his mortgage.

30.     Within the last two years, and without any initiating contact or request by Plaintiff, Wells Fargo mailed Plaintiff a letter enclosing a purported refund check for the RLEF he was wrongfully charged by Wells Fargo in connection with his mortgage.

31.     Wells Fargo did not pay Plaintiff, but instead retained for itself, the full profits Wells Fargo obtained on the RLEF it wrongfully charged him.

## CLASS ACTION ALLEGATIONS

32.     Plaintiff brings this action pursuant to California Code of Civil Procedure §382 ("CCP §382") and Rule 3.764 of the California Rules of Court, on behalf of himself and a class of other similarly situated individuals ("Nationwide Class"), as defined specifically below:

**All persons in the United States and its Territories who closed or refinanced a mortgage loan with Wells Fargo and were sent correspondence from Wells Fargo refunding an RLEF.**

33.     In addition to the Nationwide Class, and pursuant to the California Code of Civil Procedure and/or the respective state statutes, Plaintiff seeks to represent all members of the following Subclass(es) of the Nationwide Class, as well as any subclasses or issue classes as Plaintiff may propose and/or this Court may designate at the time of class certification ("Subclasses"), with respect to claims under state law:

**All persons in California, Illinois, and New York who closed or refinanced a mortgage loan with Wells Fargo and were sent correspondence from Wells Fargo refunding an RLEF.[4]**

34.     Excluded from the Class are Defendants, their employees, officers, directors, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliated companies.

35.     Certification of Plaintiff's claims for Class-wide treatment is appropriate because Plaintiff can prove the elements of their claims on a Class-wide basis using the same evidence as they would use to prove those elements in individual actions alleging the same claims.

### Numerosity

36.     The members of the Class are so numerous that individual joinder is impracticable. Plaintiff alleges, upon information and belief, that Defendants unlawfully took and kept monies rightfully belonging to thousands or more Class members, including Plaintiff.  The precise number of Class members is unknown to Plaintiff.  However, the true number of Class members to whom Wells Fargo refunded unlawfully charged RLEFs but did not refund the full amount of profit Wells Fargo made on those misappropriated funds is known by Defendants, and thus Class members may be notified of the pendency of this action by first class mail, electronic mail, and/or published notice, pursuant to Rule 3.766 of the California Rules of Court.

### Typicality

37.     Plaintiff's claims are typical of the claims of each of the Class members, as all Class members were and are similarly affected, and their claims arise from the same or substantially similar conduct.

### Adequacy of Representation

38.     Plaintiff is committed to prosecuting the action, will fairly and adequately protect the interests of Class members, and have retained counsel competent and highly experienced in consumer class action litigation.  Plaintiff has no interests that are antagonistic to the interests of the Class, and Defendants have no defenses unique to Plaintiff.  Plaintiff and his counsel are

---

[4]     Unless otherwise noted, the Nationwide Class, California Class, Illinois Class, and New York Class are collectively referred to as the "Class."

1   committed to vigorously prosecuting this action on behalf of the members of the Class, and they

2   have the resources to do so.  Neither Plaintiff nor their counsel have any interest adverse to the

3   interests of the other members of the Class.

4   **Commonality/Predominance**

5   39.     There are questions of law and fact that are common to the Class.  These common

6   questions predominate over any questions affecting only individual Class members.  The questions

7   of law and fact common to the Class include, but are not limited to:

8                   (a)     Whether Defendants unlawfully took and retained monies belonging to

9   Plaintiff and Class members;

10                  (b)     whether Defendants should have, but did not, refund all profits obtained by

11  Defendants on monies unlawfully taken and retained;

12                  (c)     whether Defendants are liable to Plaintiff and Class members for unjust

13  enrichment;

14                  (d)     whether Defendants are liable to Plaintiff and Class members for money

15  had and received;

16                  (e)     whether Defendants are liable to Plaintiff and Class members for

17  conversion;

18                  (f)     whether Defendants' conduct violates CAL. PENAL CODE §496;

19                  (g)     whether Plaintiff and Class members are entitled to disgorgement from

20  Defendants and the amount of such restitution and disgorgement; and

21                  (h)     whether Plaintiff and Class members are entitled to damages, including

22  treble damages, and the amount of such damages.

23  **Superiority**

24  40.     A class action is superior to other available methods for the fair and efficient

25  adjudication of the rights of the Class members.  The joinder of individual Class members is

26  impracticable because of the vast number of Class members.

27  41.     In comparison to piecemeal litigation, class action litigation presents far fewer

28  management difficulties, conserves the resources of both the judiciary and the parties far better,

1   and protects the rights of each Class member far more effectively.  The benefits to the legitimate

2   interests of the parties, the Court, and the public resulting from class action litigation substantially

3   outweigh the expenses, burdens, inconsistencies, economic infeasibility, and inefficiencies of

4   individualized litigation.  Class adjudication is superior to other alternatives.  Class treatment will

5   also avoid the substantial risk of inconsistent factual and legal determinations on the many issues

6   in this lawsuit.

7                    **CHOICE OF LAW FOR NATIONWIDE CLAIMS**

8          42.    The state of California has a significant interest in regulating the conduct of

9   businesses operating within its borders.  California seeks to protect the rights and interests of all

10  California residents and citizens of the United States against wrongdoing by a company

11  headquartered and doing business in California.  California has a greater interest in the nationwide

12  claims of Plaintiff and members of the Nationwide Class than any other state and is most intimately

13  concerned with the claims and outcome of this litigation.

14         43.    The corporate headquarters of Wells Fargo & Company, located in San Francisco,

15  California, is the "nerve center" of all Wells Fargo business activities—the place where its high-

16  level officers direct, control, and coordinate the Company's activities, including its major policy,

17  financial, and legal decisions, such as its decisions whether to charge and ultimately partially

18  refund RLEFs.

19         44.    Wells Fargo's acts of charging and ultimately issuing inadequate refunds of the

20  RLEFs at issue and the returns generated on those funds, and the corporate decisions surrounding

21  such acts, were made from and in California and/or under the oversight of the Company's corporate

22  headquarters in California.

23         45.    As the parent company to Wells Fargo Bank, N.A. and Wells Fargo Home

24  Mortgage, Wells Fargo & Company reports to the U.S. Securities and Exchange Commission in

25  its consolidated financial statements all income generated by its subsidiaries.  As of December 31,

26

27

28

1  2021, Wells Fargo & Company reported that "Wells Fargo Bank, N.A. [had] assets of $1.8 trillion,

2  or 91% of the Company's assets."[5]

3      46.     Wells Fargo's unjust enrichment at Plaintiff's and Nationwide Class members'

4  expense emanated from California, and all ill-gotten gains at issue in this lawsuit reside with Wells

5  Fargo in California.

6      47.     Application of California law to the Nationwide Class with respect to Plaintiff's

7  and Class members' claims is neither arbitrary nor fundamentally unfair because California has a

8  significant aggregation of contacts that create a state interest in the claims of Plaintiff and the

9  Nationwide Class.

10      48.     Under California's choice of law principles, which are applicable to this action, the

11  common law of California applies to the nationwide common law claims of all Nationwide Class

12  members.   Additionally, given California's significant interest in regulating the conduct of

13  businesses operating within its borders, California's common and statutory law may be applied to

14  non-resident consumer Plaintiff as against this resident-defendant, Wells Fargo & Company.

15                    **PLAINTIFF'S DISCOVERY OF**
                    **WELLS FARGO'S WILLFUL MISCONDUCT**
16

17      49.     Plaintiff's causes of action below are predicated on Wells Fargo's willful

18  misconduct which resulted in improper payment of RLEFs by Plaintiff.

19      50.     Wells Fargo represented to Plaintiff in its form documents and on Plaintiff's

20  settlement statement that Plaintiff owed Wells Fargo payment for an RLEF.

21      51.     Plaintiff accepted that representation and paid an RLEF to Wells Fargo in reliance

22  on the representation that such a payment was properly owing.

23      52.     Wells Fargo admitted that this representation was false and intentional when it

24  refunded that RLEF with interest on its own initiative, without any initiating interaction with the

25

26

27  _____
    [5]   Wells Fargo & Company, Annual Report (Form 10-K) (Dec. 31, 2021) at 1,
    https://www.sec.gov/ix?doc=/Archives/edgar/data/0000072971/000007297122000096/wfc-2021
28  1231.htm.

borrower, and not pursuant to any settlement agreement nor at the direction of any government organization.

53.     Wells Fargo similarly admitted that this representation was false and intentional when it refunded RLEFs that, on information and belief, it had specifically acknowledged would only be refundable in the event of "*willful misconduct* on the part of [Wells Fargo]"—in form documents **Wells Fargo itself authored**.

54.     Wells Fargo also made knowing misrepresentations of the length of time it would take to process each application on its form documents.

55.     These causes of action predicated on willful misconduct are particularly suitable for adjudication on a Class-wide basis because, unlike many such claims, virtually all evidence of Wells Fargo's willful misconduct is common across all class members. For example:

(a)     Wells Fargo made form representations in a virtually identical manner to Plaintiff and each Class member that they owed Wells Fargo payment for an RLEF in form documents and on their settlement statement at closing;

(b)     Plaintiff and each Class member paid an RLEF to Wells Fargo which they would not have paid but for that common misrepresentation, meaning Plaintiff can prove reliance by common evidence; and

(c)     Wells Fargo made form admissions in a virtually identical manner to Plaintiff and each Class member when it sent virtually identical refund letters to Plaintiff and each Class member.

56.     Plaintiff and Class members who closed loans with Wells Fargo prior to September 16, 2013, did not and could not discover Wells Fargo's willful misconduct until receiving their individual refund letters.

57.     On April 20, 2018, Wells Fargo entered into consent orders with the Office of the Comptroller of the Currency ("OCC") and the Consumer Financial Protection Bureau ("CFPB") emerging from, among other things, Wells Fargo's wrongful practices related to charging RLEFs.

58.     The OCC and CFPB investigations and consent orders explicitly limited their investigation of Wells Fargo's RLEF practices to a window beginning September 16, 2013, and

ending February 28, 2017, despite covering broader timeframes with respect to Wells Fargo's other improper practices.

59.     A reasonable person reading those reports would assume that Wells Fargo's RLEF misconduct extended no earlier than September 16, 2013.

60.     No other publicly available information at the time suggested that Wells Fargo's RLEF misconduct extended prior to September 16, 2013.  If it had, OCC and CFPB likely would have investigated more broadly.

61.     Indeed, on Wells Fargo's own website, Wells Fargo states:

> On October 4, 2017, Wells Fargo announced that after an internal review, we determined that our mortgage rate lock extension fee policy was, at times, inconsistently applied ***during the period of September 16, 2013 through February 28, 2017***.  As a result, some borrowers were charged fees for rate lock extensions when Wells Fargo was primarily responsible for the delays that caused the need for the extensions.

62.     Accordingly, neither Plaintiff nor any Class member would have been put on notice that Wells Fargo wrongfully charged them RLEFs prior to September 16, 2013.

63.     Plaintiff only discovered that Wells Fargo's RLEF misconduct began significantly earlier when he received refunds for RLEFs he had paid prior to September 16, 2013—a refund they had never requested from Wells Fargo.

## FIRST CAUSE OF ACTION

### Unjust Enrichment
**(On Behalf of Plaintiff and the Nationwide and California Classes Under California Law Against All Defendants)**

64.     Plaintiff repeats and incorporates by reference the allegations above.

65.     Plaintiff brings this claim on behalf of himself and the Nationwide Class.  In the alternative, Plaintiff brings this claim on behalf of the Subclasses under the law of each state in which Plaintiff and Class members who closed or refinanced a mortgage loan with Wells Fargo and were sent correspondence from Wells Fargo refunding an RLEF or increased costs resulting from an RLEF being assessed.

66.     Plaintiff and Class members conferred a monetary benefit on Defendants. Defendants received and retained money belonging to Plaintiff and Class members directly through payments of unauthorized and improper RLEFs on their mortgage applications.

67.     Defendants had knowledge of the benefits conferred on them by Plaintiff and the Class members.

68.     Defendants knowingly and willfully charged unauthorized and unwarranted RLEFs but has neither refunded nor disgorged to Plaintiff and Class members all profits Defendants reaped from retaining RLEFs paid by Plaintiff and Class members.

69.     Defendants' conscious and knowing misconduct is evidenced by at least two facts. **First**, in refunding Plaintiff and Class members the RLEFs at issue, Defendants admitted to Wells Fargo's knowing misconduct.  On information and belief, Defendants' mortgage loan documents during the Class Period expressly limit refunds of many RLEFs only to situations where there has been "***willful misconduct*** on the part of [Wells Fargo]."  That RLEF refund is precisely what Defendants' customers received beginning at least in late 2020.  ***Second***, Defendants made knowing misrepresentations of the length of time it would take to process each application on its form application documents.  Each of the foregoing facts alone strongly support the inference that Defendants committed willful misconduct related to each refunded RLEF.

70.     As a result of Defendants' conduct, Plaintiff and Class members are entitled to restitution and disgorgement of Defendants' ill-gotten gains.[6]

71.     Although Defendants have refunded the principal amount of RLEFs wrongfully charged Plaintiff and Class members, along with a nominal payment for loss of use, Defendants have consciously retained for itself billions of dollars it earned and received from its retention of these misappropriated funds.  Those profits rightfully and as a matter of equity belong to Plaintiff and Class members from whom Defendants misappropriated those funds.

---

[6]    "The elementary rule of restitution is that if you take my money and make money with it, your profit belongs to me." *Nickel v. Bank of Am. Nat'l Tr. & Sav. Ass'n*, 290 F.3d 1134, 1138 (9th Cir. 2002) (citing RESTATEMENT (FIRST) OF RESTITUTION §1 (Am. Law. Inst. 1937)).

72.     Under principles of equity and good conscience, Defendants should not be permitted to retain the money belonging to Plaintiff and Class members, nor should Defendants be permitted to retain profits they earned on money belonging to Plaintiff and Class members.

73.     Defendants should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class members all unlawful or inequitable proceeds that Defendants received.

74.     Plaintiff and Class members have no adequate remedy at law.

75.     A constructive trust should be imposed on all unlawful or inequitable sums received by Defendants traceable to Plaintiff and Class members.

**SECOND CAUSE OF ACTION**

**Money Had and Received**

76.     Plaintiff repeats and incorporates by reference the allegations above.

77.     Plaintiff brings this claim on behalf of himself and the Nationwide Class.  In the alternative, Plaintiff brings this claim on behalf of the Subclasses under the law of each state in which Plaintiff and Class members who closed or refinanced a mortgage loan with Wells Fargo and were sent correspondence from Wells Fargo refunding an RLEF or increased costs resulting from an RLEF being assessed.

78.     Defendants are indebted to Plaintiff and Class members for a certain sum which Defendants received and which Plaintiff and Class members are entitled to use of.

79.     Specifically, Defendants are indebted to Plaintiff and Class members for the entire amount of profits Defendants earned on unauthorized and unwarranted RLEFs.

80.     Because Defendants engaged in willful misconduct in charging Plaintiff and Nationwide Class members for RLEFs, Plaintiff and Class members paid RLEFs to Defendants pursuant to an agreement that is void for illegality.

81.     Under principles of equity and good conscience, Defendants should not be permitted to retain the money belonging to Plaintiff and Class members, nor should Defendants be permitted to retain profits they earned on money they obtained through willful misconduct, which rightfully belongs to Plaintiff and Class members.

82.     Defendants should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class members all unlawful or inequitable proceeds that Defendants received pursuant to an illegal agreement.

83.     Plaintiff and Class members have no adequate remedy at law.

84.     A constructive trust should be imposed on all unlawful or inequitable sums received by Defendants traceable to Plaintiff and Class members.

**THIRD CAUSE OF ACTION**

**Conversion**

85.     Plaintiff repeats and incorporates by reference the allegations above.

86.     Plaintiff brings this claim on behalf of himself and the Nationwide Class.  In the alternative, Plaintiff brings this claim on behalf of the Subclasses under the law of each state in which Plaintiff and Class members who closed or refinanced a mortgage loan with Wells Fargo and were sent correspondence from Wells Fargo refunding an RLEF or increased costs resulting from an RLEF being assessed.

87.     Defendants wrongfully exercised—and continue to exercise—dominion over property (*i.e.*, money) of Plaintiff and Class members, *to wit*: all profits reaped on improperly charged RLEFs.

88.     Plaintiff and Class members have full and complete ownership or right to possession of all profits reaped on improperly charged RLEFs.

89.     Defendants converted the property of Plaintiff and Class members for their own benefit by a wrongful act, *to wit*: charging unauthorized and unwarranted RLEFs and retaining all profits reaped on illegally charged RLEFs.

90.     As a consequence of Defendants' wrongful conversion of Plaintiff's and Class members' property rights, Plaintiff and Nationwide Class members have suffered damages.

91.     Defendants are strictly liable to Plaintiff and Class members for their wrongful conversion.

## FOURTH CAUSE OF ACTION

### Civil Theft /Receiving Stolen Property
#### CAL. PENAL CODE §496

92.     Plaintiff repeats and incorporates by reference the allegations above.

93.     Plaintiff brings this claim on behalf of himself and the Nationwide Class.  In the alternative, Plaintiff brings this claim on behalf of the Subclasses under California law.  Under CAL. PENAL CODE §496(a),

> Every person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained [is guilty of a crime].

* * *

> A principal in the actual theft of the property may be convicted pursuant to this section.

94.     Under CAL. PENAL CODE §496(c): "Any person who has been injured by a violation of subdivision (a) . . . may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees."

95.     Defendants actually stole and thereafter received property (*i.e.*, RLEFs) belonging to Plaintiff and Nationwide and California Class members constituting theft.

96.     Defendants knew that property belonging to Plaintiff and Nationwide and California Class members was stolen or obtained in a manner constituting theft or extortion and have withheld such property from Plaintiff and Nationwide and California Class members in the form of all profits obtained from illegally charged RLEFs.

97.     Defendants' knowledge of Wells Fargo's theft is evidenced by, among other things, Defendants' own mortgage loan documents during the Class Period, which, on information and belief, expressly limit refunds of many RLEFs only to situations where there has been "willful misconduct on the part of [Wells Fargo]," and Defendants' knowing misrepresentations of the length of time it would take to process each application on its form application documents.  Each of the foregoing facts alone strongly supports the inference that Defendants knowingly stole

RLEFs from Plaintiff and Class members and have knowingly withheld profits obtained from illegally charged RLEFs.

98.     As a consequence of Defendants' wrongful theft of Plaintiff's and Nationwide and Class members' property, Plaintiff and Class members have suffered damages.

99.     Defendants are liable for treble damages suffered by Plaintiff and Nationwide and Class members, costs of suit, and Plaintiff's reasonable attorney's fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the Class, respectfully requests that this Court enter an Order:

**A.**     Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as a representative of the Class, and appointing his counsel as Class Counsel;

**B.**     Awarding restitution and disgorgement to Plaintiff and Class members in an amount to be determined at trial;

**C.**     Awarding nominal, compensatory, punitive, and treble damages to Plaintiff and Class members in an amount to be determined at trial;

**D.**     Awarding Plaintiff and Class members their costs-of-suit, reasonable litigation expenses, and attorneys' fees, including mandatory attorneys' fees under CAL. PENAL CODE §496(c),and any other applicable statutes or under common law;

**E.**     Awarding Plaintiff and Class members pre- and post-judgment interest, to the extent allowable; and

**F.**     Awarding such other and further relief as equity and justice may require.

**JURY TRIAL DEMAND**

Plaintiff demands a trial by jury for all issues so triable.

DATED: May 23, 2023                    ROBBINS GELLER RUDMAN & DOWD LLP
                                       SHAWN A. WILLIAMS (SBN 213113)


                                        *s/ Shawn A. Williams*
                                       Shawn A. Williams

Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com

SELENDY GAY ELSBERG PLLC
SEAN BALDWIN*
JORDAN GOLDSTEIN*
ZACHARY SMITH*
1290 Avenue of the Americas
New York, NY  10104
Telephone:  212/390-9000
212/390-9399 (fax)
sbaldwin@selendygay.com
jgoldstein@selendygay.com
zsmith@selendygay.com

ROBBINS GELLER RUDMAN & DOWD LLP
STUART A. DAVIDSON*
BRADLEY M. BEALL*
225 N.E. Mizner Boulevard, Suite 720
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
sdavidson@rgrdlaw.com
bbeall@rgrdlaw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ROBBINS GELLER RUDMAN & DOWD LLP
CHAD JOHNSON*
NOAM MANDEL*
DESIREE CUMMINGS*
JONATHAN ZWEIG*
420 Lexington Avenue, Suite 1832
New York, NY  10170
Telephone:  212/432-5100
ChadJ@rgrdlaw.com
Noam@rgrdlaw.com
DCummings@rgrdlaw.com
JZweig@rgrdlaw.com

SEEGER WEISS LLP
CHRISTOPHER AYERS*
55 Challenger Road
Ridgefield Park, NJ 07660
Telephone:  973/639-9100
973/679-8656 (fax)
cayers@segerweiss.com

Attorneys for Plaintiff and the Class

* *Pro hac vice* forthcoming

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

<i>FOR COURT USE ONLY<br/>(SOLO PARA USO DE LA CORTE)</i>

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
WELLS FARGO & COMPANY, WELLS FARGO BANK, N.A., and WELLS FARGO HOME MORTGAGE, INC.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
ANTHONY MORRIS, Individually and on Behalf of All Others Similarly Situated,

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

   You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

   There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

   *Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

   *Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br/>*(El nombre y dirección de la corte es):* Superior Court San Francisco County<br/><br/>400 McAllister Street, San Francisco, CA 94102 | CASE NUMBER:<br/>*(Número del Caso):*  CGC-23-606682 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Shawn A. Williams, Post Montgomery Center, One Montgomery Street, Suite 1800, San Francisco, CA  94104, Tel.: 415/288-4545

| | | | |
|---|---|---|---|
| DATE:<br/>*(Fecha)* | | Clerk, by<br/>*(Secretario)* | , Deputy<br/>*(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario  Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

    under: ☐ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
            ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
            ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
            ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

**Page 1 of 1**

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br/>Judicial Council of California<br/>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br/>*www.courts.ca.gov* |

**For your protection and privacy, please press the Clear This Form button after you have printed the form.**

Print this form    Save this form    Clear this form

1  ROBBINS GELLER RUDMAN
       & DOWD LLP
2  SHAWN A. WILLIAMS (SBN 213113)
3  Post Montgomery Center
   One Montgomery Street, Suite 1800
4  San Francisco, CA  94104
   Telephone:  415/288-4545
5  415/288-4534 (fax)
   shawnw@rgrdlaw.com
6
   Attorneys for Plaintiff and the Class
7
   [Additional counsel listed in signature block.]
8

9                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                           COUNTY OF SAN FRANCISCO

11  ANTHONY MORRIS, Individually and on        )    **Case No.** _____
    Behalf of All Others Similarly Situated,   )
12                                             )    <u>CLASS ACTION</u>
                             Plaintiff,        )
13                                             )    NOTICE OF POSTING JURY FEES
14         vs.                                 )
                                               )
15  WELLS FARGO & COMPANY,                     )
    WELLS FARGO BANK, N.A., and                )
16  WELLS FARGO HOME MORTGAGE, INC.,           )
17                                             )
                             Defendants.       )
18  _____   )    Date Action Filed:  05/23/2023
19
20
21
22
23
24
25
26
27
28

1   TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD

2          PLEASE TAKE NOTICE that plaintiff Anthony Morris posted jury fees in the amount of

3   $150.00 for the trial in this matter.

4
     DATED: May 23, 2023                    ROBBINS GELLER RUDMAN & DOWD LLP
5                                           SHAWN A. WILLIAMS (SBN 213113)

6

7                                            *s/ Shawn A. Williams*
                                            Shawn A. Williams
8
                                            Post Montgomery Center
9                                           One Montgomery Street, Suite 1800
                                            San Francisco, CA  94104
10                                          Telephone:  415/288-4545
                                            415/288-4534 (fax)
11                                          shawnw@rgrdlaw.com

12                                          SELENDY GAY ELSBERG PLLC
13                                          SEAN BALDWIN*
                                            JORDAN GOLDSTEIN*
14                                          ZACHARY SMITH*
                                            1290 Avenue of the Americas
15                                          New York, NY  10104
                                            Telephone:  212/390-9000
16                                          212/390-9399 (fax)
                                            sbaldwin@selendygay.com
17                                          jgoldstein@selendygay.com
                                            zsmith@selendygay.com
18

19                                          ROBBINS GELLER RUDMAN & DOWD LLP
20                                          STUART A. DAVIDSON*
                                            BRADLEY M. BEALL*
21                                          225 N.E. Mizner Boulevard, Suite 720
                                            Boca Raton, FL  33432
22                                          Telephone:  561/750-3000
                                            561/750-3364 (fax)
23                                          sdavidson@rgrdlaw.com
                                            bbeall@rgrdlaw.com
24

25

26

27

28

ROBBINS GELLER RUDMAN & DOWD LLP
CHAD JOHNSON*
NOAM MANDEL*
DESIREE CUMMINGS*
JONATHAN ZWEIG*
420 Lexington Avenue, Suite 1832
New York, NY  10170
Telephone:  212/432-5100
ChadJ@rgrdlaw.com
Noam@rgrdlaw.com
DCummings@rgrdlaw.com
JZweig@rgrdlaw.com

SEEGER WEISS LLP
CHRISTOPHER AYERS*
55 Challenger Road
Ridgefield Park, NJ 07660
Telephone:  973/639-9100
973/679-8656 (fax)
cayers@segerweiss.com

Attorneys for Plaintiff and the Class

* *Pro hac vice* forthcoming