1   Amanda L. Groves (SBN 187216)
    agroves@winston.com
2   WINSTON & STRAWN LLP
    333 S. Grand Avenue, 38th Floor
3   Los Angeles, CA 90071
    Telephone: (213) 615-1700
4   Facsimile: (213) 615-1750

5   Kobi K. Brinson (*pro hac vice*)
    kbrinson@winston.com
6   Stacie C. Knight (*pro hac vice*)
    sknight@winston.com
7   WINSTON & STRAWN LLP
    300 South Tryon Street, 16th Floor
8   Charlotte, NC 28202
    Telephone: (704) 350-7700
9   Facsimile: (704) 350-7800

10

11  *Attorneys for Defendants*
    *Wells Fargo & Company,*
12  *Wells Fargo Bank, N.A., and*
    *Wells Fargo Home Mortgage, Inc.*

13

14              **UNITED STATES DISTRICT COURT**

15             **NORTHERN DISTRICT OF CALIFORNIA**

16  ANTHONY MORRIS, Individually and on      Case No.  **4:23-CV-03277-HSG**
    Behalf of All Others Similarly Situated,
17                                           **DEFENDANTS WELLS FARGO &**
                  Plaintiff,                 **COMPANY, WELLS FARGO BANK, N.A.,**
18                                           **AND WELLS FARGO HOME**
          v.                                 **MORTGAGE, INC.'S MOTION TO**
19                                           **DISMISS PLAINTIFF'S CLASS ACTION**
    WELLS FARGO & COMPANY,                   **COMPLAINT**
20  WELLS FARGO BANK, N.A., and
    WELLS FARGO HOME MORTGAGE, INC.,         Date:     October 5, 2023
21                                           Time:     2:00 PM
                  Defendants.                Place:    Courtroom 2, 4th Floor
22                                                     Oakland Courthouse
                                                       1301 Clay Street
23                                                     Oakland, CA 94612
24                                           Judge:    Hon. Haywood S. Gilliam, Jr.

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT ................ 1

STATEMENT OF ISSUES TO BE DECIDED ........................................................... 2

MEMORANDUM OF POINTS AND AUTHORITIES ................................................ 3

INTRODUCTION ...................................................................................................... 3

FACTUAL BACKGROUND ....................................................................................... 4

ARGUMENT ............................................................................................................. 6

I.      LEGAL STANDARD ................................................................................. 6

II.     PLAINTIFFS HAVE NO CLAIMS AGAINST WELLS FARGO &
        COMPANY AND WELLS FARGO HOME MORTGAGE, INC. ................. 6

III.    PLAINTIFF DOES NOT ALLEGE ANY WRONGFUL CONDUCT BY
        WELLS FARGO ...................................................................................... 7

IV.     PLAINTIFF'S INADEQUATE TOLLING ALLEGATIONS CANNOT SAVE
        HIS CLAIMS. ......................................................................................... 9

        1.   The Delayed Discovery Doctrine Does Not Apply. ........................... 9

        2.   Plaintiff Has Not Alleged Any Basis for the Court to Apply the
             Fraudulent Concealment Doctrine ............................................... 10

V.      EACH OF PLAINTIFF'S CLAIMS SEPARATELY FAILS AS A MATTER
        OF LAW. .............................................................................................. 12

        A.   Plaintiff's Unjust Enrichment Claim Fails Because it is Not a Cause of
             Action and the Parties Had an Express Contract. ........................... 12
        B.   The Claim for Money Had and Received Fails as a Matter of Law. ..... 13
        C.   Plaintiff Fails to State a Claim for Conversion. ............................... 14
        D.   Plaintiff's Civil Theft Claim Should be Dismissed for Failure to Plead
             Theft or Knowledge. .................................................................. 16

CONCLUSION ......................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agape Family Worship Center, Inc. v. Gridiron*,
   2016 WL 3003207 (C.D. Cal. May 24, 2016) ...................................................................9, 10

*Allen v. Veterans Admin.*,
   749 F.2d 1386 (9th Cir. 1984) ................................................................................................7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................................................6

*Bell Atl. v. Twombly*,
   550 U.S. 544 (2007)............................................................................................................6, 7

*Bell v. City of Fife*,
   465 F. App'x 711 (9th Cir. 2012)..........................................................................................17

*Brant v. Shea Mortg. Inc.*,
   2011 WL 1300360 (D. Nev. Mar. 30, 2011) ..........................................................................7

*Callaghan v. BMW of N. Am., LLC*,
   2014 WL 6629254 (N.D. Cal. Nov. 21, 2014) ......................................................................12

*In re Capacitors Antitrust Litig.*,
   106 F. Supp. 3d 1051 (N.D. Cal. 2015) ................................................................................12

*In re CNET Networks, Inc.*,
   483 F. Supp. 2d 947 (N.D. Cal. 2007) ....................................................................................4

*Cobb v. JPMorgan Chase Bank, N.A.*,
   2012 WL 5335309 (N.D. Cal. Oct. 26, 2012)..........................................................................8

*Conerly v. Westinghouse Elec. Corp.*,
   623 F.2d 117 (9th Cir. 1980) ................................................................................................10

*Coppinger–Martin v. Solis*,
   627 F.3d 745 (9th Cir. 2010) ................................................................................................11

*Darrin v. Bank of Am., N.A.*,
   2013 WL 877087 (E.D. Cal. Mar. 7, 2013) ..........................................................................15

*Esoimeme v. Wells Fargo Bank*,
   2011 WL 3875881 (E.D. Cal. Sept. 1, 2011), *report and recommendation
   adopted*, 2011 WL 5526068 (E.D. Cal. Nov. 14, 2011)..........................................................6

*Forte v. Cnty. Of Merced*,
    2012 WL 94332 (E.D. Cal. Jan. 11, 2012) ...............................................................8, 17

*Foster v. Schubert*,
    2022 WL 1570870 (E.D. Cal. May 18, 2022) .....................................................................8

*Freedline v. O Organics LLC*,
    2020 WL 1643697 (N.D. Cal. Mar. 31, 2020).................................................................12

*Grouse River Outfitters Ltd v. NetSuite, Inc.*,
    2016 WL 5930273 (N.D. Cal. Oct. 12, 2016)..................................................................16

*Haskins v. Symantec Corp.*,
    654 F. App'x 338 (9th Cir. 2016) ....................................................................................14

*Hexcel Corp. v. Ineos Polymers, Inc.*,
    681 F.3d 1055 (9th Cir. 2012) ........................................................................................10

*Hrothgar Invs., Ltd. v. Houser*,
    2015 WL 5853634 (N.D. Cal. Aug. 18, 2015), *report and recommendation
    adopted*, 2015 WL 5747932 (N.D. Cal. Sept. 30, 2015) ..................................................9

*Hudson v. Wells Fargo & Co.*,
    2022 WL 2716526 (N.D. Cal. July 13, 2022)....................................................................7

*Johnston v. Mittman*,
    2023 WL 4680795 (C.D. Cal. June 23, 2023) .................................................................14

*Kanji v. Bank of Am., N.A.*,
    2020 WL 8175548 (C.D. Cal. Aug. 25, 2020).................................................................18

*Kay v. Wells Fargo & Co. N.A.*,
    2007 WL 2141292 (N.D. Cal. July 24, 2007)..................................................................10

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ..........................................................................................6

*LA Tech and Consulting, LLC v. Am. Express Co.*,
    2022 WL 3699968 (C.D. Cal. Aug. 9, 2022)..............................................................14, 18

*Lokossou v. Servicsource Int'l, Inc.*,
    2018 WL 1709926 (N.D. Cal. Apr. 9, 2018) .....................................................................8

*Lomely v. JP Morgan Chase Bank, Nat. Ass'n*,
    2012 WL 4123403 (N.D. Cal. Sept. 17, 2012) ...............................................................12

*Lopez v. Bank of Am., N.A.*,
    505 F. Supp. 3d 961 (N.D. Cal. 2020) ............................................................................14

*Lusida Rubber Prods. v. Point Industrial, LLC*,
   2016 WL 7469592 (C.D. Cal. Feb. 5, 2016)............................................................................15

*Mar Partners 1, LLC v. Am. Home Mortg. Servicing, Inc.*,
   2011 WL 11501 (N.D. Cal. Jan. 4, 2011) ...............................................................................7

*McCarn v. HSBC USA, Inc.*,
   2012 WL 5499433 (N.D. Cal. Nov. 13, 2012) ....................................................................9, 11

*McKell v. Wash. Mut., Inc.*,
   142 Cal. App. 4th 1457 (2006) ......................................................................................7, 14, 15

*Miss Global Organization LLC v. Mak*,
   2018 WL 6118616 (C.D. Cal. June 27, 2018) ....................................................................9, 10

*Moore v. Regents of Univ. of Cal.*,
   51 Cal. 3d 120 (1990) ............................................................................................................14

*Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*,
   96 F.3d 1151 (9th Cir. 1996) ..................................................................................................12

*People v. Warmington*,
   16 Cal. App. 5th 333 (2017) ...................................................................................................16

*People v. Wielograf*,
   101 Cal. App. 3d 488 (1980) .............................................................................................7, 16

*Rondberg v. McCoy*,
   2009 WL 5184053 (S.D. Cal. Dec. 21, 2009).....................................................................13, 14

*Saroya v. Univ. of the Pac.*,
   503 F. Supp. 3d 986 (N.D. Cal. 2020) ....................................................................................13

*Shvarts v. Budget Grp., Inc.*,
   81 Cal. App. 4th 1153 (2000) .................................................................................................13

*Sikking v. Griswold*,
   2021 WL 321982 (S.D. Cal. Feb. 1, 2021).............................................................................8

*Sundance Image Technology, Inc. v. Inkjetmall.com, Ltd.*,
   2005 WL 8173280 (S.D. Cal. Oct. 14, 2005) .........................................................................15

*U.S. Cap. Partners, LLC v. AHMSA Int'l, Inc.*,
   2013 WL 594285 (N.D. Cal. Feb. 14, 2013) ..........................................................................13

*Varga v. Wells Fargo Bank, N.A.*,
   2017 WL 4022367 (C.D. Cal. Sept. 12, 2017) ........................................................................16

*Walter v. Hughes Commc'ns, Inc.*,
   682 F. Supp. 2d 1031 (N.D. Cal. 2010) ..............................................................................7, 13

*World Surveillance Grp. Inc. v. La Jolla Cove Invs., Inc.*,
   2014 WL 1411249 (N.D. Cal. Apr. 11, 2014) ...........................................................................12

*Wright v. Charles Schwab & Co.*,
   2020 WL 6822887 (N.D. Cal. Nov. 20, 2020) ..................................................................7, 12

**Statutes**

12 U.S.C. § 1841 .............................................................................................................................4

Cal. Civ. Proc. Code § 338(c) ........................................................................................................9

Cal. Civ. Proc. Code § 339(1) ........................................................................................................8

Cal. Penal Code § 496 ................................................................................................6, 9, 16, 18

**Other Authorities**

Fed. R. Civ. P. 8(a) ........................................................................................................................6

Fed. R. Civ. P. 9(b) ........................................................................................................................6

Fed. R. Civ. P. 12(b)(6) .................................................................................................................6

<u>**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT**</u>

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on October 5, 2023, 2023 at 2:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 2 of the above-entitled court, located at 1301 Clay Street, Oakland, California, Defendants will and hereby do move the Court to dismiss Plaintiff Anthony Morris's Class Action Complaint ("Complaint") pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure for failure to plead fraud with particularity and failure to state a claim upon which relief can be granted.

Specifically, Defendants seek dismissal of the Complaint on the grounds that Plaintiff fails to allege any wrongful conduct by Defendants and his claims are time barred. Plaintiff's claims each separately fail for several different reasons. This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, and the record in this action.

DATED: July 31, 2023                    Respectfully submitted,

                                        **WINSTON & STRAWN LLP**

                    By:    */s/ Amanda L. Groves*
                           Amanda L. Groves (SBN 187216)
                           agroves@winston.com
                           WINSTON & STRAWN LLP
                           333 S. Grand Avenue, 38th Floor
                           Los Angeles, CA 90071
                           Telephone: (213) 615-1700
                           Facsimile: (213) 615-1750

                           Kobi K. Brinson (*pro hac vice*)
                           kbrinson@winston.com
                           Stacie C. Knight (*pro hac vice*)
                           sknight@winston.com
                           WINSTON & STRAWN LLP
                           300 South Tryon Street, 16th Floor
                           Charlotte, NC 28202
                           Telephone: (704) 350-7700
                           Facsimile: (704) 350-7800

1

## STATEMENT OF ISSUES TO BE DECIDED

2

        Whether Plaintiff's Complaint has adequately stated claims for unjust enrichment, money

3

had and received, conversion, or civil theft against Defendants Wells Fargo & Company, Wells

4

Fargo Bank, N.A., and Wells Fargo Home Mortgage, Inc.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiff—a New York resident who obtained a mortgage for a New York property 18 years ago—seeks to extract "billions" of dollars from Wells Fargo without a single allegation of wrongdoing.  In fact, the Complaint does not allege even one detail about Plaintiff's loan transaction. Instead, Plaintiff's entire case relies on an illogical, factually unsupported leap: that Wells Fargo somehow "admitted" wrongful conduct by voluntarily refunding a fee Plaintiff paid in connection with his mortgage loan.  Of course, companies refund money all the time for reasons other than "wrongful" conduct.  And, of course, Plaintiff does not allege that anything prevented Wells Fargo from making voluntary refunds, for any reason or, indeed, no reason at all.  Plaintiff's baseless theory undergirds his entire Complaint and is fatal to every claim.  The Complaint must be dismissed.

Plaintiff's claims fail for additional, independent reasons.  First, Plaintiff has no claims against the holding company and non-entity defendants he inexplicably has sued.  Second, Plaintiff's decision to base his claim on an 18-year-old fee means all of his claims are time-barred, and Plaintiff's inadequate tolling allegations cannot save them.  All four claims also fail for substantive reasons.  The quasi-contractual unjust enrichment claim is barred by the parties' express contract— *i.e.*, the rate lock agreement—and because it is not a standalone cause of action.  Plaintiff's claim for money had and received fails for the same reasons, and on the additional ground that Plaintiff does not seek the return of a definite sum that Wells Fargo received for Plaintiff's benefit, which are required elements of the claim.  The conversion claim must be dismissed because Plaintiff does not seek a definite sum and because Plaintiff had no ownership of or right to the "profits" he seeks. Moreover, it is well-settled that an alleged overcharge cannot form the basis for such a claim, nor can a payment that was voluntarily made.  And finally, Plaintiff's civil theft claim fails because the Complaint nowhere alleges that Wells Fargo knew that it was obtaining money by theft, false pretense, or misrepresentation.  Plaintiff's claims lack legal merit, and the Complaint should be dismissed with prejudice.

**FACTUAL BACKGROUND**

Wells Fargo Bank, N.A. ("WFBNA") offers mortgage loans and other real estate-related loans through its operating division, Wells Fargo Home Mortgage.  Wells Fargo & Company ("WF & Co.") is the parent of WFBNA and a bank holding company.  It does not conduct banking activities or mortgage lending.  *See, e.g.*, 12 U.S.C. § 1841 (describing what qualifies as a "bank holding company" under the Bank Holding Company Act); Declaration of Amanda L. Groves ("Groves Decl."), Ex. A; RJN, ¶ 1.  Wells Fargo Home Mortgage, Inc. was merged into WFBNA in 2004 and no longer exists as a separate legal entity.  Groves Decl., Ex. B and RJN, ¶ 2.

Plaintiff Anthony Morris is a resident and citizen of New York.  Compl. ¶ 11.  His claims arise out of a mortgage loan he closed with Wells Fargo 18 years ago, in August 2005.  Compl. ¶ 28.  When a customer applies for a mortgage loan with Wells Fargo, he can "lock" the interest rate for a given period of time.  *Id*. at ¶ 18.  If the customer delays the process and prevents the closing from happening during the lock period, for example, by not turning in required documentation, the lock period can be extended if the customer pays a fee, referred to as the rate lock extension fee, or "RLEF."  *Id*. at ¶¶ 18, 19.  On the other hand, if Wells Fargo causes the delay in closing, Wells Fargo "typically pays the RLEF."  *Id*.

According to Plaintiff, he was charged a RLEF of $4,087 in connection with his loan (thereby suggesting, per his own allegations, that he delayed the process), but the Complaint is otherwise silent about his loan transaction.  *Id*. at ¶ 29.  He does not allege, for example, the length of any rate-lock period he and Wells Fargo may have agreed to, or when he expected his loan to close.  *See generally* Compl.  More importantly, the Complaint is bereft of any allegation that Wells Fargo delayed his closing, much less that it intentionally did so.  *Id*.

Plaintiff asserts that two years ago, Wells Fargo mailed him a letter enclosing a refund check for the RLEF he allegedly was charged.  *Id*. at ¶ 30; Groves Decl., Ex. C; RJN ¶ 3.[1]  As stated in the letter, Wells Fargo "made the decision to refund the rate lock extension fee(s)" and enclosed a check

---

[1] "On considering a motion to dismiss, judicial notice of the full text of documents referenced in a complaint is proper under the doctrine of incorporation by reference."  *In re CNET Networks, Inc*., 483 F. Supp. 2d 947, 953 (N.D. Cal. 2007).

for $6,805.02.  *Id*.  The refund included $4,807.13 for the RLEF, $1,410.21 for interest on that fee from the date of his loan through November 10, 2011, and $1,307.68 to compensate Plaintiff for the time he did not have the funds.  *Id*.  The letter does not say that Plaintiff was wrongfully charged the RLEF.  *Id*.  Instead, Plaintiff assumes misconduct by Wells Fargo based on the allegation that "Wells Fargo issued refunds … on its own initiative, without any initiating requests from or other interaction with the borrowers" and "disclaimed that [it did] so pursuant to any settlement or direction of a government organization."  *Id*. at ¶ 7.  Plaintiff also refers to unidentified Wells Fargo loan documents purportedly stating that borrowers "will not be entitled to a refund" of the RLEF "for any reason other than willful misconduct on the part of [Wells Fargo]."  *Id*. at ¶ 8.  In other words, unidentified loan documents "entitled" borrowers to refunds in the event of "willful misconduct," but did not prevent Wells Fargo from making refunds for other reasons (or no reason at all).  And again, Plaintiff does not allege that he was, in fact, "entitled" to a refund under those unidentified loan documents, nor does he allege that Wells Fargo engaged in any wrongdoing, much less any "willful misconduct."

Plaintiff now complains that Wells Fargo did not "pay [him], but instead retained for itself, the full profits [it] obtained on the RLEF it wrongfully charged him."  *Id*. at ¶ 31.  Plaintiff seeks to represent a nationwide class of allegedly similarly situated borrowers—whether subjected to wrongful conduct or not—defined as "All Persons in the United States and its Territories who closed or refinanced a mortgage loan with Wells Fargo and were sent correspondence from Wells Fargo refunding an RLEF."  *Id*. at ¶ 32.  He also seeks to represent certain state law subclasses, defined as "All persons in California, Illinois, and New York[2] who closed or refinanced a mortgage loan with Wells Fargo and were sent correspondence from Wells Fargo refunding an RLEF."  *Id*. at ¶ 33.  On behalf of those putative classes, Plaintiff summarily claims without any supporting facts that Wells Fargo enjoyed a return on investment of the collected RLEFs that amounts to "billions of dollars."  *Id*. at ¶¶ 4-5.

Based on those allegations, Plaintiff, again a New York resident who obtained a loan on New

---

[2] The Complaint does not include a named plaintiff to represent the alleged Illinois subclass, nor does it allege any facts to suggest that an Illinois subclass is appropriately represented in this case.

DEFENDANTS WELLS FARGO & COMPANY, WELLS FARGO BANK, N.A., AND WELLS FARGO HOME
MORTGAGE, INC.'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT
CASE NO. 4:23-CV-03277-HSG

York property, purports to bring claims for unjust enrichment, money had and received, and conversion – all under California law. *Id*. at ¶¶ 42-48, 64-91.  Plaintiff also brings a claim for civil theft/receiving stolen property pursuant to California Penal Code Section 496.  Plaintiff seeks, *inter alia*, restitution and disgorgement of the profits Wells Fargo allegedly made as return on investment of those fees over the course of almost two decades, and nominal, compensatory, and punitive damages. *Id*. at ¶¶ at 4-9, 23, 31, 70, 73, 81, 97 and Prayer for Relief.

## ARGUMENT

### I.      LEGAL STANDARD.

A complaint fails to state a claim under Rule 12(b)(6) unless it contains "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. v. Twombly*, 550 U.S. 544, 547 (2007).  The court should not accept unreasonable inferences or unwarranted deductions of fact. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").  Accordingly, a complaint must allege "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("[Rule 8(a)] demands more than an unadorned, the defendant-unlawfully-harmed- me accusation.").  Rather, the factual allegations "must be enough to raise a right to relief above the speculative level." *Id*.

Fraud-based claims are subject to Rule 9(b), which requires that "[i]n all averments of fraud … the circumstances constituting fraud … shall be stated with particularity."  Fed. R. Civ. P. 9(b).  Rule 9(b) requires that the allegations state "the who, what, when, where, and how of the misconduct charged." *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1124 (9th Cir. 2009).

### II.     PLAINTIFFS HAVE NO CLAIMS AGAINST WELLS FARGO & COMPANY AND WELLS FARGO HOME MORTGAGE, INC.

Plaintiff alleges nothing substantive against WF & Co. or non-entity Wells Fargo Home Mortgage, Inc., yet asserts all four claims against them as if they are one in the same as WFBNA.  It is well-established that such "kitchen sink" allegations cannot survive a motion to dismiss. *See Esoimeme v. Wells Fargo Bank*, 2011 WL 3875881, *15 (E.D. Cal. Sept. 1, 2011), *report and recommendation adopted*, 2011 WL 5526068 (E.D. Cal. Nov. 14, 2011) ("[P]laintiff lumps all of the

6

DEFENDANTS WELLS FARGO & COMPANY, WELLS FARGO BANK, N.A., AND WELLS FARGO HOME MORTGAGE, INC.'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT
CASE NO. 4:23-CV-03277-HSG

1   defendants together and simply alleges that they have all engaged in unfair business practices.

2   Those allegations are insufficient to withstand a motion to dismiss under *Twombly*."); *see also Mar*

3   *Partners 1, LLC v. Am. Home Mortg. Servicing, Inc*., 2011 WL 11501, at *3 (N.D. Cal. Jan. 4,

4   2011); *Brant v. Shea Mortg. Inc*., 2011 WL 1300360, *4 (D. Nev. Mar. 30, 2011).

5          Nor can Plaintiffs cure their pleading deficiencies.  First, because Wells Fargo Home

6   Mortgage, Inc. was merged into WFBNA in 2004, it is not a separate legal entity and is not a proper

7   party here.  Groves Decl., Ex. B; RJN, ¶ 2.  Second, because WF & Co. is a holding company that

8   does not transact business with consumers and had no relationship or dealings with Plaintiff, *see*

9   Groves Decl., Ex. A; RJN, ¶ 1, it too should be dismissed.  *See Hudson v. Wells Fargo & Co.*, 2022

10  WL 2716526, at *3 (N.D. Cal. July 13, 2022) (Gilliam, J.) (dismissing WF & Co. when the

11  complaint "treat[ed] the Holding Company and [WFBNA] as the same entity, referring to them

12  collectively as 'Wells Fargo,' and the complaint alleged no facts that would support holding WF&

13  Co. liable for WFBNA's alleged conduct); *see also Allen v. Veterans Admin*., 749 F.2d 1386 (9th

14  Cir. 1984) (upholding district court's dismissal of action against improperly named defendant).

15  **III.   PLAINTIFF DOES NOT ALLEGE ANY WRONGFUL CONDUCT BY WELLS FARGO.**

16

17         Each of Plaintiff's four claims for relief requires allegations of wrongful conduct.  Unjust

18  enrichment claims require allegations that the "defendant obtained a benefit from the plaintiff by

19  fraud, duress, conversion, or similar conduct."  *Wright v. Charles Schwab & Co.*, 2020 WL

20  6822887, at *4 (N.D. Cal. Nov. 20, 2020).  Claims for money had and received and for conversion

21  likewise require allegations of wrongdoing.  *See Walter v. Hughes Commc'ns, Inc*., 682 F. Supp. 2d

22  1031, 1047 (N.D. Cal. 2010) ("The foundation of an action for conversion on a money had and

23  received count is the unjust enrichment of the wrongdoer"); *McKell v. Wash. Mut., Inc*., 142 Cal.

24  App. 4th 1457, 1491 (2006) (conversion requires allegations of "defendant's wrongful act toward or

25  disposition of the property").  Finally, "civil theft" quite obviously requires an allegation that

26  "property was obtained by theft."  *People v. Wielograf*, 101 Cal. App. 3d 488, 494 (1980).

27         Plaintiff's Complaint does not meet these basic requirements.  Instead, Plaintiff's entire case

28  relies on an illogical, factually unsupported leap: that Wells Fargo somehow "admitted" wrongful

7

DEFENDANTS WELLS FARGO & COMPANY, WELLS FARGO BANK, N.A., AND WELLS FARGO HOME
MORTGAGE, INC.'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT
CASE NO. 4:23-CV-03277-HSG

conduct simply by refunding his RLEF.  Compl. at ¶¶ 1, 2, 49, 68, 80, 89 (conclusory allegations that Wells Fargo engaged in "wrongful conduct" or "willful" misconduct).  But Plaintiff alleges no *facts* that would allow one to reach that conclusion.  Indeed, as discussed *supra*, the Complaint tellingly offers no hint about the details of Plaintiff's loan transaction, including that his closing was delayed beyond the rate lock period.  He also fails to describe the reason he was charged a RLEF, nor does he allege any conduct by Wells Fargo that delayed his closing or that was otherwise "wrongful," much less anything that amounted to "willful misconduct."  And finally, Plaintiff points to nothing—because he cannot—that prevented Wells Fargo from voluntarily making refunds for any reason or, in fact, no reason at all.  Companies issue refunds all the time, and the act of doing so does not compel the conclusion that its actions were somehow "wrongful."  As this Court has held, when an innocent explanation for the defendant's conduct is "equally plausible to infer," the plaintiff "has not nudged [his claim] across the line from across the line from conceivable to plausible" and the claim must be dismissed.  *Cobb v. JPMorgan Chase Bank, N.A.*, 2012 WL 5335309, at *7 (N.D. Cal. Oct. 26, 2012); *see also Lokossou v. Servicsource Int'l, Inc.*, 2018 WL 1709926, at *1 (N.D. Cal. Apr. 9, 2018) ("What plaintiff fails to accept is that there are many equally plausible possible answers to the questions he poses … And to say—without additional, more specific factual allegations—that 'racial animus' or 'racial hate' are the only possible answers is nothing more than speculation"); *Foster v. Schubert*, 2022 WL 1570870, at *2 (E.D. Cal. May 18, 2022) ("using the label or conclusion wrongful … does not suffice to state a claim"); *Sikking v. Griswold*, 2021 WL 321982, at *5 (S.D. Cal. Feb. 1, 2021) (dismissing claims that "consist[ed] solely of labels, conclusions, and demands for damages or other relief; and reiterating that the [conduct] was wrongful, without explaining why"); *Forte v. Cnty. of Merced*, 2012 WL 94332, at *6 (E.D. Cal. Jan. 11, 2012) (dismissing complaint where "the allegations are based on nothing more than innuendo and rank speculation").

Because Plaintiff's speculative allegations of wrongdoing are not supported by any facts, but instead are entirely conclusory, all of his claims should be dismissed.

**IV.    PLAINTIFF'S INADEQUATE TOLLING ALLEGATIONS CANNOT SAVE HIS CLAIMS.**

On their face, each of Plaintiff's alleged claims are time-barred under California law.  *See* Cal. Civ. Proc. Code § 339(1) (two-year statute of limitations for actions based on "a contract, obligation or liability not founded upon an instrument of writing"); *Hrothgar Invs., Ltd. v. Houser*, 2015 WL 5853634, at *8 (N.D. Cal. Aug. 18, 2015), *report and recommendation adopted*, 2015 WL 5747932 (N.D. Cal. Sept. 30, 2015) (two-year statute of limitations for money had and received); Cal. Civ. Proc. Code § 338 (c) (three-year statute of limitations for conversion); Cal. Civ. Proc. Code § 338(c) (three-year statute of limitations for claims under California Penal Code § 496).  Plaintiff's RLEF would have been charged "in or around 2005" when Plaintiff claims he closed on his Wells Fargo mortgage loan.  Compl. at ¶ 27.  That was 18 years ago, far beyond the two- and three-year statutes of limitations applicable to Plaintiff's claims.

To avoid this rather obvious problem, Plaintiff vaguely alleges that Wells Fargo "misrepresented" that he owed a RLEF at his loan's closing and that he "did not and could not discover Wells Fargo's willful misconduct until receiving [his] individual refund letter[] in November 2021.  Compl. at ¶ 56.  While it is unclear whether Plaintiff purports to invoke the delayed discovery doctrine or the doctrine of fraudulent concealment, Plaintiff fails to satisfy either doctrine and the Court should reject their application here.

**1.    The Delayed Discovery Doctrine Does Not Apply.**

To rely on delayed discovery to toll the statute of limitations, "a plaintiff must plead facts to show that [he] failed to uncover the alleged wrongdoings despite reasonable diligence."  *Agape Family Worship Center, Inc. v. Gridiron*, 2016 WL 3003207, at *3 (C.D. Cal. May 24, 2016) (citation omitted); *see also McCarn v. HSBC USA, Inc.*, 2012 WL 5499433, at *8 (N.D. Cal. Nov. 13, 2012) (to satisfy the diligence element of a delayed discovery claim, "the plaintiff must plead that, despite diligent investigation of the circumstances of the injury, he or she could not have reasonably discovered facts supporting the cause of action within the applicable statute of limitations period").  "As to the sufficiency of delayed discovery allegations," "conclusory allegations will not withstand dismissal."  *McCarn*, 2012 WL 5499433, at *8; *see also Miss Global Org. LLC v. Mak*,

9

2018 WL 6118616, at *5 (C.D. Cal. June 27, 2018) ("When the court assesses the sufficiency of the plaintiff's allegations of delayed discovery, the plaintiff bears the burden to show diligence; conclusory allegations will not withstand a motion to dismiss.").

Here, Plaintiff fails to plead any facts to support any alleged wrongdoing to begin with. Indeed, rather than plead specific facts of how Wells Fargo's implementation of RLEFs was wrongful, or in what manner he was harmed, Plaintiff simply relies on the circular logic that because the RLEFs were refunded, they must have been improper.  As shown above, this is insufficient.

Notwithstanding the failure to allege any wrongdoing, the Complaint also completely fails to mention diligence, much less "allege any facts showing that [Plaintiff] exercised any diligence at all prior to discovery." *Id.*; *see also Agape*, 2016 WL 3003207, at *3 (plaintiff's delayed discovery allegations were insufficient because the complaint "fail[ed] to allege any facts showing diligence"). In particular, Plaintiff "does not allege the specific efforts []he made to investigate the cause of [his] injury during the statute of limitations period, much less that []he conducted a reasonable investigation of all potential causes of [his] injury." *Miss Global Org.*, 2018 WL 6118616, at *5. Accordingly, Plaintiff cannot take advantage of the delayed discovery rule to resuscitate his time-barred claims.

### 2.     Plaintiff Has Not Alleged Any Basis for the Court to Apply the Fraudulent Concealment Doctrine.

Nor can Plaintiff invoke the fraudulent concealment doctrine.  For starters, this doctrine, like the delayed discovery doctrine, requires factual allegations showing that the plaintiff exercised reasonable diligence. *Agape*, 2016 WL 3003207, at *3.  Plaintiff's Complaint is utterly silent on this score.

Moreover, fraudulent concealment requires allegations showing "active conduct by a defendant, ***above and beyond the wrongdoing upon which the plaintiff's claim is filed***, to prevent the plaintiff from suing in time." *Kay v. Wells Fargo & Co. N.A.*, 2007 WL 2141292, at *5 (N.D. Cal. July 24, 2007) (citation omitted; emphasis added); *see also Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012) ("A statute of limitations may be tolled if the defendant ***fraudulently concealed the existence of a cause of action*** in such a way that the plaintiff, acting as a

1  reasonable person, did not know of its existence.") (emphasis added).  Those allegations must be

2  pled with particularity.  *Conerly v. Westinghouse Elec. Corp.*, 623 F.2d 117, 120 (9th Cir. 1980).

3  Accordingly, a plaintiff alleging fraudulent concealment must make factual allegations "showing

4  that [the defendant] affirmatively misled [him], and that [the plaintiff] had neither actual nor

5  constructive knowledge of the facts giving rise to its claim despite its diligence in trying to uncover

6  those facts."  *Hexcel*, 681 F.3d at 1060 (internal quotations and citations omitted).  Plaintiff's

7  allegations do not come even remotely close to meeting these exacting standards.

8      Nowhere does the Complaint identify any active conduct by Wells Fargo, beyond the alleged

9  rate lock "scheme" itself, that prevented Plaintiff from bringing his claims.  "[T]he Ninth Circuit has

10  repeatedly rejected claims of fraudulent concealment where the plaintiffs fail to allege

11  misrepresentation beyond the actual basis for the lawsuit."  *McCarn*, 2012 WL 5499433, at *7

12  (citing *Coppinger–Martin v. Solis,* 627 F.3d 745, 751-52 (9th Cir. 2010), and *Lukovsky v. City and

13  Cnty. of S.F.*, 5 F.3d 1044, 1049-52 (9th Cir. 2008)).  "Such arguments are untenable because they

14  'merge[] the substantive wrong with the tolling doctrine' and 'would eliminate the statute of

15  limitations[.]'"  *Id*. (citing *Coppinger–Martin,* 627 F.3d at 751-52 and *Lukovsky,* 5 F.3d at 1052).

16      In *McCarn*, the court refused to apply the fraudulent concealment doctrine to toll the statute

17  of limitations for the plaintiff's RESPA claim and rejected the plaintiff's argument that the "nature

18  of Defendants' 'self-concealing' scheme and the form documents and disclosures used in that

19  scheme constitute affirmative acts of fraudulent concealment."  2012 WL 5499433, at *7.  As the

20  court explained, those allegations failed because they did not allege "misrepresentation beyond the

21  actual basis for the lawsuit."  *Id*. (citations omitted).  Similarly, the court in *Coppinger-Martin*

22  determined that the plaintiff could not invoke fraudulent concealment to save her time barred claims

23  because she did "not allege that [the defendant] hid evidence, promised not to plead the statute of

24  limitations, or otherwise engaged in some misconduct separate from her claim for retaliatory

25  discharge."  *Coppinger-Martin*, 627 F.3d at 751.

26      Plaintiff's fraudulent concealment allegations are defective for the same reasons.  As in

27  *McCarn* and *Copinger-Martin*, Plaintiff's tolling allegations hinge on the assertion that he could not

28  discover Wells Fargo's alleged "willful misconduct" until he received the refund letter from Wells

Fargo.  Compl. at ¶ 52.  Accordingly, Plaintiff "fail[s] to allege misrepresentation beyond the actual basis for th[is] lawsuit."  *McCarn*, 2012 WL 5499433, at *7; *see also Coppinger-Martin*, 627 F.3d at 751.  Indeed, just like the plaintiff in *Coppinger*, Plaintiff here does not allege that Wells Fargo "hid evidence," "promised not to plead the statute of limitations," "or otherwise engaged in some conduct" separate from his underlying claims.  *Coppinger-Martin*, 627 F.3d at 751.  Plaintiff has not alleged (and cannot allege)—with facts that are pled with particularity (*i.e.*, who, what, when, where, and how)—that the doctrine of fraudulent concealment could possibly apply to this case.  His effort to improperly expand the applicable statutes of limitations should be rejected and his claims should be dismissed.

## V.   EACH OF PLAINTIFF'S CLAIMS SEPARATELY FAILS AS A MATTER OF LAW.

### A.   Plaintiff's Unjust Enrichment Claim Fails Because it is Not a Cause of Action and the Parties Had an Express Contract.

Under California law, "unjust enrichment is a remedy, and not an independent claim." *In re Capacitors Antitrust Litig*., 106 F. Supp. 3d 1051, 1074 (N.D. Cal. 2015) ("to the extent the complaint can be read to allege a stand-alone claim for unjust enrichment, that claim is dismissed with prejudice"); *see also Freedline v. O Organics LLC*, 2020 WL 1643697, at *4 (N.D. Cal. Mar. 31, 2020) (dismissing unjust enrichment claim with prejudice because "California treats unjust enrichment as a remedy and not an independent claim"); *Callaghan v. BMW of N. Am., LLC*, 2014 WL 6629254, at *4 (N.D. Cal. Nov. 21, 2014) ("to the extent plaintiffs are seeking to rely on California law, the claim must be dismissed for the separate and additional reason that unjust enrichment is not an independent cause of action").  The Court accordingly can dismiss Plaintiff's First Cause of Action on this basis alone.

Even if the unjust enrichment claim were treated as its own independent action, it still fails. Because unjust enrichment is quasi-contractual, recovery is not available where an express contract governs the dispute.  *See Wright*, 2020 WL 6822887, at *4 ("unjust enrichment is an action in quasi-contract, which does not lie when an enforceable, binding agreement exists defining the rights of the parties"); *Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.,* 96 F.3d 1151, 1167 (9th Cir. 1996) (same); *World Surveillance Grp. Inc. v. La Jolla Cove Invs., Inc.*, 2014 WL 1411249, at *2 (N.D. Cal. Apr.

11, 2014) (plaintiff "precluded from asserting a quasi-contract claim under the theory of unjust enrichment" where "enforceable agreements between the parties" existed).  Here, because Plaintiff's claims necessarily rely on the existence of an express contract—*i.e.*, the rate lock agreement with Wells Fargo—the unjust enrichment claim fails on its face.  Indeed, as this Court has explained, where "the governing contractual documents" "define the parties' rights and obligations," recovery for unjust enrichment is precluded.  *Lomely v. JP Morgan Chase Bank, Nat. Ass'n*, 2012 WL 4123403, at *5 (N.D. Cal. Sept. 17, 2012).  Plaintiff's unjust enrichment claim should be dismissed for this reason as well.

**B.** **The Claim for Money Had and Received Fails as a Matter of Law.**

Plaintiff's claim for money had and received also fails.

First, this claim fails for the same reason Plaintiff's unjust enrichment claim fails: money had and received is quasi-contractual theory that cannot be maintained where, as here, an enforceable agreement governs the parties' rights and obligations.  *See Saroya v. Univ. of the Pac.*, 503 F. Supp. 3d 986, 999 (N.D. Cal. 2020); *see also U.S. Cap. Partners, LLC v. AHMSA Int'l, Inc.*, 2013 WL 594285, at *5 (N.D. Cal. Feb. 14, 2013) (same); *Shvarts v. Budget Grp., Inc.*, 81 Cal. App. 4th 1153, 1160 (2000) (claim for money had and received failed because "it is well settled that an action based on an implied-in-fact or quasi-contract cannot lie where there exists between the parties a valid express contract covering the same subject matter.").

In addition, under California law, a plaintiff cannot state a claim for money had and received unless he pleads that "a definite sum, to which [] he is justly entitled, has been received by [the] defendant."  *Walter*, 682 F. Supp. 2d at 1047.  In *Walter*, the plaintiff alleged that the defendant "has become indebted to Plaintiff and class members in the amount of early termination fees paid" and "such other amounts which may have been acquired by means of any practice found by this Court to be illegal, unfair or deceptive."  *Id.*  The court dismissed the money had and received claim, finding that the complaint "fail[ed] to state a 'definite sum" to which Plaintiffs [were] justly entitled."  *Id.* at 1047-48; *see also Rondberg v. McCoy*, 2009 WL 5184053, at *6 (S.D. Cal. Dec. 21, 2009) (dismissing claim for money had and received because plaintiffs' allegations that "[defendant] asked Plaintiffs for access to the [] account, and thereafter received said funds'" were insufficient to allege

1  a "definite sum").  Here, the money had and received claim does not seek to recover the RLEFs

2  Plaintiff and the putative class members paid.  *See* Compl. at ¶ 79.  Instead, like the plaintiffs in

3  *Walter*, Plaintiff here alleges only that "Defendants are indebted to Plaintiff and Class members for

4  the entire amount of profits Defendants earned on unauthorized and unwarranted RLEFs," which

5  Plaintiff speculates "will be determined"—at some point in the future—"to be in the billions of

6  dollars."  Compl. ¶¶ 5, 71, 79.  That is not "a define sum" and the money had and received claim

7  necessarily fails.

8          Finally, to state a claim for money had and received, the plaintiff must allege that "the

9  defendant received money that was intended to be used for the benefit of the plaintiff."  *Johnston v.*

10  *Mittman*, 2023 WL 4680795, at *5 (C.D. Cal. June 23, 2023) (quotations and citation omitted); *see*

11  *also Rondberg*, 2009 WL 5184053, at *6 ("The FAC fails to state a claim for money had and

12  received, because Plaintiffs do not allege a definite sum that [defendant] received from Plaintiffs.").

13  Here, Plaintiff admits he has received a refund of the only money he could have possibly given to

14  Wells Fargo: the amount he paid for the RLEF.  Compl. at ¶ 30.  Regarding the "profits" he seeks to

15  recover, Plaintiff does not allege that any such "profits" were intended to be used for his benefit.

16  "[N]or would any such allegation be plausible."  *Johnston*, 2023 WL 4680795, at *5; *see also*

17  *Haskins v. Symantec Corp.*, 654 F. App'x 338, 339 (9th Cir. 2016) (district court did not err in

18  dismissing money had and received claim because plaintiff "did not allege that [defendant] received

19  money intended to be used for her benefit); *LA Tech and Consulting, LLC v. Am. Express Co.*, 2022

20  WL 3699968, at *5 (C.D. Cal. Aug. 9, 2022) (dismissing money had and received claim when

21  plaintiff alleged no facts showing that the funds in question were intended to be used for his benefit);

22  *Lopez v. Bank of Am., N.A.*, 505 F. Supp. 3d 961, 975 (N.D. Cal. 2020) (same).

23          Plaintiff's Second Cause of Action should be dismissed.

24      **C.      Plaintiff Fails to State a Claim for Conversion.**

25          Plaintiff's conversion claim also fails as a matter of law and should be dismissed.  In

26  California, conversion has three elements: (1) "plaintiff's ownership or right to possession of

27  property"; (2) wrongful conduct by the defendant that interferes with plaintiff's possession; and

28  (3) damages.  *McKell*, 142 Cal. App. 4th at 1491.  "Where the plaintiff neither has title to the

14

1    property alleged to have been converted, nor possession thereof, he cannot maintain an action for

2    conversion." *Moore v. Regents of Univ. of Cal.*, 51 Cal. 3d 120, 136 (1990).  Moreover, "[m]oney

3    cannot be the subject of a cause of action for conversion unless there is a specific, identifiable sum

4    involved … ." *McKell*, 142 Cal. App. 4th at 1491.

5           Here, as shown *supra*, Plaintiff does not allege—because he cannot—that his conversion

6    claim seeks the return of a specific, identifiable sum.  Again, the only specific, identifiable sum

7    referenced in the Complaint is the RLEF Plaintiff claims he paid, but Plaintiff admits that Wells

8    Fargo already refunded that fee.  Compl. at ¶ 30.  Moreover, it is well-established that an alleged

9    overcharge cannot be the subject of a conversion claim.  *McKell*, 142 Cal. App. 4th at 1491-92

10   ("Plaintiffs cite no authority for the proposition that a cause of action for conversion may be based

11   on an overcharge.  Consequently, they have failed to demonstrate that they have stated a cause of

12   action for conversion.").  Similarly, voluntary payments cannot form the basis for a conversion

13   claim.  *See Darrin v. Bank of Am., N.A.*, 2013 WL 877087, at *7 (E.D. Cal. Mar. 7, 2013) ("Plaintiff

14   has failed to establish that [defendant] 'wrongfully' dispossessed Plaintiff of $1,617.04.  Plaintiff's

15   SAC describes Plaintiff voluntarily paying [defendant] the sum.").

16          Plaintiff also does not allege an "ownership or right to possession" of the other so-called

17   property that is the subject of his conversion claim, *i.e.*, "all profits reaped on improperly charged

18   RLEFs."  Compl. at ¶ 87.  Nor could he.  Under the circumstances alleged here, disgorgement is not

19   an available remedy for conversion.

20          *Lusida Rubber Prods. v. Point Industrial, LLC*, 2016 WL 7469592 (C.D. Cal. Feb. 5, 2016),

21   is instructive.  There, the plaintiff alleged that its former sales agents used plaintiff's trademarks

22   without consent, registered and used internet domain names containing the plaintiff's trademarks,

23   stole the plaintiff's customer list, and refused to return certain "tooling" belonging to the plaintiff,

24   thus preventing the plaintiff from fulfilling customer orders.  *Id*. at *2.  Based on those allegations,

25   the plaintiff brought, *inter alia*, a conversion claim seeking the defendants' allegedly ill-gotten

26   profits.  *Id*. at *5.  The court dismissed the claim, agreeing with the defendants that the plaintiff

27   "fail[ed] to cite any authority for the proposition that [plaintiff's ownership interest in the

28   misappropriated trade secrets and trademarks] g[ave] [p]laintiff rights to the profits derived from the

15

DEFENDANTS WELLS FARGO & COMPANY, WELLS FARGO BANK, N.A., AND WELLS FARGO HOME
MORTGAGE, INC.'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT
CASE NO. 4:23-CV-03277-HSG

goods that Defendants allegedly sold using Plaintiff's trademark and customer list." *Id.* at *6; *see also Sundance Image Tech., Inc. v. Inkjetmall.com, Ltd.*, 2005 WL 8173280, at *10 (S.D. Cal. Oct. 14, 2005) (plaintiffs could not base their conversion claim on "mere allegations that Defendants took profits that rightfully belonged to Plaintiffs": "Plaintiffs appear to be equating conversion of tangible property with disgorgement, *i.e.* with the profits that Defendants obtained from their misleading statements about Plaintiffs' products.  However, Plaintiffs' conversion argument lacks merit.").

Here too, Plaintiff had no rights in the profits Wells Fargo allegedly derived from the "improperly charged IRLEFs."  The conversion claim must be dismissed.

**D.    Plaintiff's Civil Theft Claim Should be Dismissed for Failure to Plead Theft or Knowledge.**

Plaintiff's Fourth Cause of Action purports to bring a claim under California Penal Code Section 496 based, not on the profits Wells Fargo allegedly earned on the RLEFs, but on the RLEFs themselves.  According to the Complaint, "Defendants actually stole and thereafter received property (*i.e.*, RLEFs) belonging to Plaintiff and Nationwide and California Class members constituting theft."  Compl. at ¶ 95.

To state a civil theft claim under Section 496, Plaintiff must plead three elements: "(1) the property [was] obtained by theft; (2) [Wells Fargo] … bought or received such property, or … concealed or withheld such property from the [Plaintiff]; (3) [Wells Fargo knew] at the time [it] committed [the allegedly wrongful act] that the property had been obtained by theft."  *Wielograf*, 101 Cal. App. 3d at 494.  Here, because Plaintiff does not and cannot allege theft, or that Wells Fargo knew the RLEFs were "stolen," the claim must be dismissed.  *Grouse River Outfitters Ltd v. NetSuite, Inc.*, 2016 WL 5930273, at *16 (N.D. Cal. Oct. 12, 2016).

First, under California law, "theft" is defined as stealing property by larceny, false pretense, or embezzlement with the intent to permanently deprive the owner of the property.  *See, e.g., People v. Warmington*, 16 Cal. App. 5th 333, 336-37 (2017).  On this score, the Complaint's utter lack of detail regarding Plaintiff's loan transaction, including the circumstances under which he paid the RLEF, doom his conclusory allegation of theft.  Indeed, Plaintiff does not allege any wrongful conduct by Wells Fargo, let alone that it engaged in larceny, false pretense, or embezzlement.  To

the contrary, the Complaint specifically acknowledges the existence of a contract by which Plaintiff agreed to pay RLEFs, making theft impossible on the facts alleged.  Plaintiff's Section 496 claim must be dismissed.

For the same reason, Plaintiff also does not allege that Wells Fargo knew—at the time it charged him a RLEF, in 2005—that it was doing so by theft.  *See Varga v. Wells Fargo Bank, N.A.*, 2017 WL 4022367, at *8 (C.D. Cal. Sept. 12, 2017) (dismissing Section 496 claim because the plaintiff did not allege that Wells Fargo must have known, at the time it collected higher interest payments from plaintiff, that it obtained plaintiff's money by theft).  To the contrary, Plaintiff admits that Wells Fargo did not "determine[] that [its] mortgage rate lock extension fee policy was at times inconsistently applied" until 2017.  Compl. at ¶ 61.  And even then, Plaintiff acknowledges that Wells Fargo only determined that *some* RLEFs (not his) were incorrectly charged "during the period of September 16, 2013 through February 28, 2017"—at least eight years after Plaintiff closed on his loan. *Id*.

Plaintiff's remaining allegations of knowledge are conclusory and nonsensical.  Plaintiff alleges that "Defendants' knowledge of Wells Fargo's theft is evidenced by, among other things, Defendants' own mortgage documents … which, on information and belief, expressly limit refunds *of many* RLEFs only to situations where there has been 'willful misconduct on the part of [Wells Fargo].'"  *See id*. at ¶ 97 (emphasis added).  Plaintiff's clever paraphrasing should be rejected.  As Plaintiff's Complaint earlier alleges, under those unidentified documents, borrowers were only "*entitled*" to refunds when there was "willful misconduct."  *Id*. at ¶ 7 (emphasis added).  In other words, Plaintiff asserts only that Wells Fargo was *obligated* to refund RLEFs when it engaged in "willful misconduct."  That so-called obligation did not prevent, and in fact has no bearing on, Wells Fargo's decision to voluntarily refund customers for business reasons that do not amount to "theft."

In any event, Plaintiff's rewritten theory still relies on a series of illogical, speculative leaps that cannot survive a motion to dismiss.  According to the Complaint, "on information and belief," because unidentified loan documents used in only some loan transactions required refunds in situations where there was "willful misconduct" by Wells Fargo, Wells Fargo necessarily had knowledge that all the RLEFs charged to the putative class were obtained by theft, including those

17

charged to Plaintiff.  This allegation makes no sense, and, more importantly, is not supported by a single factual allegation—aptly demonstrated by Plaintiff's failure to allege any details regarding his own loan transaction.  *See Forte*, 2012 WL 94332, at *6 (dismissing complaint where "the allegations are based on nothing more than innuendo and rank speculation").

Plaintiff also alleges that "Defendants' knowing misrepresentations of the length of time it would take to process each application on its form application documents strongly supports the inference that Defendants knowingly stole RLEFs from Plaintiff and Class members … ."  Compl. at ¶¶ 54, 69.  This allegation, like the others, is entirely conclusory and not supported by any facts.  *See Bell v. City of Fife*, 465 F. App'x 711 (9th Cir. 2012) (dismissing complaint for failure to plead "specific wrongful conduct [attributed] to any individual defendant.")  Indeed, nowhere in his 99-paragraph Complaint does Plaintiff identify a single, specific misrepresentation Wells Fargo allegedly made to him regarding how long it would take to process his loan application.  Here again, Plaintiff's failure to plead any details about his loan transaction is fatal.  *See Kanji v. Bank of Am., N.A.*, 2020 WL 8175548, at *8 (C.D. Cal. Aug. 25, 2020) (Section 496 claims will be dismissed where plaintiff fails to allege any "false pretense or misrepresentation"); *LA Tech*, 2022 WL 17350939, at *4  (Section 496 claim dismissed because allegation that defendant "'knowingly and intentionally deceived' [a party] through purported misrepresentations" was "a conclusory statement unsupported by any factual allegations.").

Plaintiff's Section 496 claim fails and should be dismissed.

## CONCLUSION

For the foregoing reasons, Wells Fargo & Company, Wells Fargo Bank, N.A., and Wells Fargo Home Mortgage, Inc. request that the Court dismiss Plaintiff's Complaint in its entirety.

DATED: July 31, 2023

Respectfully submitted,

**WINSTON & STRAWN LLP**

By:     */s/ Amanda L. Groves*
     Amanda L. Groves (SBN 187216)
     agroves@winston.com
     WINSTON & STRAWN LLP
     333 S. Grand Avenue, 38th Floor
     Los Angeles, CA 90071
     Telephone: (213) 615-1700
     Facsimile: (213) 615-1750

     Kobi K. Brinson (*pro hac vice*)
     kbrinson@winston.com
     Stacie C. Knight (*pro hac vice*)
     sknight@winston.com
     WINSTON & STRAWN LLP
     300 South Tryon Street, 16th Floor
     Charlotte, NC 28202
     Telephone: (704) 350-7700
     Facsimile: (704) 350-7800

     *Attorneys for Defendants Wells Fargo & Company,*
     *Wells Fargo Bank, N.A., and Wells Fargo Home*
     *Mortgage, Inc*

DEFENDANTS WELLS FARGO & COMPANY, WELLS FARGO BANK, N.A., AND WELLS FARGO HOME
MORTGAGE, INC.'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT
CASE NO. 4:23-CV-03277-HSG