UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY MORRIS,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO & COMPANY, et al.,<br><br>Defendants. | Case No. 23-cv-03277-HSG<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 19 |

Pending before the Court is a motion to dismiss filed by Defendants Wells Fargo & Company, Wells Fargo Bank, N.A., and Wells Fargo Home Mortgage, Inc. Dkt. No. 19. The Court held a hearing on the motion. *See* Dkt. Nos. 48, 51. For the reasons described below, the Court **GRANTS** the motion.

## I.    BACKGROUND

On May 23, 2023, Plaintiff Anthony Morris ("Plaintiff") filed this putative class action against Wells Fargo & Company ("WF & Co."), Wells Fargo Bank, N.A. ("the Bank"), and Wells Fargo Home Mortgage, Inc. ("the Mortgage Company," and together, "Defendants") in San Francisco Superior Court. Dkt. No. 1. On June 30, 2023, Defendants removed the case to federal court, asserting jurisdiction under CAFA. *Id.* (citing and discussing 28 U.S.C. § 1332(d)).

Plaintiff's lawsuit arises from "[Defendants'] failure to return to its borrowers massive amounts of money Wells Fargo made after it wrongly charged borrowers rate lock extension fees ("RLEFs") on the borrowers' respective Wells Fargo mortgage applications." Dkt. No. 1-1 ("Compl") ¶ 1. As relevant here, "RLEFs extend the period in which a quoted mortgage interest rate is 'locked in' against potential market fluctuations." *Id.* Whether the borrower or the lender is responsible for paying the RLEF is a matter of "lender policy," but generally the party at fault

for the delay in closing bears the cost. *Id*. ¶ 19. Plaintiff alleges that Wells Fargo had such a policy during the relevant time period, which purported to "charge borrowers for RLEFs only when the borrowers [were] at fault for delays and [to] absorb[] those fees itself . . . when the fault [was] Wells Fargo's." *Id*. ¶ 21. Plaintiff additionally alleges that during the same period, Defendants also had a policy of limiting their obligation to refund RLEFs to instances of their own "willful misconduct." *Id*. ¶ 22.

Plaintiff alleges that he applied for a home mortgage with Defendants in early 2005. Though he allegedly did not know it at the time, Defendants supposedly misrepresented "the length of time it would take to process each application on [their] form documents." *Id*. ¶ 54. Upon closing in or around August 2005, Plaintiff alleges that Defendants also represented in at least two documents that Plaintiff owed an RLEF in the amount of $4,087.13. *Id*. ¶¶ 29, 50. Plaintiff alleges that he accepted and relied upon "the representation that such a payment was properly owing" when paying that sum, but avers that subsequent developments revealed this representation was "false and intentional." *Id*. ¶ 50–52.

The next time Plaintiff had contact with Defendants was allegedly more than a decade and a half later, when, unprompted, "Wells Fargo mailed Plaintiff a letter enclosing a purported refund check for the RLEF he was wrongfully charged by Wells Fargo in connection with his mortgage." *Id*. ¶ 30. Given Defendants' supposed policy of not refunding RLEFs in the absence of their own "willful misconduct," the unanticipated refund of his RLEF was, to Plaintiff, Defendants' admission that they wrongfully charged him an RLEF. *Id*. ¶ 50. Plaintiff avers that the refund of that RLEF – which allegedly was not made "pursuant to any settlement agreement or at the direction of any government organization," *id*. ¶ 52 – put him on notice of Defendants' prior misconduct, and of their current unlawful retention of profits (derived from the wrongfully charged RLEFs) that "as a matter of equity belong to Plaintiff and Class members from whom Defendants misappropriated those funds." *Id*. ¶ 63, 71.

Based on these allegations, Plaintiff seeks to represent a nationwide class of "[a]ll persons in the United States and its Territories who closed or refinanced a mortgage loan with Wells Fargo and were sent correspondence from Wells Fargo refunding an RLEF," *id*. ¶ 32, as well as

2

subclasses made up of "[a]ll persons in California, Illinois, and New York who closed or refinanced a mortgage loan with Wells Fargo and were sent correspondence from Wells Fargo refunding an RLEF," *id*. ¶ 33. While Defendants may have made refunds (accompanied by a "nominal payment for loss of use") for the assessed RLEFs, Plaintiff alleges that Defendants "have consciously retained for [themselves] billions of dollars [they] earned and received from [their] retention of these misappropriated funds." *Id*. ¶ 71. To recover these funds, Plaintiff, on behalf of himself and the class, asserts state law claims of unjust enrichment, money had and received, conversion, and civil theft against Defendants. *Id*. ¶¶ 64–99.

Defendants moved to dismiss Plaintiff's complaint in its entirety under Rule 12(b)(6). Dkt. No. 19 ("Mot."). The matter is now fully briefed. Dkt. Nos. 41 ("Opp."), 45 ("Reply").

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Rule 9(b) imposes a heightened pleading standard where fraud is an essential element of a claim. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *see also Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). A plaintiff must identify "the who, what, when, where, and how" of the alleged conduct, so as to provide defendants with sufficient information to defend against the charge. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P.

3

Rule 9(b).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nevertheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

### III. DISCUSSION

Defendants argue that Plaintiff's complaint fails to state a cognizable claim, and is, in any event, time barred. While the Court cannot rule out the applicability of the delayed discovery doctrine at this early stage, it agrees with Defendants that Plaintiff's claims ultimately fail for lack of specific factual allegations about Defendants' wrongdoing.

#### A. Request for Judicial Notice

The Court begins by addressing Defendants' request for judicial notice, which it will **GRANT**. Dkt. No. 19-5.

In *Khoja v. Orexigen Therapeutics*, the Ninth Circuit clarified the judicial notice rule and incorporation by reference doctrine. *See* 899 F.3d 988 (9th Cir. 2018). Under Federal Rule of Evidence 201, a court may take judicial notice of a fact "not subject to reasonable dispute because it … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Accordingly, a court may take "judicial notice of matters of public record," but "cannot take judicial notice of disputed facts contained in such public records." *Khoja*, 899 F.3d at 999 (citation and quotations omitted). The Ninth Circuit has clarified that if a court takes judicial notice of a document, it must specify what facts it judicially noticed from the document. *Id*. at 999. Further, "[j]ust because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Id*. As an example, the Ninth Circuit held that for a transcript of a conference call, the court may take judicial notice of the fact that there was a conference call on the specified date, but may not take judicial notice of a fact mentioned in the transcript, because the substance "is subject

to varying interpretations, and there is a reasonable dispute as to what the [document] establishes." *Id*. at 999–1000.

Separately, the incorporation by reference doctrine is a judicially created doctrine that allows a court to consider certain documents as though they were part of the complaint itself. *Id*. at 1002. This is to prevent plaintiffs from cherry-picking certain portions of documents that support their claims, while omitting portions that weaken their claims. *Id*. Incorporation by reference is appropriate "if the plaintiff refers extensively to the document or the document forms the basis of plaintiff's claim." *Khoja*, 899 F.3d at 1002. However, "the mere mention of the existence of a document is insufficient to incorporate the contents" of a document. *Id*. at 1002. And while a court "may assume [an incorporated document's] contents are true for purposes of a motion to dismiss … it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Id*.

Defendants request, and Plaintiff does not oppose, judicial notice of three documents. The first is a copy of WF & Co's information page on the National Information Center of the Federal Reserve Board, which Defendants rely on for the characterization of WF & Co. as a "bank holding company." *See* Dkt. No. 19-3, Ex. A. Because the webpage is published by a government entity and therefore cannot "reasonably be questioned," the Court will take judicial notice of the document. *See Daniels-Hall v. Nat'l Educ. Ass'n,* 629 F.3d 992, 998–99 (9th Cir. 2010). The second document is a copy of the merger agreement between the Mortgage Company and the Bank, which was filed with the Secretary of State of California on May 5, 2004. *See* Dkt. No. 19-4, Ex. B. The Court agrees that because the agreement "is a matter of public record, publicly available, and its accuracy is not reasonably subject to debate," it is a proper subject of judicial notice. Dkt. No. 19-5 at 2. The third and final document is a copy of the November 22, 2021 letter Defendants sent to Plaintiff concerning and enclosing his RLEF refund. *See* Dkt. No. 19-4, Ex. C. Since this letter was referenced in Plaintiff's complaint, *see, e.g.*, Compl. ¶¶ 30, 55, 56, and is the cornerstone of his claims, the Court concludes that it is properly incorporated by reference.

Accordingly, the Court **GRANTS** Defendants' requests. In considering the contents of Exhibits A, B, and C, however, the Court will not assume their truth or falsity. *See Pardi v.*

*Tricida, Inc.*, No. 21-CV-00076-HSG, 2022 WL 3018144, at *3–4 (N.D. Cal. July 29, 2022) (citations omitted).

### B. Statute of Limitations

Defendants argue that Plaintiff's claims are time-barred, and that the delayed discovery and fraudulent concealment doctrines do not apply. Mot. at 15–18. Plaintiff argues that his claims are timely, and that timeliness is a fact-intensive question rarely suited for resolution at the motion to dismiss stage. Opp. at 14–17. Finding that Plaintiff's entitlement to tolling based on delayed discovery presents a factual question, the Court declines to dismiss the complaint on statute of limitations grounds at this point in the litigation.

Generally, "a plaintiff must bring a claim within the limitations period after accrual of the cause of action." *Jaeger v. Howmedica Osteonics Corp.*, No. 15-CV-00164-HSG, 2016 WL 520985 (N.D. Cal. Feb. 10, 2016) (citing *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806 (2005)). The discovery rule is an "important exception" to this general rule in that it "permits delaying the accrual of a claim until the plaintiff discovers or has reason to discover the cause of action." *Id*. "A plaintiff has reason to discover a cause of action when he or she has reason to suspect a factual basis for its elements." *Id*. That said, to constitute discovery, a plaintiff "need not know the specific facts necessary for his or her cause of action, and need only have reason to at least suspect that a type of wrongdoing has injured them." *Walker v. Am. Nat'l Ins. Co.*, No. 16-CV-06255-HSG, 2018 WL 1993383, at *8 (N.D. Cal. Apr. 27, 2018) (citations omitted). In order to rely on the discovery rule for delayed accrual of a cause of action, a plaintiff whose complaint shows on its face that his claim would otherwise be barred must "plead facts showing (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Pratt v. Higgins*, No. 22-CV-04228-HSG, 2023 WL 4564551 at *6 (N.D. Cal. July 17, 2023). At the dismissal stage, the Court "must assume to be true any specific allegations explaining that the plaintiff did not discover, nor suspect, nor was there any means through which her reasonable diligence would have revealed, or through which she would have suspected the defendant's action as a cause of her injury." *Jaeger*, 2016 WL 520985 at *10 (citations omitted).

6

Plaintiff pleads that he and other class members "who closed loans with Wells Fargo prior to September 16, 2013, did not and could not discover Wells Fargo's willful misconduct until receiving their individual refund letters." Compl. ¶ 56. Plaintiff further alleges that Defendants' public settlement with the Office of the Comptroller of the Currency ("OCC") and the Consumer Financial Protection Bureau ("CFPB") could not put him or class members on inquiry notice of their injury, since those settlements covered conduct from September 2013 on and did not indicate that "Wells Fargo's RLEF misconduct extended prior to September 16, 2013." *Id.* ¶¶ 58–60. As such, Plaintiff maintains that "a reasonable person would not have had reason to suspect an injury, and therefore would not have been on inquiry notice of his claims, until he received his RLEF refund check" in 2021, making his claims timely. Opp. at 15. In their motion, Defendants contend that because Plaintiff failed to plead diligence, application of the doctrine is unwarranted. Mot. at 15–16. In their reply and at oral argument, however, Defendants raised an additional, previously unadvanced argument: that Plaintiff was put on inquiry notice when he was charged an RLEF, years before he eventually received his RLEF refund. Reply at 13–14. Given that RLEFs are borne by the party at fault for any closing delays, Defendants argue that Plaintiff would have had reason to know in 2005 whether he was improperly charged, and that he failed to plead any degree of diligence investigating any wrongful fee assessments from that time onward. *Id.*; *see also* Dkt. No. 51 at 5:1–17 (hearing transcript).

The Court finds that at this early stage, Plaintiff has plausibly pled that they had no basis to suspect or discover the alleged wrongdoing until receipt of Defendants' refund in 2021, and that the delayed discovery doctrine may accordingly apply. While evidentiary development may show otherwise, the Court does not now have a sufficient basis to conclude that when he closed in 2005, Plaintiff *necessarily* would have been able to ascertain which party was at fault for closing-related delays and consequently suspect that he had been injured by Defendants' allegedly wrongful RLEF assessment. This ambiguity arises in part because Plaintiff made minimal allegations concerning the loan process and the misrepresentations at issue. If, for example, Wells Fargo stated that it required 20 days to close when it actually required 25, the Court agrees that upon being charged an RLEF, Plaintiff could have been on notice of Defendants' potential wrongdoing

7

if he himself had not caused any delays.  However, some situations – where both parties contributed to delay, for example – could be murkier, and might leave Plaintiff in the dark regarding the alleged impropriety of being charged the RLEF.  Based on the allegations in the complaint, the Court therefore cannot conclude that Plaintiff necessarily had any cause to discover the wrongdoing at issue in 2005 instead of years later upon receipt of the refund in 2021, which is when Plaintiff alleges discovery occurred (and his duty to diligently investigate began).  Since Plaintiff conceivably could be entitled to tolling based on factual development, the Court concludes that "the running of the statute of limitations is [not] apparent on the face of [his] complaint," and therefore **DENIES** Defendants' motion to dismiss on that basis.  *U.S. ex rel. Air Control Techs. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013); *see also Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) ("When a motion to dismiss is based on the running of a statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.").

### C. Parties

Plaintiff's complaint names not only the Bank, but the Mortgage Company and WF & Co.  In their motion, Defendants argue that Plaintiff improperly lumps Defendants together, referring throughout his complaint simply to "Wells Fargo" instead of articulating which entity took which actions.  Defendants argue that this "shotgun" pleading approach warrants dismissal of the Mortgage Company and WF & Co., Reply at 8, especially given that the Mortgage Company supposedly merged into the Bank and is no longer a freestanding entity and that WF & Co. is merely a holding company.  Mot. at 13; Dkt. No. 19-2, Ex. A to Decl. of Amanda Groves.  Since Plaintiff does not oppose dismissal of the Mortgage Company from the action, *see* Opp. at 13 n.2, the Court considers only whether WF & Co. should be dismissed. [1]

The Court finds that Plaintiff's allegations are minimally adequate to state a claim against WF & Co.  The Court looks to one allegation in particular: that WF & Co. was supposedly responsible for "major policy, financial, and legal decisions, such as its decisions whether to

---

[1] Given Plaintiff's non-opposition to the Mortgage Company's dismissal, Opp. at 13 n.2, the Court further **DISMISSES** that defendant.

charge and ultimately partially refund RLEFs."[2]  Compl. ¶ 43.  By alleging that WF & Co. made policy decisions bearing on RLEF charges and refunds, Plaintiff connects WF & Co. to the misconduct he allegedly experienced in a manner that allows that defendant "to make informed responses to the plaintiff's allegations."  *Sollberger v. Wachovia Sec., LLC*, 2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010).  The Court therefore finds that at the pleading stage, Plaintiff has done the bare minimum to justify maintenance of this suit against WF & Co.[3]  That said, the Court observes that Plaintiff's otherwise serial references to "Wells Fargo" instead of to a specific defendant or group of defendants frustrate the Court and the parties' ability to understand the purported role played by each entity in the alleged misrepresentations at issue.  In any amended complaint, the Court cautions Plaintiff to avoid so-called "shotgun pleading," and directs Plaintiff to identify the action each Defendant took that would state a claim for relief without resorting to generalized allegations against "Wells Fargo" as a whole.  *See Resh, Inc. v. Skimlite Mfg. Inc.*, 666 F. Supp. 3d 1054, 1059 (N.D. Cal. 2023) (discussing the definition of and problems arising from "shotgun pleading").

The Court accordingly **DENIES** Defendants' motion to dismiss WF & Co. from the action.

## IV.  STATE LAW CLAIMS

Defendants correctly point out that "[e]ach of Plaintiff's four claims for relief requires allegations of wrongful conduct," and argue that Plaintiff has not made that showing.  Mot. at 13.  While something of a close question, the Court ultimately agrees – especially in view of the

---

[2] The Court acknowledges that Plaintiff's allegation is, more precisely, that the corporate headquarters of Wells Fargo & Company is where "its high-level officers direct, control, and coordinate the Company's activities," such as RLEF charges and refunds.  Compl. ¶ 43.  There is accordingly some ambiguity about whether the WF & Co. headquarters houses non-WF & Co. executives from its subsidiaries that contribute to the control of "the Company's activities."  Construing the allegations in the light most favorable to Plaintiff, the non-moving party, the Court understands Plaintiff to allege that high level WF & Co. officers – as opposed to high level officers from the Bank or other subsidiaries operating out of WF & Co. headquarters – are responsible for making these decisions.

[3] Contrary to Plaintiff's framing of his complaint, Paragraph ¶ 46 states that "*Wells Fargo's* unjust enrichment at Plaintiff's and Nationwide Class members' expense emanated from California, and all ill-gotten gains at issue in this lawsuit reside with *Wells Fargo* in California."  Compl. ¶ 46 (emphasis added).  In other words, Plaintiff does not allege – as argued – that WF & Co. possesses the profits that Plaintiff seeks disgorged.  If he intended to do so, Plaintiff should amend his allegations accordingly.

9

heightened pleading standard imposed by Rule 9(b) on Plaintiff's claims, which are all rooted in Defendants' allegedly fraudulent conduct relating to its assessment and retention of RLEFs.

Plaintiff's lawsuit rests on the foundational contention that Defendants' RLEF refund in 2021 can be explained only by the illegality of its original collection in 2005. In an effort to make this central claim plausible, Plaintiff pleads that unidentified loan documents purportedly limit RLEF refunds to instances of Wells Fargo's own willful misconduct. Compl. ¶ 22. But Plaintiff's allegations as to the exact nature of this misconduct are vague and conclusory, and appear to boil down to two alleged misrepresentations: one made in Defendants' form documents concerning the length of time to process the (unidentified) application, and one indicating that Plaintiff owed the RLEF he was ultimately charged. But without more details about the nature of the misrepresentations – not to mention the parties' courses of conduct during the loan transaction, given that the RLEF apparently accrues as owing to the party at fault for delays – the Court is left to guess as to what representations were made, which does not satisfy either Rule 8(a) or Rule 9(b). Plaintiff's assertion of impropriety is based on (1) an unanticipated refund, (2) an unidentified corporate policy permitting refunds only in the event of willful misconduct and (3) a consent decree covering pertinent misconduct. But Plaintiff fails to plead with particularity facts about the parties' course of conduct during the loan transaction (for example, whether closing was delayed beyond the rate lock period, and what party contributed to that delay), the specific representations made about the length of the application process and why they were misleading, or anything else that demonstrates Defendants' RLEF-related wrongdoing.

In so ruling, the Court does not need to credit Defendants' theory as to the reason for the refund. But while the issuance of a refund years after the fact is certainly interesting, Plaintiff has not pled sufficiently particularized factual allegations to allow the Court to conclude that any such intrigue provides a legally cognizable basis for his claims. Accordingly, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's claims **WITH LEAVE TO AMEND**.

//

//

//

## V. CONCLUSION

The Court **GRANTS** Defendants' motion to dismiss, Dkt. No. 19, and their request for judicial notice, Dkt. No. 19-5.

Any amended complaint is due within 21 days of this order.

**IT IS SO ORDERED.**

Dated: 2/26/2024

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge