ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS (SBN 213113)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
STUART A. DAVIDSON
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
sdavidson@rgrdlaw.com

Attorneys for Plaintiff and the Class

[Additional counsel listed in signature block.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY MORRIS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>WELLS FARGO & COMPANY and WELLS FARGO BANK, N.A.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 4:23-cv-03277

CLASS ACTION

AMENDED COMPLAINT FOR QUASI-CONTRACT FOR RESTITUTION AND DISGORGEMENT AND RELATED CLAIMS

JURY TRIAL DEMANDED

AMENDED COMPLAINT FOR QUASI-CONTRACT FOR RESTITUTION AND
DISGORGEMENT AND RELATED CLAIMS
CASE NO. 4:23-cv-03277

4895-8549-5214.v1

1   Plaintiff Anthony Morris ("Plaintiff"), individually and on behalf of all others similarly
2   situated, by his undersigned attorneys, for his Amended Class Action Complaint against
3   Defendants Wells Fargo & Company and Wells Fargo Bank, N.A. (collectively, "Wells Fargo,"
4   the "Company," or "Defendants"), alleges as follows based on personal knowledge as to himself
5   and upon information and belief as to all other matters based on the investigation of counsel.

**NATURE OF THE ACTION**

7   1.   This is a case about Wells Fargo's failure to return to its borrowers massive
8   amounts of money Wells Fargo made after it wrongly charged borrowers rate lock extension fees
9   ("RLEFs") on the borrowers' respective Wells Fargo mortgage applications. RLEFs extend the
10  period in which a quoted mortgage interest rate is "locked in" against potential market fluctuations.

11  2.   Not only has Wells Fargo effectively admitted that it wrongfully charged the
12  borrowers at issue, including Plaintiff, RLEFs on their Wells Fargo mortgage applications, former
13  Wells Fargo employees (*i.e.*, whistleblowers) have confirmed that Wells Fargo knowingly charged
14  borrowers like Plaintiff RLEFs despite Wells Fargo being clearly at fault for mortgage closing
15  delays.

16  3.   Beginning in late 2020, Wells Fargo tried to assuage these borrowers by returning
17  the wrongfully charged RLEFs along with the interest those borrowers paid on the fees as part of
18  their respective mortgages, as well as a nominal amount supposedly to "compensate [borrowers]
19  for the time [they] did not have these funds."  The amounts distributed do not properly compensate
20  borrowers for Wells Fargo's misappropriation and use of these funds for up to 18 years.

21  4.   In reality, Wells Fargo enjoyed a return of investment on these funds over the time
22  period at issue vastly in excess of the amounts returned to borrowers.

23  5.   It is reasonably believed that Wells Fargo's actual return on its investment of these
24  funds above the nominal amounts returned will be determined to be in the ***billions of dollars***.

25  6.   Thus, Wells Fargo's minimal payments to borrowers, including Plaintiff, are
26  wholly inadequate, inequitable, and in reality do nothing but try to cover up the enormous profits

**FIRST AMENDED COMPLAINT FOR QUASI-CONTRACT FOR RESTITUTION AND DISGORGEMENT AND RELATED CLAIMS**
**CASE NO. 4:23-cv-03277**

1  that Wells Fargo obtained from its nearly two-decades-long practice of wrongfully charging,

2  withholding, and reinvesting the RLEFs at issue.

3      7.    Wells Fargo's loan documents during the relevant time period strictly limit refunds

4  on many RLEFs, stating "You will ***not*** be entitled to a refund or credit for this fee at any time

5  (whether or not your loan is ever approved or closed) ***for any reason other than <u>willful misconduct</u>***

6  on the part of [Wells Fargo]."[1]

7      8.    Nevertheless, Wells Fargo issued these refunds to borrowers on its own initiative,

8  without any initiating request from or other interaction with the borrowers, and expressly

9  disclaimed that the Company had done so pursuant to any settlement or direction of a government

10  organization.

11      9.    This case seeks full disgorgement from Wells Fargo of the funds the Company

12  wrongfully made as a result of its illegal RLEF charges and its failure to return in full the money

13  it made on those funds over the course of almost two decades. This class action asserts quasi-

14  contract claims for restitution and disgorgement, money had and received, and conversion.

15      10.    Plaintiff and all members of the proposed Class (defined below) were all: (a)

16  improperly charged an RLEF by Wells Fargo; (b) sent a refund of the improperly charged RLEF

17  and a nominal amount purportedly to compensate the borrowers for the time the borrowers did not

18  have such funds; and (c) were not fully paid the returns on investment that Wells Fargo reaped

19  from its wrongdoing.

20                              **PARTIES**

21      11.    Plaintiff Anthony Morris is a natural person and a resident and citizen of the State

22  of New York.

23      12.    Defendant Wells Fargo & Company is a Delaware corporation and a citizen of

24  California, headquartered at 420 Montgomery Street, San Francisco, California 94104. Wells

25  Fargo & Company conducts business throughout California and the United States. Wells Fargo &

26  

27  [1]  Emphasis added throughout.

28  

4895-8549-5214.v1

1  Company is a financial services company with assets totaling $1.9 trillion, loans totaling

2  approximately $936.7 billion, and 226,000 employees.[2]

3       13.    At all relevant times, and continuing through the present, Wells Fargo & Company

4  owned various subsidiaries, including the wholly owned subsidiary Wells Fargo Bank, N.A.,

5  through which Wells Fargo & Company operated different lines of business.[3]

6       14.    According to Wells Fargo & Company, it "provide[s] a diversified set of banking,

7  investment and mortgage products and services, as well as consumer and commercial finance,

8  through banking locations and offices" that are "used across all of [its] reportable operating

9  segments and for corporate purposes."[4]

10      15.    Wells Fargo & Company's operating segments include: Consumer Banking and

11  Lending; Commercial Banking; Corporate and Investment Banking; and Wealth and Investment

12  Management. Its largest business segment is its Consumer Banking and Lending segment

13  (formerly known as the Community Banking segment),[5] which is responsible for managing many

14  of the everyday banking products targeted to individuals, including mortgage and home-equity

15  lending. This segment alone frequently contributed more than half (and in some years more than

16  two-thirds) of Wells Fargo & Company's revenue from 2004 through 2022.[6]

17

18  [2]   Wells Fargo & Company, Annual Report (Form 10-K) (FYE Dec. 31, 2023) ("2023 10-K"),
    https://www.sec.gov/ix?doc=/Archives/edgar/data/0000072971/000007297124000064/wfc-
19  20231231.htm.

20  [3]   *See* Deferred Prosecution Agreement of Wells Fargo & Co. and Wells Fargo Bank, N.A., Ex.
    A (Statement of Facts) ("DPA Facts") at ¶¶1-5, *United States v. Wells Fargo & Co.* (Feb. 20, 2020)
21  (summarizing investigative findings that Wells Fargo & Company and Wells Fargo Bank, N.A.
    "admit,    accept,    and    acknowledge    as    true"),    https://www.justice.gov/usao-cdca/press-
22  release/file/1251336/dl.

23  [4]   2023 10-K.

24  [5]   Wells Fargo & Company reorganized its management reporting structure into four reportable
    operating segments in 2020. Through this reorganization Wells Fargo & Company's Community
25  Banking segment became the current Consumer Banking and Lending segment. *See* Wells Fargo
    & Company, 2020 Annual Report at p. 176, https://www08.wellsfargomedia.com/assets/pdf/
26  about/investor-relations/annual-reports/2020-annual-report.pdf.

27  [6]   *See* 2023 10-K; *see also* DPA Facts at ¶¶1-5.

28
AMENDED COMPLAINT FOR QUASI-CONTRACT FOR RESTITUTION AND
DISGORGEMENT AND RELATED CLAIMS
CASE NO. 4:23-cv-03277

4895-8549-5214.v1

16.     Wells Fargo & Company directs, controls, and coordinates the Company's activities, including its major strategy, policy, financial, and legal decisions – including mortgage-lending-related decisions such as its decisions whether to charge and ultimately partially refund RLEFs. By way of example, early last year, Wells Fargo & Company announced its "strategic plans to create a more focused Home Lending business."[7]

17.     Defendant Wells Fargo Bank, N.A. is a national banking association and a citizen of South Dakota, headquartered at 101 North Phillips Avenue, Sioux Falls, South Dakota 57104. Wells Fargo Bank, N.A. has hundreds of banking locations throughout California and conducts business throughout California and the United States. Wells Fargo Bank, N.A., a wholly owned subsidiary of Wells Fargo & Company, provides Wells Fargo & Company with personal and commercial banking services and is Wells Fargo & Company's "principal subsidiary, with assets of $1.8 trillion, or 91% of the Company's assets."[8] Wells Fargo Bank, N.A. is also the successor by merger to Wells Fargo Home Mortgage, Inc.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d)(2) and (6), because: (a) there are 100 or more class members; (b) there is an aggregate amount in controversy exceeding $5,000,000.00 exclusive of interest and costs; and (c) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states. In addition, Wells Fargo agrees this Court has subject-matter jurisdiction because it removed this case to this Court. *See* ECF 1.

---

[7]  *See* Press Release, Wells Fargo, *Wells Fargo Announces Strategic Direction for Home Lending: A Smaller, Less Complex Business Focused on Bank Customers and Minority Communities* (Jan. 10, 2023), https://newsroom.wf.com/English/news-releases/news-release-details/2023/Wells-Fargo-Announces-Strategic-Direction-for-Home-Lending-A-Smaller-Less-Complex-Business-Focused-on-Bank-Customers-and-Minority-Communities/default.aspx.

[8]  Wells Fargo & Company, Annual Report (Form 10-K) (Dec. 31, 2021) at 1 ("2021 10-K"), https://www.sec.gov/ix?doc=/Archives/edgar/data/0000072971/000007297122000096/wfc-2021 1231.htm.

AMENDED COMPLAINT FOR QUASI-CONTRACT FOR RESTITUTION AND
DISGORGEMENT AND RELATED CLAIMS
CASE NO. 4:23-cv-03277

4895-8549-5214.v1

19.     This Court has personal jurisdiction over Defendants because Wells Fargo & Company is a citizen of California and has its principal place of business at 420 Montgomery Street, San Francisco, California 94104, and, during the relevant time period, Wells Fargo Bank, N.A. did sufficient business in, had sufficient contacts with, and intentionally availed itself of the laws and markets of California through the promotion, sale, marketing, distribution, and operation of its banking and mortgage products and services as to render exercise of jurisdiction in this Court.

20.     The Northern District of California is the United States District Court embracing the place where Plaintiff's former state court action was pending. Venue thus lies in this Court pursuant to 28 U.S.C. §1441(a).

## GENERAL ALLEGATIONS

21.     Mortgage rates vary over time due to various market conditions. Because weeks, and sometimes months, separate applications from closing, at the time of application, original and refinancing mortgage-lending applicants receive a quoted interest rate from lenders that is "locked in" for a set period. To protect against the possibility that a mortgage will fail to close within that period, borrowers can elect to extend the lock period by paying an RLEF, which is usually calculated as a function of a percentage of the proposed loan's principal balance and the length of the extension.

22.     Who pays the RLEF is a matter of lender policy. In general, when the delay is the fault of the lender (*e.g.*, Wells Fargo), that lender typically pays the RLEF. When the borrower is at fault, however, the cost of the extension is borne by the borrower.

23.     As a practical matter, borrowers generally pay any RLEFs for which they are responsible through an increase in the principal amount of the underlying loan by the RLEF amount at closing.

24.     Like most other national banks with mortgage-lending practices, Wells Fargo has, and had during the relevant time period, a policy that purports to charge borrowers for RLEFs only when the borrowers are at fault for delay and absorbs those fees itself (or simply does not charge

- 5 -
AMENDED COMPLAINT FOR QUASI-CONTRACT FOR RESTITUTION AND
DISGORGEMENT AND RELATED CLAIMS
CASE NO. 4:23-cv-03277

4895-8549-5214.v1

1    the borrower such fees) when the fault is Wells Fargo's. Wells Fargo did not deny this policy in a

2    Consent Order with the Office of the Comptroller of the Currency.[9]

3         25.    In addition, Wells Fargo's policy is and was at all relevant times to limit its

4    obligation to refund RLEFs to its borrowers **only** in the case of Wells Fargo's "***willful***

5    ***misconduct***." On information and belief, Wells Fargo's loan documents during the relevant time

6    period strictly limit refunds on many RLEFs, stating "You will ***not*** be entitled to a refund or credit

7    for this fee at any time (whether or not your loan is ever approved or closed) ***for any reason other***

8    ***than <u>willful misconduct</u>*** on the part of [Wells Fargo]."

9         26.    Because Wells Fargo refunded RLEFs to Plaintiff and Class members beginning in

10   or around 2020, it has effectively admitted that it engaged in willful misconduct by charging those

11   RLEFs in the first place.

12        27.    Thus, until Wells Fargo sent RLEF refund checks to Plaintiff and other Class

13   members, neither Plaintiff nor any other Class member would have been on notice that Wells Fargo

14   had engaged in willful misconduct by charging them RLEFs and by holding onto proceeds

15   obtained by Wells Fargo as a result of its decision to wrongfully charge those RLEFs.

16        28.    Notwithstanding the refunds distributed by Wells Fargo beginning in or around

17   2020, Wells Fargo has never paid nor disgorged to its victims the full profits Wells Fargo obtained

18   on the wrongfully charged RLEFs during this several years-long scheme.

19        29.    Wells Fargo must be ordered to do so now.

20

21

22

23

---

[9]    *See* Consent Order at ¶7, *In re Wells Fargo Bank, N.A.*, No. AA-EC-2018-15 (U.S. Dep't Treasury OCC Apr. 20, 2018) ("Beginning in at least September 2013 and continuing through March 2017, it was the Bank's policy that if (a) a mortgage loan application did not close within its initial interest rate lock period in circumstances where the Bank was responsible for the failure of the loan to close and (b) the customer chose to extend the interest rate lock period, the extension fee was to be charged to the Bank, and not the customer."), https://www.occ.gov/static/enforcement-actions/ea2018-025.pdf.

AMENDED COMPLAINT FOR QUASI-CONTRACT FOR RESTITUTION AND
DISGORGEMENT AND RELATED CLAIMS
CASE NO. 4:23-cv-03277

4895-8549-5214.v1

1

## PLAINTIFF'S EXPERIENCES

2       30.     Plaintiff is a real estate agent and broker. As such, he is intimately familiar with the

3   loan origination process, and clients specifically seek him out for his expertise in navigating FHA

4   203(k) loans.

5       31.     In or around early 2005, Plaintiff applied for an FHA 203(k) refinance loan through

6   Wells Fargo. The loan was for a property he had previously purchased from the U.S. Department

7   of Housing and Urban Development two years prior.

8       32.     Before applying through Wells Fargo, Plaintiff had successfully navigated the same

9   loan approval process at least **four times**. First, he underwent the same process on his own behalf

10  when he received the original loan for the property in question in or around 2003. After that initial

11  application, he then successfully guided at least three real estate clients through the same process.

12  Prior to his experience with Wells Fargo, Plaintiff had never been accused of submitting

13  insufficient documentation. Neither he nor his clients were ever charged an RLEF.

14      33.     On April 14, 2005, Plaintiff was conditionally approved for his loan with Wells

15  Fargo. He was provided with two options on his loan agreement: either have the interest rate and

16  cost of his mortgage "go up and down depending on market conditions" or "lock in the interest

17  rate." Relying on Wells Fargo's representations, confident in his ability to close the loan on time,

18  and not having been informed of the consequences of the loan not closing within the rate lock

19  period, Plaintiff elected to preserve the terms of his loan and lock-in his interest rate.

20      34.     During the relevant loan application and in the period prior to its closure, Plaintiff

21  meticulously gathered and promptly provided the loan originator with all required documentation

22  to close the loan on time.

23      35.     Despite Plaintiff's diligent efforts, he was subsequently informed by Wells Fargo

24  that his loan application ostensibly lacked essential documentation and that he was therefore

25  required to (re)submit these documents and pay an RLEF due to the resulting delay in closing his

26  loan. Fearing foreclosure on his first loan and seeking to avoid an increased interest rate on his

27  Wells Fargo loan, Plaintiff agreed to resubmit the relevant documentation even though he had

28

- 7 -

AMENDED COMPLAINT FOR QUASI-CONTRACT FOR RESTITUTION AND
DISGORGEMENT AND RELATED CLAIMS
CASE NO. 4:23-cv-03277

previously submitted all necessary documents. As a result of this resubmission, Plaintiff's loan did not close during the rate lock period. Assuming Wells Fargo was applying its stated policy fairly, and not wanting to delay the loan closure even further, Plaintiff subsequently paid an RLEF of $4,087.13.

36.    Within the last two years, and without any initiating contact or request by Plaintiff, Wells Fargo mailed Plaintiff a letter enclosing a purported refund check for the RLEF he was wrongfully charged by Wells Fargo in connection with his mortgage.

37.    Wells Fargo did not pay Plaintiff but instead retained for itself the full profits Wells Fargo obtained on the RLEF it wrongfully charged him 18 years earlier.

38.    Before receiving the refund check, Plaintiff had never suspected that a sophisticated financial institution like Wells Fargo would purposefully misrepresent that he had failed to submit proper documentation. However, Plaintiff submits that discovery will show that he was not at fault for the delay. On information and belief, Wells Fargo knowingly charged Plaintiff an RLEF even though it knew he was not responsible for any delay in the closing of his mortgage.

39.    Although Plaintiff possesses several documents relating to his mortgage application and loan, including the Settlement Statement dated August 2, 2005, a complete set of documents pertaining to Plaintiff's loan and RLEF payment are in Wells Fargo's exclusive possession.

**WELLS FARGO'S DELIBERATE SCHEME TO OFFLOAD**
**RLEF COSTS ONTO BORROWERS**

40.    Plaintiff's incident is not an isolated one; rather, it exemplifies Wells Fargo's wider strategy of exploiting procedural loopholes and inadequate oversight to impose unwarranted charges on borrowers.

41.    According to a former Wells Fargo employee-whistleblower from the Private Mortgage Banking Group ("PMB") of Wells Fargo Home Mortgage,[10] Wells Fargo Bank, N.A.

---

[10]    The original complaint named Wells Fargo Home Mortgage as a defendant. *See* ECF 1. However, Defendants have since clarified that Wells Fargo Home Mortgage no longer exists as a separate entity since it merged with Wells Fargo Bank, N.A. in 2004. *See* ECF 19 at p. 13.

- 8 -
AMENDED COMPLAINT FOR QUASI-CONTRACT FOR RESTITUTION AND
DISGORGEMENT AND RELATED CLAIMS
CASE NO. 4:23-cv-03277

and Wells Fargo & Company orchestrated an effort to shift the cost of RLEFs onto borrowers instead of the bank, resulting in millions of dollars wrongly paid by borrowers and billions of dollars in bank profit. This practice involved blaming customers for delays in the loan process and improperly charging them RLEFs.

42.     The whistleblower's disclosure of internal emails laid bare the tactics Wells Fargo deployed to rationalize RLEF charges. These include:

> The three most blatant methods of attempting to transfer blame onto customers for past and expected future delays in the mortgage process were:
>
> (1.) Having the underwriter stop the "Reg B clock" and note the file for "missing" customer documentation or information that had **already been provided by the borrower** and which was available to the underwriter for review. This is known as an AIRL.
>
> (2.) Having loan processors and loan closers note (aka AIRL) the file for "missing" customer documentation or information that had already been provided by the borrower.
>
> (3.) Rationalizing [Home Mortgage Consultants ("HMC")] or [Private Mortgage Bank ("PMB")] banker delays in requesting and/or submitting customer/borrower documents, info or forms as "customer-caused" or "customer-related" delays. This is probably one of the more obvious and egregious of the improper activities, as it treated the HMC or PMB Banker as an extension of the customer rather than as an WFHM or WFHM PMB employee proper.

43.     The whistleblower's account detailed how Wells Fargo PMB branch managers were enlisted to make calls directly to borrowers who were being or would be charged RLEFs. These calls were an attempt to document whether borrowers had been informed of the RLEFs and were part of a concerted effort at Wells Fargo to shift blame onto frontline employees and convince borrowers they were responsible for delays necessitating RLEFs.

44.     The whistleblower emphasized that these actions were part of a broader strategy within Wells Fargo Bank, N.A. and Wells Fargo & Company to offload financial burdens onto customers unjustly, with "refinance loans" such as the one Plaintiff applied for, being among the "most affected" by Wells Fargo's scheme.

AMENDED COMPLAINT FOR QUASI-CONTRACT FOR RESTITUTION AND DISGORGEMENT AND RELATED CLAIMS
CASE NO. 4:23-cv-03277

4895-8549-5214.v1

45.     The whistleblower's revelations confirm that Plaintiff's experience reflects a deliberate and common pattern of behavior over the course of many years, aimed at maximizing Wells Fargo's profits at the expense of customer trust.

## CLASS ACTION ALLEGATIONS

46.     Plaintiff brings this action pursuant to Rules 23(a), (b)(3), and (c)(4) of the Federal Rules of Civil Procedure, on behalf of himself and a class of other similarly situated individuals ("Nationwide Class"), as defined specifically below:

> **All persons in the United States and its Territories who closed or refinanced a mortgage loan with Wells Fargo and were sent correspondence from Wells Fargo refunding an RLEF.**

47.     In addition to the Nationwide Class, Plaintiff seeks to represent all members of the following Subclass(es) of the Nationwide Class, as well as any subclasses or issue classes as Plaintiff may propose and/or this Court may designate at the time of class certification ("Subclasses"), with respect to claims under state law:

> **All persons in California, Illinois, and New York who closed or refinanced a mortgage loan with Wells Fargo and were sent correspondence from Wells Fargo refunding an RLEF.**[11]

48.     Excluded from the Class are Defendants, their employees, officers, directors, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliated companies.

49.     Certification of Plaintiff's claims for Class-wide treatment is appropriate because Plaintiff can prove the elements of their claims on a Class-wide basis using the same evidence as they would use to prove those elements in individual actions alleging the same claims.

## Numerosity

50.     The members of the Class are so numerous that individual joinder is impracticable. Plaintiff alleges, upon information and belief, that Defendants unlawfully took and kept monies rightfully belonging to thousands or more Class members, including Plaintiff. The precise number

---

[11]    Unless otherwise noted, the Nationwide Class, California Class, Illinois Class, and New York Class are collectively referred to as the "Class."

- 10 -

AMENDED COMPLAINT FOR QUASI-CONTRACT FOR RESTITUTION AND
DISGORGEMENT AND RELATED CLAIMS
CASE NO. 4:23-cv-03277

of Class members is unknown to Plaintiff. However, the true number of Class members to whom Wells Fargo refunded unlawfully charged RLEFs but did not refund the full amount of profit Wells Fargo made on those misappropriated funds is known by Defendants, and thus Class members may be notified of the pendency of this action by first class mail, electronic mail, and/or published notice, pursuant to Rule 23(c)(2) of the Federal Rules of Civil Procedure.

**Typicality**

51.     Plaintiff's claims are typical of the claims of each of the Class members, as all Class members were and are similarly affected, and their claims arise from the same or substantially similar conduct.

**Adequacy of Representation**

52.     Plaintiff is committed to prosecuting the action, will fairly and adequately protect the interests of Class members, and have retained counsel competent and highly experienced in consumer class action litigation. Plaintiff has no interests that are antagonistic to the interests of the Class, and Defendants have no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and they have the resources to do so. Neither Plaintiff nor their counsel have any interest adverse to the interests of the other members of the Class.

**Commonality/Predominance**

53.     There are questions of law and fact that are common to the Class. These common questions predominate over any questions affecting only individual Class members. The questions of law and fact common to the Class include, but are not limited to:

(a)     Whether Defendants unlawfully took and retained monies belonging to Plaintiff and Class members;

(b)     whether Defendants should have, but did not, refund all profits obtained by Defendants on monies unlawfully taken and retained;

(c)     whether Defendants are liable to Plaintiff and Class members under quasi-contract for restitution;

AMENDED COMPLAINT FOR QUASI-CONTRACT FOR RESTITUTION AND
DISGORGEMENT AND RELATED CLAIMS
CASE NO. 4:23-cv-03277

4895-8549-5214.v1

1      (d)    whether Defendants are liable to Plaintiff and Class members for money

2    had and received;

3      (e)    whether Defendants are liable to Plaintiff and Class members for

4    conversion;

5      (f)    whether Plaintiff and Class members are entitled to disgorgement from

6    Defendants and the amount of such restitution and disgorgement; and

7      (g)    whether Plaintiff and Class members are entitled to damages, including

8    treble damages, and the amount of such damages.

9    **Superiority**

10    54.    A class action is superior to other available methods for the fair and efficient

11 adjudication of the rights of the Class members. The joinder of individual Class members is

12 impracticable because of the vast number of Class members.

13    55.    In comparison to piecemeal litigation, class action litigation presents far fewer

14 management difficulties, conserves the resources of both the judiciary and the parties far better,

15 and protects the rights of each Class member far more effectively. The benefits to the legitimate

16 interests of the parties, the Court, and the public resulting from class action litigation substantially

17 outweigh the expenses, burdens, inconsistencies, economic infeasibility, and inefficiencies of

18 individualized litigation. Class adjudication is superior to other alternatives. Class treatment will

19 also avoid the substantial risk of inconsistent factual and legal determinations on the many issues

20 in this lawsuit.

21    **CHOICE OF LAW FOR NATIONWIDE CLAIMS**

22    56.    The state of California has a significant interest in regulating the conduct of

23 businesses operating within its borders. California seeks to protect the rights and interests of all

24 California residents and citizens of the United States against wrongdoing by a company

25 headquartered and doing business in California. California has a greater interest in the nationwide

26 claims of Plaintiff and members of the Nationwide Class than any other state and is most intimately

27 concerned with the claims and outcome of this litigation.

28

AMENDED COMPLAINT FOR QUASI-CONTRACT FOR RESTITUTION AND
DISGORGEMENT AND RELATED CLAIMS
CASE NO. 4:23-cv-03277

4895-8549-5214.v1

57.     The corporate headquarters of Wells Fargo & Company, located in San Francisco, California, is the "nerve center" of all Wells Fargo business activities — the place where its high-level officers direct, control, and coordinate the Company's activities, including its major policy, financial, and legal decisions, such as its decisions whether to charge and ultimately partially refund RLEFs.

58.     Wells Fargo's acts of charging and ultimately issuing inadequate refunds of the RLEFs at issue and the returns generated on those funds, and the corporate decisions surrounding such acts, were made from and in California and/or under the oversight of the Company's corporate headquarters in California.

59.     As the parent company to Wells Fargo Bank, N.A., Wells Fargo & Company reports to the U.S. Securities and Exchange Commission in its consolidated financial statements all income generated by its subsidiaries. As of December 31, 2021, Wells Fargo & Company reported that "Wells Fargo Bank, N.A. [had] assets of $1.8 trillion, or 91% of the Company's assets."[12]

60.     Wells Fargo & Company's unjust enrichment at Plaintiff's and Nationwide Class members' expense emanated from California, and all ill-gotten gains at issue in this lawsuit reside with Wells Fargo in California.

61.     Application of California law to the Nationwide Class with respect to Plaintiff's and Class members' claims is neither arbitrary nor fundamentally unfair because California has a significant aggregation of contacts that create a state interest in the claims of Plaintiff and the Nationwide Class.

62.     Under California's choice of law principles, which are applicable to this action, the common law of California applies to the nationwide common law claims of all Nationwide Class members. Additionally, given California's significant interest in regulating the conduct of

---

[12]   2021 10-K.

AMENDED COMPLAINT FOR QUASI-CONTRACT FOR RESTITUTION AND
DISGORGEMENT AND RELATED CLAIMS
CASE NO. 4:23-cv-03277

4895-8549-5214.v1

businesses operating within its borders, California's common and statutory law may be applied to non-resident consumer Plaintiff as against this resident-defendant, Wells Fargo & Company.

**PLAINTIFF'S DISCOVERY OF**
**WELLS FARGO'S WILLFUL MISCONDUCT**

63.     Plaintiff's causes of action below are predicated on Wells Fargo's willful misconduct which resulted in improper payment of RLEFs by Plaintiff.

64.     Wells Fargo represented to Plaintiff in its form documents and on Plaintiff's settlement statement that Plaintiff owed Wells Fargo payment for an RLEF.

65.     Plaintiff accepted that representation and paid an RLEF to Wells Fargo in reliance on the representation that such a payment was properly owing, to avoid the imminent risk of foreclosure on his first mortgage, and to preserve his original interest rate.

66.     Wells Fargo admitted that this representation was false and intentional when it refunded that RLEF with interest on its own initiative, without any initiating interaction with the borrower, and not pursuant to any settlement agreement nor at the direction of any government organization.

67.     Wells Fargo similarly admitted that this representation was false and intentional when it refunded RLEFs that, on information and belief, it had specifically acknowledged would only be refundable in the event of "***willful misconduct*** on the part of [Wells Fargo]" — in form documents ***Wells Fargo itself authored***.

68.     These causes of action predicated on willful misconduct are particularly suitable for adjudication on a Class-wide basis because, unlike many such claims, virtually all evidence of Wells Fargo's willful misconduct is common across all Class members. For example:

(a)     Wells Fargo made form representations in a virtually identical manner to Plaintiff and each Class member that they owed Wells Fargo payment for an RLEF in form documents and on their settlement statement at closing;

AMENDED COMPLAINT FOR QUASI-CONTRACT FOR RESTITUTION AND
DISGORGEMENT AND RELATED CLAIMS
CASE NO. 4:23-cv-03277

4895-8549-5214.v1

(b)     Plaintiff and each Class member paid an RLEF to Wells Fargo which they would not have paid but for that common misrepresentation, meaning Plaintiff can prove reliance by common evidence; and

(c)     Wells Fargo made form admissions in a virtually identical manner to Plaintiff and each Class member when it sent virtually identical refund letters to Plaintiff and each Class member.

69.     Plaintiff and Class members who closed loans with Wells Fargo prior to September 16, 2013, did not and could not discover Wells Fargo's willful misconduct until receiving their individual refund letters.

70.     On April 20, 2018, Wells Fargo entered into consent orders with the Office of the Comptroller of the Currency ("OCC") and the Consumer Financial Protection Bureau ("CFPB") emerging from, among other things, Wells Fargo's wrongful practices related to charging RLEFs.

71.     The OCC and CFPB investigations and consent orders explicitly limited their investigation of Wells Fargo's RLEF practices to a window beginning September 16, 2013, and ending February 28, 2017, despite covering broader timeframes with respect to Wells Fargo's other improper practices.

72.     A reasonable person reading those reports would assume that Wells Fargo's RLEF misconduct extended no earlier than September 16, 2013.

73.     No other publicly available information at the time suggested that Wells Fargo's RLEF misconduct extended prior to September 16, 2013. If it had, OCC and CFPB likely would have investigated more broadly.

74.     Indeed, on Wells Fargo's own website, Wells Fargo states:

On October 4, 2017, Wells Fargo announced that after an internal review, we determined that our mortgage rate lock extension fee policy was, at times, inconsistently applied *during the period of September 16, 2013 through February 28, 2017*.  As a result, some borrowers were charged fees for rate lock extensions

AMENDED COMPLAINT FOR QUASI-CONTRACT FOR RESTITUTION AND DISGORGEMENT AND RELATED CLAIMS
CASE NO. 4:23-cv-03277

4895-8549-5214.v1

when Wells Fargo was primarily responsible for the delays that caused the need for the extensions.[13]

75.     Accordingly, neither Plaintiff nor any Class member would have been put on notice that Wells Fargo wrongfully charged them RLEFs prior to September 16, 2013.

76.     Furthermore, under the delayed discovery doctrine, Plaintiff and Class members would not have had reason to suspect that Wells Fargo was at fault for the delay in closing. As detailed by the whistleblower, Wells Fargo used deceptive methods to trick borrowers into believing that they were the ones responsible for the delay.

77.     Plaintiff only discovered that Wells Fargo's RLEF misconduct began significantly earlier when he received refunds for RLEFs he had paid prior to September 16, 2013 — a refund they had never requested from Wells Fargo.

## FIRST CAUSE OF ACTION

### Quasi-Contract for Restitution and Disgorgement
### (On Behalf of Plaintiff and the Nationwide and California Classes Under California Law Against All Defendants)

78.     Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 - 77 above as if fully set forth herein.

79.     Plaintiff brings this claim on behalf of himself and the Nationwide Class. In the alternative, Plaintiff brings this claim on behalf of the Subclasses under the law of each state in which Plaintiff and Class members who closed or refinanced a mortgage loan with Wells Fargo and were sent correspondence from Wells Fargo refunding an RLEF or increased costs resulting from an RLEF being assessed.

80.     Plaintiff and Class members conferred a monetary benefit on Defendants. Defendants received and retained money belonging to Plaintiff and Class members directly through payments of unauthorized and improper RLEFs on their mortgage applications.

---

[13]   Wells Fargo, *Making Things Right for Customers – Customer Redress Review Program*, https://www.wellsfargo.com/help/customer-redress/ (last visited Mar. 14, 2024).

AMENDED COMPLAINT FOR QUASI-CONTRACT FOR RESTITUTION AND DISGORGEMENT AND RELATED CLAIMS
CASE NO. 4:23-cv-03277

4895-8549-5214.v1

81.    Defendants had knowledge of the benefits conferred on them by Plaintiff and the Class members.

82.    Defendants knowingly and willfully charged unauthorized and unwarranted RLEFs but has neither refunded nor disgorged to Plaintiff and Class members all profits Defendants reaped from retaining RLEFs paid by Plaintiff and Class members.

83.    Defendants' conscious and knowing misconduct is evidenced by at least two facts. ***First***, in refunding Plaintiff and Class members the RLEFs at issue, Defendants admitted to Wells Fargo's knowing misconduct. On information and belief, Defendants' mortgage loan documents during the Class Period expressly limit refunds of many RLEFs only to situations where there has been "***willful misconduct*** on the part of [Wells Fargo]." That RLEF refund is precisely what Defendants' customers received beginning at least in late 2020. ***Second***, whistleblower allegations reveal that Plaintiff's incident is emblematic of a broader strategy by Wells Fargo to exploit procedural loopholes and inadequate oversight to impose unwarranted charges on borrowers. Each of the foregoing facts alone strongly support the inference that Defendants committed willful misconduct related to each refunded RLEF.

84.    As a result of Defendants' conduct, Plaintiff and Class members are entitled to restitution and disgorgement of Defendants' ill-gotten gains.[14]

85.    Although Defendants have refunded the principal amount of RLEFs wrongfully charged Plaintiff and Class members, along with a nominal payment for loss of use, Defendants have consciously retained for itself billions of dollars it earned and received from its retention of these misappropriated funds. Those profits rightfully and as a matter of equity belong to Plaintiff and Class members from whom Defendants misappropriated those funds.[15]

---

[14]   "The elementary rule of restitution is that if you take my money and make money with it, your profit belongs to me." *Nickel v. Bank of Am. Nat'l Tr. & Sav. Ass'n*, 290 F.3d 1134, 1138 (9th Cir. 2002) (citing Restatement (First) of Restitution §1 (Am. Law. Inst. 1937)).

[15]   "Restitution requires full disgorgement of profit by a conscious wrongdoer, not just because of the moral judgment implicit in the rule of this section, but because any lesser liability would provide an inadequate incentive to lawful behavior. If A anticipates (accurately) that unauthorized interference with B's entitlement may yield profits exceeding any damages B could prove, A has

86.     Under a theory of quasi-contract, along with principles of equity and good conscience, Defendants should not be permitted to retain the money belonging to Plaintiff and Class members, nor should Defendants be permitted to retain profits they earned on money belonging to Plaintiff and Class members.

87.     Defendants should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class members all unlawful or inequitable proceeds that Defendants received.

88.     Plaintiff and Class members have no adequate remedy at law.

89.     A constructive trust should be imposed on all unlawful or inequitable sums received by Defendants traceable to Plaintiff and Class members.

**SECOND CAUSE OF ACTION**

**Money Had and Received**

90.     Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 - 77 above as if fully set forth herein.

91.     Plaintiff brings this claim on behalf of himself and the Nationwide Class. In the alternative, Plaintiff brings this claim on behalf of the Subclasses under the law of each state in which Plaintiff and Class members who closed or refinanced a mortgage loan with Wells Fargo and were sent correspondence from Wells Fargo refunding an RLEF or increased costs resulting from an RLEF being assessed.

92.     Defendants are indebted to Plaintiff and Class members for a certain sum which Defendants received and which Plaintiff and Class members are entitled to use of.

---

a dangerous incentive to take without asking — since the nonconsensual transaction promises to be more profitable than the forgone negotiation with B." Restatement (Third) of Restitution and Unjust Enrichment §3(c) TD No 7 (2010); *see also W. Steamship Lines, Inc. v. San Pedro Peninsula Hosp.*, 876 P.2d 1062, 1066 (Cal. 1994) (California Supreme Court adopts the Restatement of Restitution as authoritative).

AMENDED COMPLAINT FOR QUASI-CONTRACT FOR RESTITUTION AND DISGORGEMENT AND RELATED CLAIMS
CASE NO. 4:23-cv-03277

4895-8549-5214.v1

93.     Specifically, Defendants are indebted to Plaintiff and Class members for the entire amount of profits Defendants earned on unauthorized and unwarranted RLEFs.[16] The amount sought is specific, identifiable, and capable of being ascertained through discovery.

94.     Because Defendants engaged in willful misconduct in charging Plaintiff and Nationwide Class members for RLEFs, Plaintiff and Class members paid RLEFs to Defendants pursuant to an agreement that is void for illegality.

95.     Under principles of equity and good conscience, Defendants should not be permitted to retain the money belonging to Plaintiff and Class members, nor should Defendants be permitted to retain profits they earned on money they obtained through willful misconduct, which rightfully belongs to Plaintiff and Class members.

96.     Defendants should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class members all unlawful or inequitable proceeds that Defendants received pursuant to an illegal agreement.

97.     Plaintiff and Class members have no adequate remedy at law.

98.     A constructive trust should be imposed on all unlawful or inequitable sums received by Defendants traceable to Plaintiff and Class members.

## THIRD CAUSE OF ACTION

### Conversion

99.     Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 - 77 above as if fully set forth herein.

100.    Plaintiff brings this claim on behalf of himself and the Nationwide Class. In the alternative, Plaintiff brings this claim on behalf of the Subclasses under the law of each state in which Plaintiff and Class members who closed or refinanced a mortgage loan with Wells Fargo

---

[16]   Alternatively, Plaintiff and Class members are entitled to interest on the RLEF at the statutory rate under California law – not on their mortgage interest rate. Cal. Const. art. 15 §1.

AMENDED COMPLAINT FOR QUASI-CONTRACT FOR RESTITUTION AND
DISGORGEMENT AND RELATED CLAIMS
CASE NO. 4:23-cv-03277

4895-8549-5214.v1

1   and were sent correspondence from Wells Fargo refunding an RLEF or increased costs resulting

2   from an RLEF being assessed.

3       101.   Defendants wrongfully exercised — and continue to exercise — dominion over

4   property (*i.e.*, money) of Plaintiff and Class members, *to wit*: all profits reaped on improperly

5   charged RLEFs.

6       102.   Plaintiff and Class members have full and complete ownership or right to

7   possession of all profits reaped on improperly charged RLEFs.

8       103.   Defendants converted the property of Plaintiff and Class members for their own

9   benefit by a wrongful act, *to wit*: charging unauthorized and unwarranted RLEFs and retaining all

10  profits reaped on illegally charged RLEFs.

11      104.   As a consequence of Defendants' wrongful conversion of Plaintiff's and Class

12  members' property rights, Plaintiff and Nationwide Class members have suffered damages

13  including the ability to invest and earn profits on the unlawfully converted money. Alternatively,

14  Plaintiff and Class members are entitled to interest at the statutory rate from the time of conversion.

15  Cal. Civ. Code §3336.

16      105.   Defendants are strictly liable to Plaintiff and Class members for their wrongful

17  conversion.

18                    **PRAYER FOR RELIEF**

19      WHEREFORE, Plaintiff, on behalf of himself and the Class, respectfully requests that this

20  Court enter an Order:

21      A.   Certifying this case as a class action on behalf of the Class defined above,

22  appointing Plaintiff as a representative of the Class, and appointing his counsel as Class Counsel;

23      B.   Awarding restitution and disgorgement to Plaintiff and Class members in an

24  amount to be determined at trial;

25      C.   Awarding nominal, compensatory, and punitive damages to Plaintiff and Class

26  members in an amount to be determined at trial;

27

28

- 20 -

AMENDED COMPLAINT FOR QUASI-CONTRACT FOR RESTITUTION AND
DISGORGEMENT AND RELATED CLAIMS
CASE NO. 4:23-cv-03277

1    D.    Awarding Plaintiff and Class members their costs-of-suit, reasonable litigation

2 expenses, and attorneys' fees;

3    E.    Awarding Plaintiff and Class members pre- and post-judgment interest, to the

4 extent allowable; and

5    F.    Awarding such other and further relief as equity and justice may require.

6                                **JURY TRIAL DEMAND**

7    Plaintiff demands a trial by jury for all issues so triable.

8  DATED: March 18, 2024                    ROBBINS GELLER RUDMAN & DOWD LLP
                                            STUART A. DAVIDSON*
9

10                                          _/s/ Stuart A. Davidson_
11                                          STUART A. DAVIDSON
12                                          225 NE Mizner Boulevard, Suite 720
                                            Boca Raton, FL 33432
13                                          Telephone: 561/750-3000
                                            561/750-3364 (fax)
14                                          sdavidson@rgrdlaw.com

15                                          ROBBINS GELLER RUDMAN & DOWD LLP
                                            SHAWN A. WILLIAMS (SBN 213113)
16                                          Post Montgomery Center
                                            One Montgomery Street, Suite 1800
17                                          San Francisco, CA  94104
                                            Telephone:  415/288-4545
18                                          415/288-4534 (fax)
                                            shawnw@rgrdlaw.com
19

20                                          ROBBINS GELLER RUDMAN & DOWD LLP
                                            CHAD JOHNSON*
21                                          NOAM MANDEL*
                                            DESIREE CUMMINGS*
22                                          JONATHAN ZWEIG*
23                                          420 Lexington Avenue, Suite 1832
                                            New York, NY  10170
24                                          Telephone:  212/432-5100
                                            ChadJ@rgrdlaw.com
25                                          Noam@rgrdlaw.com
26                                          DCummings@rgrdlaw.com
                                            JZweig@rgrdlaw.com
27

                                            - 21 -
28   AMENDED COMPLAINT FOR QUASI-CONTRACT FOR RESTITUTION AND
     DISGORGEMENT AND RELATED CLAIMS
     CASE NO. 4:23-cv-03277

SELENDY GAY PLLC
SEAN BALDWIN*
ZACHARY SMITH*
JACOB MAIMAN-STADTMAUER (*pro hac vice* pending)
1290 Avenue of the Americas
New York, NY  10104
Telephone:  212/390-9000
212/390-9399 (fax)
sbaldwin@selendygay.com
zsmith@selendygay.com
jmaimanstadtmauer@selendygay.com

SEEGER WEISS LLP
CHRISTOPHER AYERS*
STEVEN J. DAROCI*
55 Challenger Road
Ridgefield Park, NJ 07660
Telephone:  973/639-9100
973/679-8656 (fax)
cayers@seegerweiss.com
sdaroci@seegerweiss.com

Attorneys for Plaintiff and the Class

* *Pro hac vice*

AMENDED COMPLAINT FOR QUASI-CONTRACT FOR RESTITUTION AND
DISGORGEMENT AND RELATED CLAIMS
CASE NO. 4:23-cv-03277

4895-8549-5214.v1