Amanda L. Groves (SBN 187216)
agroves@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue, 38th Floor
Los Angeles, CA 90071
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Drew H. Washington (SBN 350107)
dwashington@winston.com
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111-5840
Telephone: (415) 591-1475
Facsimile: (415) 591-1400

Kobi K. Brinson (*pro hac vice*)
kbrinson@winston.com
Stacie C. Knight (*pro hac vice*)
sknight@winston.com
WINSTON & STRAWN LLP
300 South Tryon Street, 16th Floor
Charlotte, NC 28202
Telephone: (704) 350-7700
Facsimile: (704) 350-7800

*Attorneys for Defendants*
*Wells Fargo & Company and*
*Wells Fargo Bank, N.A.*
.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| ANTHONY MORRIS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO & COMPANY and WELLS FARGO BANK, N.A.,<br><br>Defendants. | Case No.  **4:23-CV-03277-HSG**<br><br>**DEFENDANTS WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A.'S MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT**<br><br>Date:     July 11, 2024<br>Time:     2:00 p.m.<br>Place:    Courtroom 2, 4th Floor<br>          Oakland Courthouse<br>          1301 Clay Street<br>          Oakland, CA 94612<br>Judge:    Hon. Haywood S. Gilliam, Jr. |

**TABLE OF CONTENTS**

Page

I.     FACTUAL BACKGROUND ............................................................................................... 1

II.    THE COURT'S DISMISSAL ORDER AND PLAINTIFF'S AMENDED
       COMPLAINT ................................................................................................................... 4

III.   ARGUMENT .................................................................................................................... 6

       A.    LEGAL STANDARD ............................................................................................ 6

       B.    PLAINTIFF'S LOAN DOCUMENTS SHOW THAT HIS ALLEGATIONS
             ARE IMPLAUSIBLE. ........................................................................................... 7

       C.    PLAINTIFF CONTINUES TO LUMP WF & CO. WITH WFBNA IN
             VIOLATION OF THE COURT'S DISMISSAL ORDER. ....................................... 8

       D.    PLAINTIFF'S ALLEGATIONS OF WRONGFUL CONDUCT REMAIN
             IMPERMISSIBLY CONCLUSORY. ..................................................................... 10

       E.    PLAINTIFF'S NEW ALLEGATIONS CONFIRM THAT HIS CLAIMS
             ARE TIME-BARRED. ........................................................................................... 13

       F.    EACH OF PLAINTIFF'S CLAIMS SEPARATELY FAILS AS A
             MATTER OF LAW. ............................................................................................... 14

             1.    PLAINTIFF'S QUASI-CONTRACT CLAIM FAILS BECAUSE THE
                   PARTIES HAD AN EXPRESS CONTRACT. ............................................. 15

             2.    THE CLAIM FOR MONEY HAD AND RECEIVED FAILS AS A
                   MATTER OF LAW. .................................................................................... 15

             3.    PLAINTIFF FAILS TO STATE A CLAIM FOR CONVERSION. .............. 17

IV.    CONCLUSION ................................................................................................................ 19

1     Through this action, Plaintiff Anthony Morris demands "billions" of dollars from Wells

2  Fargo based on his allegation that Wells Fargo improperly charged him a fee to extend the interest

3  rate lock period on his August 2005 mortgage loan.  The Court dismissed Plaintiff's original

4  complaint for failure to allege any wrongdoing by Wells Fargo and granted Plaintiff leave to amend.

5  In response, Plaintiff added allegations, but they do not save his claims from dismissal.  To the

6  contrary, Plaintiff's new allegations confirm that his claims fail as a matter of law and should be

7  dismissed—this time, with prejudice.

8     First, Plaintiff's loan documents, which are subject to judicial notice, contradict his new

9  allegations that (1) his loan closing was delayed beyond his original rate-lock period; and (2) he paid

10  a rate lock extension fee.  Because all of Plaintiff's claims hinge on those demonstrably wrong

11  assertions, Plaintiff has not alleged, and, in fact, cannot allege, any plausible claims against Wells

12  Fargo.  Dismissal with prejudice is warranted.

13     Second, Plaintiff's new allegations confirm that Plaintiff suspected wrongdoing in 2005,

14  during the loan application process.  In light of that admission, Plaintiff's claims are time-barred on

15  their face and his tolling allegations are superfluous.

16     Finally, all three claims fail for substantive reasons.  The quasi-contract claim is barred by

17  the parties' express contract: the rate lock agreement.  Plaintiff's claim for money had and received

18  fails for the same reasons, and on the additional ground that Plaintiff does not seek the return of a

19  definite sum that Wells Fargo received for Plaintiff's benefit, which are required elements of the

20  claim.  The conversion claim must be dismissed because Plaintiff does not seek a definite sum and

21  because Plaintiff had no ownership of or right to the "profits" he seeks or in the "investment

22  opportunities" he now claims.  Moreover, it is well-settled that an alleged overcharge cannot form

23  the basis for such a claim, nor can a payment that was voluntarily made.  Plaintiff's claims lack legal

24  merit, and the Amended Complaint should be dismissed with prejudice.

25  **I.    FACTUAL BACKGROUND**

26     Wells Fargo Bank, N.A. ("WFBNA") offers mortgage loans and other real estate-related

27  loans through its operating division, Wells Fargo Home Mortgage.  Wells Fargo & Company ("WF

28  & Co.") is the parent of WFBNA and a bank holding company.  It does not conduct banking

activities or mortgage lending.  *See, e.g.*, 12 U.S.C. § 1841 (describing what qualifies as a "bank holding company" under the Bank Holding Company Act).

Plaintiff Anthony Morris is a resident and citizen of New York.  Am. Compl. ¶ 11.  His claims arise out of a mortgage loan he closed with Wells Fargo almost 19 years ago, on August 2, 2005.  Am. Compl. ¶¶ 31-35; Declaration of Amanda L. Groves ("Groves Declaration"), Exhibits A and B; Request for Judicial Notice, ¶¶ 1-2.[1]  As alleged in the Amended Complaint, "at the time of application, [] mortgage-lending applicants receive a quoted interest rate from lenders that is 'locked in' for a set period."  Am. Compl. at ¶ 21.  If the customer delays the process and prevents the closing from happening during the lock period, the lock period can be extended if the customer pays a fee, referred to as the rate lock extension fee, or "RLEF."  *Id*. at ¶¶ 22, 24.  On the other hand, if Wells Fargo causes the delay in closing, Wells Fargo "typically pays the RLEF."  *Id*. at ¶ 22.

Plaintiff's loan documents, which are subject to judicial notice, aptly demonstrate this sequence of events.  On June 1, 2005, Plaintiff instructed Wells Fargo to "lock in" his interest rate and other loan terms until August 10, 2005.  Groves Declaration, Exhibit C and Request for Judicial Notice, ¶ 3.  As outlined in the Price Range Protection Confirmation/Rate Lock Agreement Plaintiff signed (the "Rate Lock Agreement"), the standard lock period is no more than 60 days.  *See id*.  Because Plaintiff opted for a longer lock period that gave him more than 60 days to close his loan, he paid an ***up-front, extended lock fee*** of $4,087.13.  *Id*.  The Rate Lock Agreement explains that if Plaintiff's loan did not close and fund before the expiration of his initial lock period on August 10, 2005, Plaintiff would be required to pay an extension fee in order to maintain his original, locked-in interest rate:

---

[1] On considering a motion to dismiss, judicial notice of the full text of documents referenced in a complaint is proper under the doctrine of "incorporation by reference."  *In re CNET Networks, Inc*., 483 F. Supp. 2d 947, 953 (N.D. Cal. 2007).  At the hearing on Wells Fargo's original motion to dismiss, Plaintiff's counsel argued that all of Plaintiff's "loan documents" are "incorporated within the complaint."  Transcript of Motion Hearing Before the Honorable Hayward S. Gilliam, Jr. (Nov. 16, 2023) at 8:7-13 (Groves Declaration, Exhibit F and Request for Judicial Notice, ¶ 6).  Finally, a court may also take judicial notice of matters of public record.  *See Cnty. of Santa Clara v. Trump*, 267 F. Supp. 3d 1201, 1216-17 n.7-10 (N.D. Cal. 2017) (citing Fed. R. Evid. 201(b)(2)).

> If you qualify for the loan and your loan is closed and funded before the expiration date, the Lender will make the loan at said note rate and discount points. ***If this lock should expire, you will be required to pay an extension fee and your rate will stay the same***.

*Id*. (emphasis added). Accordingly, there is a difference between an up-front, "extended lock fee," which Plaintiff paid, and an RLEF, which Plaintiff did not. Indeed, Plaintiff's loan closed on August 2, 2010 and funded on August 8, 2010, both within the original lock period. *See* Groves Declaration, Exhibits A through D and Request for Judicial Notice, ¶¶ 1-4. No RLEF was necessary.

Plaintiff asserts that "within the last two years," Wells Fargo mailed him a letter enclosing a refund check for the RLEF he (incorrectly) claims he was charged. Am. Compl. at ¶ 36; Groves Declaration, Exhibit E; Request for Judicial Notice, ¶ 5. As stated in the letter:

> We're reaching out because you ***may have*** paid one or more rate lock extension fees with respect to the above mortgage account. You ***may have*** paid that fee(s) if your loan closing did not take place within your original rate lock period, and the rate lock extension made sure your interest rate stayed locked in through the closing and funding of your loan.

*See id*. (emphasis added). The letter enclosed a check for $6,805.02. *Id*. The letter does not say that Plaintiff was wrongfully charged a RLEF. *Id*. In fact, it does not say that Plaintiff was charged a RLEF ***at all***. Instead, the letter says Plaintiff "***may have***" paid such a fee "***if*** [his] loan closing did not take place within [his] original lock period." *Id*. (emphasis added). As shown above, neither of those things is true, because Plaintiff's loan closing ***did*** take place within his original lock period. Plaintiff nonetheless suggests misconduct by Wells Fargo, based on both his allegation that "Wells Fargo issued refunds … on its own initiative, without any initiating requests from or other interaction with the borrowers" and "disclaimed that [it did] so pursuant to any settlement or direction of a government organization," and on his new, but inaccurate, allegation that Wells Fargo delayed his loan closing beyond the original lock period. Am. Compl. at ¶¶ 8, 35. Plaintiff also refers to his Rate Lock Agreement, which states that borrowers "will not be entitled to a refund or credit" for their ***up-front rate lock fees***—not RLEFs—"for any reason other than willful misconduct on the part of [Wells Fargo]." *Id*. at ¶ 8; Groves Declaration, Exhibit C; Request for Judicial Notice, ¶ 3. In other words, Plaintiff's Rate Lock Agreement "entitled" him to a refund of his up-front fee

only if Wells Fargo's "willful misconduct" caused his loan to close beyond the original rate-lock period.  *See id*.  Accordingly, even if Plaintiff had sufficiently alleged "willful misconduct" (and to be clear, he has not) he still would not be "entitled" to any refund, because his loan closed within the original rate-lock period.  And, in any event, Plaintiff's "entitlement" to a refund would obviously not prevent Wells Fargo from deciding to voluntarily refund fees to customers for business reasons that do not amount to "willful misconduct," which, again, is not alleged here.

## II.     THE COURT'S DISMISSAL ORDER AND PLAINTIFF'S AMENDED COMPLAINT

As the Court knows, the Amended Complaint is the second iteration of Plaintiff's claims.  On July 31, 2023, Wells Fargo moved to dismiss the original complaint based on Plaintiff's failure to make a single allegation of wrongdoing against any defendant.  *See* Dkt. 19 at 7-8.  Wells Fargo also argued that Plaintiff's "kitchen sink" allegations against WF & Co., which improperly lumped WF & Co. with WFBNA, were improper, and that, as a bank holding company, WF & Co. had no relationship or dealings with Plaintiff.  *See id*. at 6-7.  Finally, Wells Fargo argued that Plaintiff's claims are time-barred, and that his claims failed as a matter of law for independent, substantive reasons.  *See id*. at 9-18.

After full briefing and oral argument, the Court dismissed Plaintiff's original complaint without prejudice on February 26, 2024.  *See* Dkt. 52.  The Court declined to dismiss Plaintiff's claims on statute of limitations grounds, reasoning that because of Plaintiff's "minimal allegations" regarding his loan transaction, the Court "does not now have a sufficient basis to conclude that when he closed in 2005, Plaintiff necessarily would have been able to ascertain which party was at fault for closing-related delays and consequently suspect that he had been injured by Defendants' allegedly wrongful RLEF assessment."  *Id*. at 7.  The Court also found that Plaintiff's allegations against WF & Co. were "minimally adequate."  *Id*. at 8-9.  Ultimately, however, the Court dismissed the original complaint, with leave to amend, based on Plaintiff's failure to allege any wrongdoing, or any details about his loan transaction, for that matter.  *Id*.  As the Court explained:

> Plaintiff fails to plead with particularity facts about the parties' course of conduct during the loan transaction (for example, whether closing was delayed beyond the rate lock period, and what party contributed to that delay), the specific representations made

about the length of the application process and why they were misleading, or anything else that demonstrates Defendants' RLEF-related wrongdoing.

*Id*. at 10.  Because this pleading failure doomed all of his claims for relief, the Court did not reach Wells Fargo's remaining grounds for dismissal.  *See id.*

Plaintiff filed his Amended Complaint on March 18, 2024.  Dkt. 56.  Having previously alleged that Wells Fargo "made knowing misrepresentations of the length of time it would take to process [his] application on its form documents,"[2] the Amended Complaint drops that allegation altogether, presumably because it was not true.  In an attempt to address the deficiencies noted in the Court's dismissal order, Plaintiff now alleges that "Wells Fargo" delayed his closing beyond his original late lock period, thereby requiring him to pay a RLEF:

> During the relevant loan application and in the period prior to its closure, Plaintiff meticulously gathered and promptly provided the loan originator with all required documentation to close the loan on time.
>
> Despite Plaintiff's diligent efforts, he was subsequently informed by "Wells Fargo" that his loan application ostensibly lacked essential documentation and that he was therefore required to (re)submit these documents and pay an RLEF due to the resulting delay in closing his loan.  Fearing foreclosure on his first loan and seeking to avoid an increased interest rate on his Wells Fargo loan, Plaintiff agreed to resubmit the relevant documentation even though had previously submitted all necessary documents. As a result of this resubmission, Plaintiff's loan did not close during the rate lock period. Assuming "Wells Fargo" was applying its stated policy fairly, and not wanting to delay the loan closure even further, Plaintiff subsequently paid an RLEF of $4,087.13.

Am. Compl. at ¶¶ 33-35 (quotations added).  However, as shown above, Plaintiff's loan documents, including the actual Rate Lock Agreement he signed, show that those allegations cannot be true.  Plaintiff's loan closing was not delayed.  Instead, his loan closed "during the rate lock period" and he did not pay a RLEF.

Nonetheless, Plaintiff complains that Wells Fargo "wrongfully charged him" an RLEF and "retained for itself the full profits [it] obtained" on the RLEF.  Am. Compl. at ¶¶ 36-37.  Plaintiff seeks to represent a nationwide class to which he does not belong (and whether he and the putative class members were subjected to wrongful conduct or not), defined as "All persons in the United

---

[2] Dkt. 1-1 at ¶ 54.

1   States and its Territories who closed or refinanced a mortgage loan with Wells Fargo and were sent
2   correspondence from Wells Fargo refunding an RLEF." *Id*. at ¶ 46.  He also seeks to represent three
3   state law subclasses, defined as "All persons in California, Illinois, and New York who closed or
4   refinanced a mortgage loan with Wells Fargo and were sent correspondence from Wells Fargo
5   refunding an RLEF." *Id*. at ¶ 47.  On behalf of those putative classes, Plaintiff summarily claims
6   without any supporting facts that Wells Fargo enjoyed a return on investment of the collected RLEFs
7   that amounts to "billions of dollars." *Id*. at ¶¶ 4-5.

8       Based on those allegations, Plaintiff, again a New York resident who obtained a loan on New
9   York property, purports to bring claims for quasi-contract, money had and received, and conversion
10  – all under California law. *Id*. at ¶¶ 56, 78-105.  Plaintiff seeks, *inter alia*, restitution and
11  disgorgement of the profits Wells Fargo allegedly made as return on investment of those fees over
12  the course of almost two decades, and nominal, compensatory, and punitive damages. *Id*. at ¶¶ at 4-
13  9, 27-28, 37, 84-87, 93, 101-04 and Prayer for Relief.

14  **III.   ARGUMENT**

15      **A.   LEGAL STANDARD.**

16      A complaint fails to state a claim under Rule 12(b)(6) unless it contains "enough facts to state
17  a claim for relief that is plausible on its face." *Bell Atl. v. Twombly*, 550 U.S. 544, 547 (2007).  The
18  court should not accept unreasonable inferences or unwarranted deductions of fact.  *Ashcroft v.*
19  *Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported
20  by mere conclusory statements, do not suffice").  Accordingly, a complaint must allege "more than
21  labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*,
22  550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("[Rule 8(a)] demands more than an unadorned, the
23  defendant-unlawfully-harmed- me accusation.").  Rather, the factual allegations "must be enough to
24  raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

25      Fraud-based claims are subject to Rule 9(b), which requires that "[i]n alleging fraud or
26  mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed.
27  R. Civ. P. 9(b). Rule 9(b) requires that the allegations state "the who, what, when, where, and how
28  of the misconduct charged." *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1124 (9th Cir. 2009).

1    Finally, where, as here, a district court has already granted a plaintiff leave to amend, it is not

2    required to grant further amendment.  *See Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir.

3    2002); *see also In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir.

4    2013) (despite the "freely given" language in Rule 15, leave to amend "is not to be granted

5    automatically" when a plaintiff has already been granted leave to amend).  Instead, "when the

6    district court has already afforded a plaintiff an opportunity to amend the complaint, it has wide

7    discretion in granting or refusing leave to amend after the first amendment and only upon gross

8    abuse will its rulings be disturbed." *Rich v. Shrader*, 823 F.3d 1205, 1209 (9th Cir. 2016)

9    (quotations and citation omitted).  Indeed, as this Court has observed, "dismissal without leave to

10   amend is appropriate" when a plaintiff fails to plead his claims sufficiently, "in their initial or

11   amended complaint." *Alavi v. City of Albany*, 2018 WL 2761853, at *2 (N.D. Cal. June 8, 2016)

12   (Gilliam, J.); *see also Haley v. Macy's, Inc.*, 2017 WL 6539825, at *6 (N.D. Cal. Dec. 21, 2017)

13   (Gilliam, J.) (dismissing claims without leave to amend when the plaintiff "had an opportunity to

14   amend [his] claims already" and the Court is now convinced that [he] cannot allege facts to cure the

15   defects identified in the Court's order").

16   **B.     PLAINTIFF'S LOAN DOCUMENTS SHOW THAT HIS ALLEGATIONS
17          ARE IMPLAUSIBLE.**

18   "Though a court generally is obligated to regard the well-pleaded facts of a complaint as true

19   when deciding a Rule 12(b)(6) motion, that principle gives way when the allegations contradict

20   documents attached to the complaint or incorporated by reference." *Groves v. Kaiser Found. Health*

21   *Plan Inc.*, 32 F. Supp. 3d 1074, 1079 n. 4 (N.D. Cal. 2014) (citing *Knievel v. ESPN*, 393 F.3d 1068,

22   1076 (9th Cir. 2005) and *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008)).  In those

23   circumstances, "***the documents control***." *Brammer v. Richards*, 2014 WL 846249, at *4 (N.D. Cal.

24   Mar. 4, 2014) (emphasis added); *Goldberg v. Yahsar*, 2018 WL 11209141, at *3 (C.D. Cal. Sept. 27,

25   2018) (emphasis added).

26   Here, the Amended Complaint relies upon Plaintiff's Rate Lock Agreement and other loan

27   documents but does not include them as exhibits.  Am. Compl. at ¶¶ 7, 25, 31-35.  However, as

28   Plaintiff's counsel has argued, those documents are "incorporated by reference" because they are

expressly referenced in the Amended Complaint and are integral to Plaintiff's claims.  *See* n.1 *supra*; *see also Lloyd v. Facebook, Inc*., 2022 WL 4913347, at *4 (N.D. Cal. Oct. 3, 2022) (granting motion to dismiss based on documents that were not attached to the complaint but were "referenced extensively in the complaint and [we]re integral to Plaintiff's claims").  And, as shown above, those documents contradict Plaintiff's allegations that (1) his loan closing was delayed beyond his original rate-lock period; and (2) he paid a RLEF.  Accordingly, because all of Plaintiff's claims hinge on those demonstrably incorrect assertions, Plaintiff has not alleged, and, in fact, cannot allege, any plausible claims against Wells Fargo.  *See Coyoy v. City of Eloy*, 859 F. App'x 96, 98 (9th Cir. 2021) (affirming dismissal of complaint where the underlying contract contradicted the plaintiff's allegations and noting that "we may consider documents incorporated by reference in the complaint and need not credit as true allegations in the complaint that are contradicted by these documents"); *Teeter-Totter, LLC v. Palm Bay Int'l, Inc.*, 344 F. Supp. 3d 1100, 1107-08 (N.D. Cal. 2018) (dismissing counterclaims that were based on allegations contradicted by the document on which they were based); *In re Aarons*, 643 B.R. 595, 609 (C.D. Cal. 2022) (plaintiff's allegations "are not plausible, because the very documents on which those allegations necessarily rely flatly contradict those allegations").

The Amended Complaint should be dismissed with prejudice.

## C. PLAINTIFF CONTINUES TO LUMP WF & CO. WITH WFBNA IN VIOLATION OF THE COURT'S DISMISSAL ORDER.

As noted above, the Court's February 26, 2024 order found that Plaintiff's allegations against WF & Co. were "minimally adequate."  Dkt. 52 at 8.  However, the Court noted that Plaintiff's pleading, which lumped WF & Co. with WFBNA, was improper and that any amended complaint should differentiate the two defendants:

> [T]he Court observes that Plaintiff's otherwise serial references to "Wells Fargo" instead of to a specific defendant or group of defendants frustrate the Court and the parties' ability to understand the purported role played by each entity in the alleged misrepresentations at issue. ***In any amended complaint, the Court cautions Plaintiff to avoid so-called "shotgun pleading," and directs Plaintiff to identify the action each Defendant took that would state a claim for relief without resorting to generalized***

1   ***allegations against 'Wells Fargo' as a whole***.  *See Resh, Inc. v. Skimlite Mfg. Inc*.,  666
2   F. Supp. 3d 1054, 1059 (N.D. Cal. 2023) (discussing the definition of and problems
    arising from "shotgun pleading").

3   *Id*. at 9 (emphasis added).

4       The Amended Complaint ignores those instructions.  Like the original complaint, it "resort[s]

5   to generalized allegations against 'Wells Fargo' as a whole."  For example:

6       This is a case about "Wells Fargo's" failure to return to its borrowers massive amounts
        of money "Wells Fargo" made after it wrongly charged borrowers rate lock extension
7       fees ("RLEFs") on the borrowers' respective "Wells Fargo" mortgage applications.
        RLEFs extend the period in which a quoted mortgage interest rate is "locked in" against
8       potential market fluctuations.

9       This case seeks full disgorgement from "Wells Fargo" of the funds the Company
10      wrongfully made as a result of its illegal RLEF charges and its failure to return in full
        the money it made on those funds over the course of almost two decades. This class
11      action asserts quasi contract claims for restitution and disgorgement, money had and
12      received, and conversion.

13      Notwithstanding the refunds distributed by "Wells Fargo" beginning in or around 2020,
14      "Wells Fargo" has never paid nor disgorged to its victims the full profits Wells Fargo
        obtained on the wrongfully charged RLEFs during this several years-long scheme.

15  Am. Compl. at ¶¶ 1, 9, 28 (quotations added); *see also id*. at ¶¶ 2-8, 10, 22-28, 29, 31-33, 35-40, 42-

16  43, 45-47, 50, 53, 58, 63-77, 79-87, 91-96, 100-101, 103-105 (referring to "Wells Fargo" or

17  "Defendants" without differentiating between WFBNA and WF & Co.).

18      As the Ninth Circuit has held, "Rule 9(b) does not allow a complaint to merely lump multiple

19  defendants together."  *Swartz v. KPMG, LLP*, 476 F.3d 756, 764 (9th Cir. 2007); *see also Frady v.*

20  *New Peaks LLC*, 2024 WL 1023024, at *7 (S.D. Cal. Mar. 8, 2024) (complaint that "lump[ed]

21  defendants together without differentiating individual conduct" did not comply with Rule 9(b));

22  *Esoimeme v. Wells Fargo Bank*, 2011 WL 3875881, *15 (E.D. Cal. Sept. 1, 2011), *report and*

23  *recommendation adopted*, 2011 WL 5526068 (E.D. Cal. Nov. 14, 2011) ("[P]laintiff lumps all of the

24  defendants together and simply alleges that they have all engaged in unfair business practices.

25  Those allegations are insufficient to withstand a motion to dismiss under *Twombly*.").  Under those

26  circumstances, dismissal is warranted.  *See Seeno v. Discovery Builders, Inc*., 2024 WL 694490, at

27  *5 (N.D. Cal. Feb. 20, 2024) (dismissing complaint that "lump[ed] together Defendants throughout

28  the complaint, referring only to them all jointly as 'Defendants'").  This is particularly true where, as

1   here, a plaintiff has already been warned that this "shotgun pleading" technique is improper and

2   should not be used in future amendments.  *See Hill v. Bd. of Dirs., Officers and Agents and*

3   *Individuals of the Peoples Coll. of Law*, 2023 WL 9420819, at \*4 (E.D. Cal. June 7, 2023)

4   (dismissing amended complaint that "still exhibits the landmarks of 'shotgun pleading' because it

5   "lump[s] all the Defendants together at various points"); *Campolo v. Duel*, 2023 WL 2558562, at \*6

6   (C.D. Cal. Jan. 11, 2023) (dismissing amended complaint that continued to "lump all of the Moving

7   Defendants together, referring to them interchangeably as either the 'Urban Blox criminal enterprise'

8   or simply 'Defendants'"); *Karkanen v. Cal.*, 2018 WL 3820916, at \*7 (N.D. Cal. Aug. 10, 2018)

9   (dismissing amended complaint without leave to amend when, *inter alia*, "plaintiff continue[d] to

10   use improper group pleading" that "repeatedly lump[ed] 'defendants' together in her allegations").

11   The Court should dismiss the Amended Complaint.

12         **D.**    **PLAINTIFF'S ALLEGATIONS OF WRONGFUL CONDUCT REMAIN**

13               **IMPERMISSIBLY CONCLUSORY.**

14       As this Court recognized when it dismissed Plaintiff's original complaint, each of Plaintiff's

15   claims for relief requires allegations of wrongful conduct.  Dkt. 52 at 9.  In dismissing the original

16   Complaint, the Court observed:

17 
18         Plaintiff's allegations as to the exact nature of this misconduct are vague and
          conclusory, and appear to boil down to two alleged misrepresentations: one made in
19         Defendants' form documents concerning the length of time to process the (unidentified)
          application, and one indicating that Plaintiff owed the RLEF he was ultimately charged.
20         But without more details about the nature of the misrepresentations – not to mention
          the parties' courses of conduct during the loan transaction, given that the RLEF
21         apparently accrues as owing to the party at fault for delays – the Court is left to guess
          as to what representations were made, which does not satisfy either Rule 8(a) or Rule
22         9(b).

23   *Id*. at 9-10.

24       In response, Plaintiff dropped his allegation that "Wells Fargo" misrepresented the length of

25   time it would take to process his loan application.  Now, Plaintiff alleges that unidentified "Wells

26   Fargo" personnel "purposefully misrepresent[ed] that he had failed to submit proper documentation"

27   and "[o]n information and belief, 'Wells Fargo' knowingly charged Plaintiff an RLEF even though it

28   knew he was not responsible for any delay in the closing of his mortgage."  Am. Compl. at ¶ 38.

These allegations—which, as shown above, continue to lump WFBNA with WF & Co. in violation of this Court's clear directive to the contrary—are entirely conclusory and do not pass muster under Rule 9(b).  *See Coast Surgery v. Ctr. v. United Healthcare Ins. Co*., 2024 WL 650174, at *10 (C.D. Cal. Jan. 5, 2024) (dismissing negligent misrepresentation claim under Rule 9(b) because the complaint "does not adequately allege the specific statements purportedly made by Defendants' representatives, which of Defendants' representatives Plaintiff spoke with, [or] when the misrepresentations were made …..").  Indeed, as courts in this district have recognized, when a complaint does not "identify the specific content of any false or misleading statement … but instead, contains what are, at best, loosely paraphrased versions of statements allegedly made," it "do[es] not suffice."  *Johnson v. Maker Ecosystem Growth Holdings, Inc*., 2023 WL 2191214, at *3 (N.D. Cal. Feb. 22, 2023) (citations omitted).  Nor do "conclusory assertions that [a] defendant's misrepresentations were knowingly false."  *Id*. at *3; *see also Vongsvirates v. Wells Fargo Bank, N.A*., 2020 WL 3841269, at *3 (E.D. Cal. July 8, 2020), *report and recommendation adopted*, 2020 WL 4570697 (E.D. Cal. Aug. 7, 2020) (dismissing fraud claim under Rule 9(b) because the plaintiff "fail[ed] to identify any specific representations made to him by either entity or any facts that demonstrate the speakers knew the statements were false" and noting that "[f]or corporate defendants, a plaintiff must allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written").  Plaintiff's new allegations still fail under Rule 9(b).

Perhaps recognizing that the allegations related to his own loan transaction remain insufficient, Plaintiff attempts to backfill by referencing an alleged "whistleblower" complaint from a former WFBNA employee who claimed that Wells Fargo "orchestrated an effort to shift the cost of RLEFs onto borrowers instead of the bank" by "blaming customers for delays in the loan process and improperly charging them RLEFs."  Am. Comp. at ¶ 41.  Although Plaintiff provides no details about this alleged "whistleblower," it appears that his allegations have been lifted, verbatim, from a letter a former WFBNA employee, Frank Chavez, sent to Congress in 2016 and which received extensive, nationwide press coverage at the time:

| Plaintiff's Allegation | | Chavez's Allegation |
|---|---|---|
| "(1.) Having the underwriter stop the 'Reg B clock' and note the file for 'missing' customer documentation or information that had already been provided by the borrower and which was available to the underwriter for review. This is known as an AIRL." | | "(1.) Having the underwriter stop the 'Reg B clock' and note the file for 'missing' customer documentation or information that had already been provided by the borrower and which was available to the underwriter for review. This is known as an AIRL." |
| "(2.) Having loan processors and loan closers note (aka AIRL) the file for 'missing' customer documentation or information that had already been provided by the borrower." | | "(2.) Having loan processors and loan closers note (aka AIRL) the file for 'missing' customer documentation or information that had already been provided by the borrower." |
| "(3.) Rationalizing [Home Mortgage Consultants ("HMC")] or [Private Mortgage Bank ("PMB")] banker delays in requesting and/or submitting customer/borrower documents, info or forms as 'customer-caused' or 'customer-related' delays. This is probably one of the more obvious and egregious of the improper activities, as it treated the HMC or PMB Banker as an extension of the customer rather than as an WFHM or WFHM PMB employee proper." | | "(3.) Rationalizing HMC or PMB banker delays in requesting and/or submitting customer/borrower documents, info or forms as 'customer-caused' or 'customer-related' delays. This is probably one of the more obvious and egregious of the improper activities, as it treated the HMC or PMB Banker as an extension of the customer rather than as an WFHM or WFHM PMB employee proper." |

*Compare* Am. Compl. at ¶ 42 *with* Groves Declaration, Exhibit G; *see also* Request for Judicial Notice, ¶ 7.  Tellingly, however, Plaintiff omits key details from this so-called "whistleblower" letter, including that Chavez's allegations related to the "Greater Los Angeles area," and that the so-called "effort" he described, to shift RLEFs to borrowers, allegedly existed from "approximately the beginning of 2014 through about the beginning of 2016," years after Plaintiff closed on his New York home loan.  *See* Groves Declaration, Exhibit G.  The "whistleblower" allegations, which relate to a market and time frame wholly divorced from Plaintiff's own loan transaction, thus cannot supply the missing information required by Rule 9(b).  Indeed, as one court has explained, a plaintiff

does not comply with Rule 9(b) by "borrow[ing] verbatim [from] a complaint from a separate case involving [the same] defendant." *Tuosto v. Philip Morris USA, Inc*., 2007 WL 2398507, at *9 n.9 (S.D.N.Y. Aug. 21, 2007).  This is because the court is "limited to the allegations in the complaint regarding the specific parties involved in [the] case [before it], and [it] cannot make inferences from what is stated in [another] complaint about other factual scenarios in order to fortify conclusory statements within [the challenged] pleadings."  *Id*.; *see also Wieg v. Gen. Motors LLC*, 2023 WL 7393017, at *4 (N.D. Cal. Nov. 7, 2023) (complaint that was "identical to five other complaints" was "boilerplate and conclusory" and thus did not comply with Rule 9(b)).

Because Plaintiff's allegations of wrongdoing are not supported by any facts, but instead are entirely conclusory, all of his claims should be dismissed with prejudice.

### E.     PLAINTIFF'S NEW ALLEGATIONS CONFIRM THAT HIS CLAIMS ARE TIME-BARRED.

In its February 26, 2024 order, the Court made the following observation:

> … the Court does not now have a sufficient basis to conclude that when he closed in 2005, Plaintiff necessarily would have been able to ascertain which party was at fault for closing-related delays and consequently suspect that he had been injured by Defendants' allegedly wrongful RLEF assessment.  This ambiguity arises in part because Plaintiff made minimal allegations concerning the loan process and the misrepresentations at issue.  If, for example, Wells Fargo stated that it required 20 days to close when it actually required 25, the Court agrees that upon being charged an RLEF, Plaintiff could have been on notice of Defendants' potential wrongdoing if he himself had not caused any delays. However, some situations – where both parties contributed to delay, for example – could be murkier, and might leave Plaintiff in the dark regarding the alleged impropriety of being charged the RLEF.  Based on the allegations in the complaint, the Court therefore cannot conclude that Plaintiff necessarily had any cause to discover the wrongdoing at issue in 2005 instead of years later upon receipt of the refund in 2021, which is when Plaintiff alleges discovery occurred (and his duty to diligently investigate began).

Dkt. 52 at 7-8.  Plaintiff's new allegations confirm that he was on notice of Wells Fargo's alleged potential wrongdoing in 2005, because Plaintiff now says, unequivocally, that he did not cause any closing-related delays.

According to the Amended Complaint, "[d]uring the relevant loan application and in the period prior to its closure, Plaintiff meticulously gathered and promptly provided the loan originator with all required documentation to close the loan on time." Am. Compl. at ¶ 34.  However,

1    unidentified "Wells Fargo" personnel informed Plaintiff "that his loan application ostensibly lacked

2    essential documentation and that he was therefore required to (re)submit these documents and pay an

3    RLEF due to the resulting delay in closing his loan." Am. Compl. at ¶¶ 34-35.  The Amended

4    Complaint continues:

5
> Fearing foreclosure on his first loan and seeking to avoid an increased interest rate on
6
> his Wells Fargo loan, Plaintiff agreed to resubmit the relevant documentation ***even
> though he had previously submitted all necessary documents***.  As a result of this
7
> resubmission, Plaintiff's loan did not close during the rate lock period.

8    *Id*. at ¶ 35 (emphasis added).  In short, Plaintiff alleges that Wells Fargo was at fault for any closing-

9    related delays because he "had previously submitted all necessary documents" and Wells Fargo's

10   requests for additional documents were pretextual.  Am. Compl. at ¶ 35.  These new allegations thus

11   provide what this Court described as "a sufficient basis to conclude that when he closed in 2005,

12   Plaintiff necessarily would have been able to ascertain which party was at fault for closing-related

13   delays and consequently suspect that he had been injured by Defendants' allegedly wrongful RLEF

14   assessment." Dkt. 52 at 8.  This was more than 18 years before he filed his original complaint, well

15   beyond the two- and three-years statutes of limitation applicable to his claims.[3]  Plaintiff's new

16   admission renders his tolling allegations irrelevant.  His claims must be dismissed.

17       **F.      EACH OF PLAINTIFF'S CLAIMS SEPARATELY FAILS AS A
18               MATTER OF LAW.**

19           As mentioned above, the Court previously dismissed all of Plaintiff's claims for failure to

20   adequately allege wrongdoing.  Dkt. 52 at 9-10.  Because that pleading failure required dismissal of

21   all of Plaintiff's claims, the Court did not reach the additional grounds presented by Wells Fargo's

22   original motion to dismiss.  As shown below, those grounds provide an independent basis for

23   dismissal.

24

25

26   [3] *See* Cal. Civ. Proc. Code § 339(1) (two-year statute of limitations for actions based on "a contract,
obligation or liability not founded upon an instrument of writing"); *Hrothgar Invs., Ltd. v. Houser*,
27   2015 WL 5853634, at *8 (N.D. Cal. Aug. 18, 2015), *report and recommendation adopted*, 2015 WL
5747932 (N.D. Cal. Sept. 30, 2015) (two-year statute of limitations for money had and received);
28   Cal. Civ. Proc. Code § 338(c) (three-year statute of limitations for conversion).

1    **1.**   **Plaintiff's Quasi-Contract Claim Fails Because the Parties Had an**
2    **Express Contract.**

3    Plaintiff's First Cause of Action, although renamed "Quasi-Contract for Restitution and

4    Disgorgement, Under California Law," realleges his prior unjust enrichment claim.  *Compare* Dkt.

5    1-1 at ¶¶ 64-75 *with* Am. Compl. at ¶¶ 78-89.  The Ninth Circuit has explained that restitution and

6    unjust enrichment "describe the theory underlying a claim that a defendant has been unjustly

7    conferred a benefit through mistake, fraud, coercion, or request." *Astiana v. Hain Celestial Grp.,*

8    *Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (quotation omitted).  "Such a 'claim' requires that the

9    defendant obtained a benefit from the plaintiff, and it would be unjust not to return it." *Gearsource*

10   *Holdings, LLC v. Google*, 2020 WL 3833258, at *13 (N.D. Cal. July 8, 2020 (Gilliam, J.) (citation

11   omitted).  However, as this Court has recognized, "[t]he goal of a quasi-contract cause of action is to

12   prevent unjust enrichment in the absence of a true contract or where the contract was obtained by

13   fraud." *Fowler v. Wells Fargo Bank, N.A.*, 2017 WL 3977385, at *5 (N.D. Cal. Sept. 11, 2017)

14   (Gilliam, J.) (citation omitted).  Accordingly, when the "action involves an actual, express

15   agreement, relief under a quasi-contract is unnecessary, and also [is] not properly pled in the

16   complaint." *Id.; see also Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151, 1167 (9th Cir.

17   1996); *World Surveillance Grp. Inc. v. La Jolla Cove Invs., Inc.*, 2014 WL 1411249, at *2 (N.D. Cal.

18   Apr. 11, 2014); *Lomely v. JP Morgan Chase Bank, Nat'l Ass'n*, 2012 WL 4123403, at *5 (N.D. Cal.

19   Sept. 17, 2012).  Here, there can be no dispute that the parties had an "actual, express agreement,"

20   e.g., the Rate Lock Agreement, and despite amendment, Plaintiff does not allege that it was

21   "procured by fraud."  As mentioned previously, Plaintiff has dropped his conclusory allegation that

22   Wells Fargo misrepresented the length of time it would take to process his loan application, and the

23   Amended Complaint contains no allegations relevant to fraudulent inducement, much less any such

24   allegations that comply with Rule 9(b).

25   Plaintiff's "quasi-contract" claim cannot proceed.

26   **2.**   **The Claim for Money Had and Received Fails as a Matter of Law.**
27   Plaintiff's claim for money had and received also fails.

28

---
15

First, this claim fails for the same reason Plaintiff's unjust enrichment claim fails: money had and received is a quasi-contractual theory that cannot be maintained where, as here, an enforceable agreement governs the parties' rights and obligations.  *See Saroya v. Univ. of the Pac.*, 503 F. Supp. 3d 986, 999 (N.D. Cal. 2020); *see also U.S. Cap. Partners, LLC v. AHMSA Int'l, Inc.*, 2013 WL 594285, at *5 (N.D. Cal. Feb. 14, 2013) (same); *Shvarts v. Budget Grp., Inc.*, 81 Cal. App. 4th 1153, 1160 (2000) (claim for money had and received failed because "it is well settled that an action based on an implied-in-fact or quasi-contract cannot lie where there exists between the parties a valid express contract covering the same subject matter.").

In addition, under California law, a plaintiff cannot state a claim for money had and received unless he pleads that "a definite sum, to which [] he is justly entitled, has been received by [the] defendant." *Walter v. Hughes Commc'ns, Inc*., 682 F. Supp. 2d 1031, 1047 (N.D. Cal. 2010).  In *Walter*, the plaintiff alleged that the defendant "has become indebted to Plaintiff and class members in the amount of early termination fees paid" and "such other amounts which may have been acquired by means of any practice found by this Court to be illegal, unfair or deceptive." *Id.* at 1047-48.  The court dismissed the money had and received claim, finding that the complaint "fail[ed] to state a 'definite sum" to which Plaintiffs [were] justly entitled." *Id*. at 1048; *see also Rondberg v. McCoy*, 2009 WL 5184053, at *6 (S.D. Cal. Dec. 21, 2009) (dismissing claim for money had and received because plaintiffs' allegations that "[defendant] asked Plaintiffs for access to the [] account, and thereafter received said funds'" were insufficient to allege a "definite sum"). Here, the money had and received claim does not seek to recover the RLEFs the putative class members paid.  *See* Am. Compl. at ¶¶ 3-4.  Instead, like the plaintiffs in *Walter*, Plaintiff here alleges only that "Defendants are indebted to Plaintiff and Class members for the entire amount of profits Defendants earned on unauthorized and unwarranted RLEFs," which, despite amendment, Plaintiff still speculates "will be determined," at some point in the future, "to be in the billions of dollars." Am. Compl. at ¶¶ 5, 41, 85.  While Plaintiff is not required to plead the exact dollar amount, he is required to plead more than an amount that is "capable of being ascertained through discovery."  *Id*. at ¶ 93.

Finally, to state a claim for money had and received, the plaintiff must allege that "the

defendant received money that was intended to be used for the benefit of the plaintiff." *Johnston v. Mittman*, 2023 WL 4680795, at *7 (C.D. Cal. June 23, 2023) (quotations and citation omitted); *see also Rondberg*, 2009 WL 5184053, at *6 ("The FAC fails to state a claim for money had and received, because Plaintiffs do not allege a definite sum that [defendant] received from Plaintiffs."). Here, Plaintiff admits he has received a refund of the only money he could have possibly given to Wells Fargo.  Am. Compl. at ¶ 36.  Regarding the "profits" he seeks to recover, Plaintiff does not allege that any such "profits" were intended to be used for his benefit.  "[N]or would any such allegation be plausible." *Johnston*, 2023 WL 4680795, at *7; *see also Haskins v. Symantec Corp.*, 654 F. App'x 338, 339 (9th Cir. 2016) (district court did not err in dismissing money had and received claim because plaintiff "did not allege that [defendant] received money intended to be used for her benefit); *LA Tech and Consulting, LLC v. Am. Express Co*., 2022 WL 3699968, at *5 (C.D. Cal. Aug. 9, 2022) (dismissing money had and received claim when plaintiff alleged no facts showing that the funds in question were intended to be used for his benefit); *Lopez v. Bank of Am., N.A.*, 505 F. Supp. 3d 961, 975 (N.D. Cal. 2020) (same).

Plaintiff's Second Cause of Action should be dismissed, this time with prejudice.

### 3.     Plaintiff Fails to State a Claim for Conversion.

Finally, Plaintiff's conversion claim also fails as a matter of law and should be dismissed with prejudice.  In California, conversion has three elements: (1) "plaintiff's ownership or right to possession of property"; (2) wrongful conduct by the defendant that interferes with plaintiff's possession; and (3) damages.  *McKell v. Wash. Mut., Inc*., 142 Cal. App. 4th 1457, 1491 (2006).  "Where the plaintiff neither has title to the property alleged to have been converted, nor possession thereof, he cannot maintain an action for conversion."  *Moore v. Regents of Univ. of Cal*., 51 Cal. 3d 120, 136 (1990).  Moreover, "[m]oney cannot be the subject of a cause of action for conversion unless there is a specific, identifiable sum involved …."  *McKell*, 142 Cal. App. 4th at 1491.

Here, as shown *supra*, Plaintiff does not allege, because he cannot, that his conversion claim seeks the return of a specific, identifiable sum.  Again, the only specific, identifiable sum referenced in the Complaint is the RLEF Plaintiff (incorrectly) claims he paid, but Plaintiff admits that Wells Fargo already refunded that amount.  Am. Compl. at ¶ 36.  Moreover, it is well-established that an

17

1   alleged overcharge cannot be the subject of a conversion claim.  *McKell*, 142 Cal. App. 4th at 1491-

2   92 ("Plaintiffs cite no authority for the proposition that a cause of action for conversion may be

3   based on an overcharge.  Consequently, they have failed to demonstrate that they have stated a cause

4   of action for conversion.").  Similarly, voluntary payments cannot form the basis for a conversion

5   claim.  *See Darrin v. Bank of Am., N.A.*, 2013 WL 877087, at *7 (E.D. Cal. Mar. 7, 2013) ("Plaintiff

6   has failed to establish that [defendant] 'wrongfully' dispossessed Plaintiff of $1,617.04.  Plaintiff's

7   SAC describes Plaintiff voluntarily paying [defendant] the sum.").

8       Plaintiff also does not allege an "ownership or right to possession" of the other so-called

9   property that is the subject of his conversion claim, i.e., "all profits reaped on improperly charged

10  RLEFs."  Am. Compl. at ¶ 101.  Nor could he.  Under the circumstances alleged here, disgorgement

11  is not an available remedy for conversion.

12      *Lusida Rubber Prods. v. Point Industrial, LL*C, 2016 WL 7469592 (C.D. Cal. Feb. 5, 2016),

13  is instructive.  There, the plaintiff alleged that its former sales agents used the plaintiff's trademarks

14  without consent, registered and used internet domain names containing the plaintiff's trademarks,

15  stole the plaintiff's customer list, and refused to return certain "tooling" belonging to the plaintiff,

16  thus preventing the plaintiff from fulfilling customer orders.  *Id*. at *2.  Based on those allegations,

17  the plaintiff brought, *inter alia*, a conversion claim seeking the defendants' allegedly ill-gotten

18  profits.  *Id*. at *5.  The court dismissed the claim, agreeing with the defendants that the plaintiff

19  "fail[ed] to cite any authority for the proposition that [plaintiff's ownership interest in the

20  misappropriated trade secrets and trademarks] g[ave] [p]laintiff rights to the profits derived from the

21  goods that Defendants allegedly sold using Plaintiff's trademark and customer list."  *Id*. at *6; *see

22  also Sundance Image Tech., Inc. v. Inkjetmall.com, Ltd*., 2005 WL 8173280, at *10 (S.D. Cal. Oct.

23  14, 2005) (plaintiffs could not base their conversion claim on "mere allegations that Defendants took

24  profits that rightfully belonged to Plaintiffs"; "Plaintiffs appear to be equating conversion of tangible

25  property with disgorgement, *i.e*. with the profits that Defendants obtained from their misleading

26  statements about Plaintiffs' products.  However, Plaintiffs' conversion argument lacks merit.").

27  Here too, Plaintiff had no rights in the profits Wells Fargo allegedly derived from the "improperly

28  charged IRLEFs."

In a last ditch-effort to salvage this claim, Plaintiff alleges that Wells Fargo "conver[ted]" his "property rights" in "the ability to invest and earn profits on the unlawfully converted money." Am. Compl. at ¶ 104. The undersigned has not located any authority suggesting that a plaintiff has a "property right" in "the ability to invest and earn profits." Indeed, the inchoate "ability to invest and earn profits" is akin to an "idea" or a "strategy," which cannot sustain a conversion claim. *See Counts v. Meriwether*, 2015 WL 12656945, at *6 (C.D. Cal. June 12, 2015) ("California courts have held that the tort of conversion does not apply to ideas") (collecting cases); *Balik v. Toy Talk, Inc*., 2016 WL 9149504, at *2 (N.D. Cal. Apr. 19, 2016) (plaintiff's "idea for toy design" could not support a claim for conversion). Moreover, to the extent Plaintiff claims that Wells Fargo converted unidentified profits on unidentified investments, as stated above, "[m]oney cannot be the subject of a cause of action for conversion unless there is a specific, identifiable sum involved …." *McKell*, 142 Cal. App. 4th at 1491; *see also Brock v. Concord Auto. Dealership LLC*, 2015 WL 3466543, at *4 (N.D. Cal. June 1, 2015) (Gilliam, J.) (same); *Lueter v. State of Cal*., 94 Cal. App. 4th 1285, 1302 (2002) (providing that damages in a conversion action may not be "speculative, remote, imaginary, contingent, or merely possible"). Phantom "profits" on money Plaintiff may have earned on future "investments" do not satisfy the test.[4]

The conversion claim should be dismissed with prejudice.

## IV.    CONCLUSION

Plaintiff has conclusively demonstrated, in his second deficient complaint, that he cannot cure the fundamental pleading defects in his claims. Accordingly, the Court should dismiss the Amended Complaint in its entirety, with prejudice.

---

[4] In any event, as Wells Fargo's November 22, 2021 letter to Plaintiff demonstrates, Plaintiff has already been compensated for this newly claimed "loss of the ability to invest and earn profits" on the amount of the up-front fee he paid. His refund check included "$1,410.21 for interest on [his] fee(s)" and "$1,307.68 to compensate [him] for the time [he] did not have these funds." *See* Groves Declaration, Exhibit E and Request for Judicial Notice, ¶ 5.

1 | DATED: April 25, 2024

Respectfully submitted,

2 | **WINSTON & STRAWN LLP**

3

4 | By:  */s/ Amanda L. Groves*
Amanda L. Groves (SBN 187216)
agroves@winston.com

5 | WINSTON & STRAWN LLP
333 S. Grand Avenue, 38th Floor

6 | Los Angeles, CA 90071
Telephone: (213) 615-1700

7 | Facsimile: (213) 615-1750

8 | Drew H. Washington (SBN 350107)
dwashington@winston.com

9 | 101 California Street, 35th Floor
San Francisco, CA 94111-5840

10 | Telephone: (415) 591-1475
Facsimile: (415) 591-1400

11

12 | Kobi K. Brinson (*pro hac vice*)
kbrinson@winston.com

13 | Stacie C. Knight (*pro hac vice*)
sknight@winston.com
WINSTON & STRAWN LLP

14 | 300 South Tryon Street, 16th Floor
Charlotte, NC 28202

15 | Telephone: (704) 350-7700
Facsimile: (704) 350-7800

16

17 | *Attorneys for Defendants Wells Fargo & Company
and Wells Fargo Bank, N.A.*

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A.'S
MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:23-CV-03277-HSG