Amanda L. Groves (SBN 187216)
agroves@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue, 38th Floor
Los Angeles, CA 90071
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Drew H. Washington (SBN 350107)
dwashington@winston.com
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111-5840
Telephone: (415) 591-1475
Facsimile: (415) 591-1400

Kobi K. Brinson (*pro hac vice*)
kbrinson@winston.com
Stacie C. Knight (*pro hac vice*)
sknight@winston.com
WINSTON & STRAWN LLP
300 South Tryon Street, 16th Floor
Charlotte, NC 28202
Telephone: (704) 350-7700
Facsimile: (704) 350-7800

*Attorneys for Defendants*
*Wells Fargo & Company and*
*Wells Fargo Bank, N.A.*
.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| ANTHONY MORRIS, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> WELLS FARGO & COMPANY and WELLS FARGO BANK, N.A., <br><br> Defendants. | Case No. 4:23-CV-03277-HSG <br><br> **DEFENDANTS WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT** <br><br> Date:      July 11, 2024 <br> Time:     2:00 p.m. <br> Place:    Courtroom 2, 4th Floor <br>             Oakland Courthouse <br>             1301 Clay Street <br>             Oakland, CA 94612 <br> Judge:   Hon. Haywood S. Gilliam, Jr. |

# TABLE OF CONTENTS

**Page**

I.      PLAINTIFF'S LOAN DOCUMENTS SHOW THAT HIS ALLEGATIONS ARE
        IMPLAUSIBLE. ....................................................................................................... 1

II.     PLAINTIFF CONTINUES TO LUMP WF & CO. WITH WFBNA IN VIOLATION
        OF THE COURT'S DISMISSAL ORDER. .......................................................... 4

III.    PLAINTIFF'S ALLEGATIONS OF WRONGDOING REMAIN IMPERMISSIBLY
        CONCLUSORY. .................................................................................................... 7

IV.     PLAINTIFF'S NEW ALLEGATIONS CONFIRM THAT HIS CLAIMS ARE TIME-
        BARRED. ................................................................................................................ 9

V.      EACH OF PLAINTIFF'S CLAIMS SEPARATELY FAILS AS A MATTER OF
        LAW. ..................................................................................................................... 10

        A.      Plaintiff's Quasi-Contract Claim Fails Because the Parties Had an Express
                Contract. ................................................................................................... 10

        B.      The Claim for Money Had and Received Fails as a Matter of Law. ........ 12

        C.      Plaintiff Fails to State a Claim for Conversion. ...................................... 14

CONCLUSION ................................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aarons*,
 643 B.R. 595 (C.D. Cal. 2022) ........................................................................4

*Anderson v. Virga*,
 2017 WL 1179142 (E.D. Cal. Mar. 29, 2017), *report and recommendation
 adopted*, 2017 WL 2546496 (E.D. Cal. June 13, 2017) ................................9

*Brammer v. Richards*,
 2014 WL 846249 (N.D. Cal. Mar. 4, 2014) .....................................................4

*Brown v. Takeuchi Mfg. Co. (U.S.)*,
 2022 WL 1204713 (E.D. Cal. Apr. 22, 2022) .................................................6

*Carrey v. Boyes Hot Springs Resort, Inc.*,
 245 Cal. App. 2d 618 (1966) .........................................................................15

*Chase Inv. Servs. Corp. v. Law Offices of Jon Divens & Assocs., LLC*,
 748 F. Supp. 2d 1145 (C.D. Cal. 2010), *aff'd*, 491 F. App'x 793 (9th Cir.
 2012) .............................................................................................................13

*Cnty. of San Bernardino v. Walsh*,
 158 Cal. App. 4th 533 (2007), *as modified on denial of reh'g* (Jan. 25,
 2008), *as modified* (Jan. 28, 2008) .........................................................13, 14

*Cohen v. Ellison First Asia, LLC*,
 2022 WL 2903124 (C.D. Cal. Jan. 4, 2022) .................................................11

*Coyoy v. City of Eloy*,
 859 F. App'x 96 (9th Cir. 2021) ......................................................................4

*Destfino v. Reiswig*,
 630 F.3d 952 (9th Cir. 2011) ..........................................................................6

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
 751 F.3d 990 (9th Cir. 2014) ..........................................................................8

*Espinosa v. Bluemercury, Inc.*,
 2017 WL 1079553 (N.D. Cal. Mar. 22, 2017) ...............................................5

*Foster v. Schubert*,
 2022 WL 1570870 (E.D. Cal. May 18, 2022) .................................................9

*Green Silk, LLC v. DNE Nutraceuticals, Inc.*,
2016 WL 8849712 (C.D. Cal. Mar. 15, 2016) ............................................................7

*Gross v. Colorplast Corp.*,
434 F. Supp. 3d 245 (E.D. Pa. 2020) ........................................................................8

*Groves v. Kaiser Found. Health Plan Inc.*,
32 F. Supp. 3d 1074 (N.D. Cal. 2014) ......................................................................4

*Haas v. Travelex Ins. Servs. Inc.*,
555 F. Supp. 3d 970 (C.D. Cal. 2021) .....................................................................13

*Harmon v. Hilton Grp., Inc.*,
2011 WL 5914004 (N.D. Cal. Nov. 28, 2011) ..........................................................3

*Heineke v. Santa Clara Univ.*,
2017 WL 6026248 (N.D. Cal. Dec. 5, 2017) ............................................................2

*Hernandez v. Enterprise Rent-A-Car Co. of S.F.*,
37 Cal. App. 5th 187 (2019) ....................................................................................6

*Holland v. The Related Cos.*,
2016 WL 11760511 (N.D. Cal. Sept. 9, 2016) .........................................................6

*Hudson v. Wells Fargo & Co.*,
2022 WL 2716526 (N.D. Cal. July 13, 2022), *appeal dismissed*, 2023 WL
5170318 (9th Cir. Apr. 11, 2023) ........................................................................6, 15

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ...................................................................................4

*Lokossou v. Servicesource Int'l, Inc.*,
2018 WL 1709926 (N.D. Cal. Apr. 9, 2018) ............................................................8

*McKell v. Wash. Mut., Inc.*,
142 Cal. App. 4th 1457 (2006) ...............................................................................14

*McKelvey v. Boeing N. Am.*,
74 Cal. App. 4th 151 (1999) ...................................................................................10

*Medina v. Newfold Digital, Inc.*,
2022 WL 2517247 (N.D. Cal. July 7, 2022) .............................................................2

*Moore v. Regents of Univ. of Cal.*,
51 Cal. 3d 120 (1990) ............................................................................................14

*Myers v. Stephens*,
   233 Cal. App. 2d 104 (1965) ........................................................................ 14

*Natomas Gardens Inv. Grp., LLC v. Sinadinos*,
   710 F. Supp. 2d 1008 (E.D. Cal. 2010) ...................................................... 13

*New.Net, Inc. v. Lavasoft*,
   356 F. Supp. 2d 1090 (C.D. Cal. 2004) ...................................................... 11

*Pratt v. Higgins*,
   2023 WL 4564551 (N.D. Cal. July 17, 2023) .............................................. 9

*Produce Pay, Inc. v. Izguerra Produce, Inc.*,
   39 F.4th 1158 (9th Cir. 2022) ...................................................................... 4

*Quigley v. Verizon Wireless*,
   2012 WL 1945784 (N.D. Cal. May 30, 2012) .............................................. 6

*Schultheis v. Ocwen Loan Servicing, LLC*,
   2016 WL 7443242 (C.D. Cal. May 6, 2016) ............................................... 10

*Second Measure, Inc. v. Kim*,
   143 F. Supp. 3d 961 (N.D. Cal. 2015) .................................................. 14, 15

*Silver v. Stripe Inc.*,
   2021 WL 3191752 (N.D. Cal. July 28, 2021) .............................................. 2

*Swanson v. Cnty. of Contra Costa*,
   2023 WL 6391472 (N.D. Cal. Sept. 29, 2023) ............................................. 8

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) .................................................................... 4, 5

*Tatung Co. v. Hsu*,
   2015 WL 11072178 (C.D. Cal. Apr. 23, 2015) ............................................ 5

*TSI USA LLC v. Uber Techs., Inc.*,
   2018 WL 4638726 (N.D. Cal. Sept. 25, 2018) ........................................... 12

*Tuosto v. Philip Morris USA, Inc.*,
   2007 WL 2398507 (S.D.N.Y. Aug. 21, 2007) ............................................. 8

*Underwood v. Future Income Payments, LLC*,
   2018 WL 4964333 (C.D. Cal. Apr. 26, 2018) ............................................ 11

*United States v. Safran Grp.*,
   2017 WL 235197 (N.D. Cal. Jan. 19, 2017) ................................................ 5

iv

DEFENDANTS WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A.'S REPLY IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:23-CV-03277-HSG

*United States v. Scan Health Plan*,
2017 WL 4564722 (C.D. Cal. Oct. 5, 2017) ................................................................5

*Updateme Inc. v. Axel Springer SE*,
2018 WL 1184797 (N.D. Cal. Mar. 7, 2018) ...........................................................5, 6

*Utility Audit Co. v. City of Los Angeles*,
112 Cal. App. 4th 950 (2003) ....................................................................................14

*Vietzke v. Austin Co.*,
54 F. Supp. 265 (E.D. Wash. 1944) ...........................................................................15

*Vongsvirates v. Wells Fargo Bank, N.A.*,
2020 WL 3841269 (E.D. Cal. July 8, 2020), *report and recommendation
adopted*, 2020 WL 4570697 (E.D. Cal. Aug. 7, 2020) ...............................................7

*Walter v. Hughes Commc'ns, Inc.*,
682 F. Supp. 2d 1031 (N.D. Cal. 2010) .....................................................................12

*Welco Elecs., Inc. v. Mora*,
223 Cal. App. 4th 202 (2014) ....................................................................................14

*Yetek v. Dental Bd. of Cal.*,
2010 WL 2594543 (N.D. Cal. June 22, 2010) .............................................................9

**Other Authorities**

Fed. R. Civ. P. 8 ...................................................................................................................6

Fed. R. Civ. P. 9(b) ...................................................................................................4, 5, 7, 8

Fed. R. Civ. P. 12(b)(6) ..................................................................................................8, 10

Plaintiff's claims depend on the Rate Lock Agreement and other loan documents he signed. But now that Wells Fargo has put those documents before the Court, Plaintiff urges the Court to twist their plain meaning. The Court should reject Plaintiff's tactics. It can—and should—consider the actual terms of Plaintiff's loan documents, including the Rate Lock Agreement, and dismiss the Amended Complaint because those documents do not plausibly support Plaintiff's claims. Indeed, no amount of amendments can get around what Plaintiff's loan documents show: his loan closing was not delayed beyond the original rate-lock period and he accordingly did not pay a Rate Lock Extension Fee ("RLEF"). For this reason, dismissal should be with prejudice.

Plaintiff's claims fail for additional reasons he cannot overcome. It is now abundantly clear that Plaintiff cannot state any facts against WF & Co., as evidenced by his continued references to "'Wells Fargo' as a whole" in direct violation of this Court's dismissal order. Plaintiff's allegations also dispel any notion that his claims are timely, since he now admits that he suspected wrongdoing at closing in 2005. And finally, each of Plaintiff's claims fails separately as a matter of law. Wells Fargo's motion should be granted.

## I.   PLAINTIFF'S LOAN DOCUMENTS SHOW THAT HIS ALLEGATIONS ARE IMPLAUSIBLE.

Plaintiff admits that the Court may consider his loan documents because they are "incorporated by reference in his complaint." Dkt. 65 ("Opp.") at 5. Plaintiff nonetheless urges the Court not to consider what those documents actually say because of so-called "disputed facts arising from those documents." *Id*. Plaintiff's arguments have no merit.

Plaintiff first argues that he did not pay his extended rate-lock fee "up-front," but instead paid the fee "at closing." *Id*. at 5-6. That argument is a red herring because Plaintiff's loan documents establish the following dispositive facts: (1) on June 1, 2005, Plaintiff instructed Wells Fargo to "lock in" his interest rate and other loan terms until August 10, 2005, which was longer than the standard 60-day lock period; (2) because Plaintiff opted for a lock period longer than 60 days, he was required to pay an extended lock fee of $4,087.13; and (3) Plaintiff's loan closed and funded within the original lock period. Dkts. 62-2–62-5. Accordingly, **when** Plaintiff paid the extended rate-lock fee is

irrelevant;[1] it is **what** fee he paid that controls, and Plaintiff's loan documents establish that he didn't pay an RLEF because his loan closing was not delayed beyond the term of the original rate-lock period, which expired on August 10, 2005, "eight days after his loan closed." Opp. at 6. Thus, there was nothing to "extend," and an RLEF was not charged. Indeed, as Plaintiff's Rate Lock Agreement explained, Plaintiff would only be charged an extension fee if his loan did not close and fund before the expiration of his original rate-lock period on August 10, 2015:

> If you qualify for the loan and your loan is closed and funded before the expiration date, the Lender will make the loan at said note rate and discount points. *If this lock should expire, you will be required to pay an extension fee and your rate will stay the same*.

Dkt. 62-4 (emphasis added). In short, there is a difference between the extended lock fee, which Plaintiff paid because he opted to lock in his loan terms for more than the standard 30-day period, and a rate-lock extension fee, which he did not, because his closing was not delayed.

Desperate to avoid what his loan documents show, Plaintiff invents reasons why those documents might not directly refute his allegations, ranging from an "entirely different fee" he now says he may have paid, to new theories not found in the Amended Complaint. As to the former, the Court need only look at Plaintiff's own allegations to reject it. Plaintiff's allegations are about the $4,087.13 fee he paid—as shown in the Rate Lock Agreement he signed—not some other fee imagined for the first time in Plaintiff's brief. *See, e.g.*, *Heineke v. Santa Clara Univ.*, 2017 WL 6026248, at *16 (N.D. Cal. Dec. 5, 2017) ("[T]he complaint may not be amended by briefs in opposition to a motion to dismiss.").

The same is true regarding Plaintiff's new, unpled theory that Wells Fargo "sought to conceal its wrongfully charged RLEF by retroactively recharacterizing the charge as an up-front fee when it closed Morris's loan." Opp. at 7. Although Plaintiff offers no facts to support this new theory (there are none), it is well established that "a party's brief cannot substitute for well-pleaded allegations in the complaint." *Medina v. Newfold Digital, Inc.*, 2022 WL 2517247, at *1 (N.D. Cal. July 7, 2022); *see also Silver v. Stripe Inc.*, 2021 WL 3191752, at *7 (N.D. Cal. July 28, 2021) ("[P]laintiffs' opposition inappropriately attempts to explain the specific violations of [law] where the complaint

---

[1] In fact, the Rate Lock Agreement didn't require payment of that fee by a date certain. *See* Dkt. 62-4.

2

DEFENDANTS WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A.'S REPLY IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:23-CV-03277-HSG

itself falls short. This is impermissible."). In any event, this newfound theory is contradicted by the Amended Complaint and loan documents Plaintiff admits are incorporated by reference. Again, those documents establish that Plaintiff's closing was not delayed and that he did not pay an RLEF. Plaintiff offers no facts to the contrary, including why Wells Fargo would have had a reason to "recharacterize" his extended lock fee, given that his loan closing was not delayed.

*Harmon v. Hilton Group, Inc.*, 2011 WL 5914004 (N.D. Cal. Nov. 28, 2011), is instructive. There, the plaintiff alleged that the Hilton delivered a newspaper to each guest outside the door to their room, which created a reasonable assumption that guests would not be charged for the paper, when, unbeknownst to them, they were actually charged $.75. *Id.*

The defendant moved to dismiss, and submitted, *inter alia*, the plaintiff's invoice, which showed that the plaintiff was not charged, and did not pay, $.75 for a newspaper. *Id.* at *2. The plaintiff offered a different characterization: that the newspaper charge was actually an undisclosed, "hidden" fee. *Id.* at *9. The court disagreed and dismissed the complaint with prejudice. As it explained, "the invoice reveal[s] that there was no charge for the newspaper and therefore, the conclusory allegation that Defendant[] concealed a charge for newspaper delivery simply makes no sense." *Id.* The court went on: "[A]mendment would be futile because the allegations and documents that can be considered on a motion to dismiss directly contradict the main premise underlying all of Plaintiff's claims, namely, that he was charged for the newspaper … ." *Id.* at *12.

The same is true here. Plaintiff's loan documents directly contradict the main premise underlying all of his claims—namely, that his loan closing was delayed, thus requiring him to pay an RLEF. Plaintiff's latest theory, that Wells Fargo "recharacterized" the fee he did pay, simply makes no sense under these circumstances. It cannot save his claims.

Plaintiff's refund letter does not compel a different conclusion. The refund letter does not speak in absolutes or "confirm[] that the Bank considered his fee to be an RLEF." Opp. at 7. Instead, the letter says the opposite: that Plaintiff "may have" paid an RLEF "if [his] loan closing did not take place within [his] original lock period." Dkt. 62-6. Plaintiff's loan documents establish that neither of those things is true, because Plaintiff's loan closing **did** take place within his original lock period and he accordingly **did not** pay an RLEF. Plaintiff's refund letter is hardly the smoking gun Plaintiff

claims, a conclusion compelled by Plaintiff's selective highlighting and misrepresentations about what the letter actually says. *See* Opp. at 7.

Because Plaintiff's loan documents contradict his allegations, "the documents control." *Groves v. Kaiser Found. Health Plan Inc*., 32 F. Supp. 3d 1074, 1079 n.4 (N.D. Cal. 2014); *Brammer v. Richards*, 2014 WL 846249, at *4 (N.D. Cal. Mar. 4, 2014).[2] Plaintiff did not pay an RLEF. His claims should be dismissed, this time with prejudice. *See Coyoy v. City of Eloy*, 859 F. App'x 96, 98 (9th Cir. 2021) (affirming dismissal where the underlying contract contradicted plaintiff's allegations); *In re Aarons*, 643 B.R. 595, 609 (C.D. Cal. 2022) (plaintiff's allegations "are not plausible, because the very documents on which those allegations necessarily rely flatly contradict those allegations").

## II.   PLAINTIFF CONTINUES TO LUMP WF & CO. WITH WFBNA IN VIOLATION OF THE COURT'S DISMISSAL ORDER.

This Court previously warned Plaintiff that lumping WF & Co. with WFBNA as "Wells Fargo" was improper. Dkt. 52 at 9. Plaintiff ignored the Court's admonition, and his Amended Complaint, like his original pleading, makes serial, generalized allegations against "Wells Fargo." *See* Dkt. 56, ¶¶ 1-10, 22-28, 29, 31-33, 35-40, 42-43, 45-47, 50, 53, 58, 63-77, 79-87, 91-96, 100-101, 103-105. The Amended Complaint thus offers no factual allegations explaining how WF & Co., a bank holding company that does not make loans or engage with customers, would have been involved in his loan transaction or how it would have made any "misrepresentations" to him. *See* Opp. at 8–9.

Plaintiff's arguments are unavailing. First, citing *Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007), Plaintiff argues that he is under no obligation to identify which defendant made which misrepresentation. *Id.* at 11–12. But *Swartz* says no such thing. To the contrary, the Ninth Circuit held in *Swartz* that "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant … and

---

[2] Plaintiff's authorities are inapposite. In *Produce Pay, Inc. v. Izguerra Produce, Inc*., 39 F.4th 1158, 1162 (9th Cir. 2022), the relevant transaction documents—which the plaintiff attached to its complaint—supported the plaintiff's allegations, and the defendant's contrary arguments could not override what the documents said. Of course, that is not the case here, where Plaintiff's loan documents directly contradict his allegations. In *Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 1000 (9th Cir. 2018), a securities fraud case, the Ninth Circuit held that the district court erred in taking judicial notice of a call transcript because the transcript contained inconsistent statements. Plaintiff's loan documents are not inconsistent, and Plaintiff does not argue otherwise. *Khoja* has no application here.

4

1    inform each defendant separately of the allegations surrounding his alleged participation in the fraud."

2    *Swartz*, 476 F.3d at 765. The Ninth Circuit continued, "In the context of a fraud suit involving multiple

3    defendants, a plaintiff must, at a minimum, identify the role of each defendant in the alleged scheme."

4    *Id*. Because the complaint in *Swartz* was "shot through with general allegations that the 'defendants'

5    engaged in fraudulent conduct," it "patently fail[ed] to comply with Rule 9(b)." *Id*. So too here, where

6    the Amended Complaint makes generalized allegations against "Wells Fargo as a whole" in direct

7    contravention of the Court's dismissal order. *See* Dkt. 52 at 9.

8         *Tatung Co. Ltd. v. Hsu*, 2015 WL 11072178 (C.D. Cal. Apr. 23, 2015), also does not help

9    Plaintiff. Opp. at 12. Despite Plaintiff's framing, the case merely states that "[g]roup allegations" are

10   sufficient when a plaintiff has "present[ed] specific factual bases for making 'group' claims." *Tatung*,

11   2015 WL 11072178, at *17. There, the plaintiff "presented highly specific allegations, made against

12   specific parties" and, as the court observed, the "plaintiff ha[d] taken care to identify and categorize

13   each of the 34 Defendants, and attribute[d] definite acts or activities to separate Defendants and/or

14   categories of Defendants." *Id*. Here, the Amended Complaint makes no specific allegations about

15   which of the two Wells Fargo entities engaged in which alleged wrongful conduct or made the alleged

16   misrepresentations to Plaintiff. *Tatung* is irrelevant.

17        In the alternative, Plaintiff flippantly argues he is "not required" to differentiate between the

18   two Wells Fargo entities because "WF & Co. and [WFBNA] are a parent and wholly owned

19   subsidiary." Opp. at 12. That is not the law. "When a claim is subject to Rule 9(b), conduct 'cannot be

20   imputed from one party to the other based purely on a parent-subsidiary relationship.'" *United States*

21   *v. Safran Grp.*, 2017 WL 235197, at *8 (N.D. Cal. Jan. 19, 2017). "[T]he rule is the same when the

22   defendants are related corporate entities." *United States v. Scan Health Plan*, 2017 WL 4564722, at

23   *7 (C.D. Cal. Oct. 5, 2017). For this reason, Plaintiff's reliance on *Espinosa v. Bluemercury, Inc.*,

24   2017 WL 1079553, at *1 (N.D. Cal. Mar. 22, 2017), is misplaced, because the plaintiff's wage and

25   hour claims there were not subject to Rule 9(b). *Updateme Inc. v. Axel Springer SE*, 2018 WL 1184797

26   (N.D. Cal. Mar. 7, 2018), also does not help Plaintiff, because the plaintiff there did not simply lump

27   the defendant entities together as Plaintiff does here. Rather, the complaint in *Updateme* "alleged

28   which specific defendants made which specific statements, the representations these statements

5

DEFENDANTS WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A.'S REPLY IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:23-CV-03277-HSG

constituted, how the companies [we]re connected, and where and when each defendant made the statement(s)." *Id.* at *2. Thus, contrary to Plaintiff's suggestion, *Updateme* does not condone Plaintiff's shotgun pleading technique or excuse him from pleading each defendant's role with specificity.

Finally, Plaintiff invokes his conclusory allegations that WF & Co. "direct[ed], control[led], and coordinate[d] the … mortgage-lending-related decisions such as its decision whether to charge and ultimately partially refund RLEFs." Opp. at 13 (citing Dkt. 56, ¶¶ 16, 57).[3] But dismissal is warranted where a plaintiff's "allegations are nothing more than boilerplate buzzwords, devoid of any facts." *Brown v. Takeuchi Mfg. Co. (U.S.)*, 2022 WL 1204713, at *3 (E.D. Cal. Apr. 22, 2022); *see also Holland v. The Related Cos.*, 2016 WL 11760511, at *3 (N.D. Cal. Sept. 9, 2016) ("allegation that these individuals operate and control [the defendant] is a mere conclusory allegation" that is "not sufficient"); *Quigley v. Verizon Wireless*, 2012 WL 1945784, at *4 (N.D. Cal. May 30, 2012) ("[B]road allegations of control, standing alone, are not sufficient to meet the Rule 8 standard laid out in *Twombly* and *Iqbal*."). In fact, this Court recently considered—and rejected—similar allegations of "control" against WF & Co. *See Hudson v. Wells Fargo & Co.*, 2022 WL 2716526, at *4 (N.D. Cal. July 13, 2022), *appeal dismissed*, 2023 WL 5170318 (9th Cir. Apr. 11, 2023) (Gilliam, J.) (allegations that WF & Co. "exercises control over [WFBNA]'s management team and has the authority to hire and fire [WFBNA]'s managers, set company policies and establish [WFBNA]'s business strategy" were insufficient to state a claim against WF & Co.).

Plaintiff's conclusory allegations against WF & Co., made with zero factual support, are insufficient as a matter of law. Plaintiff's failure to follow this Court's instruction to avoid shotgun pleading warrants dismissal of the Amended Complaint with prejudice. *Destfino v. Reiswig*, 630 F.3d 952, 958–59 (9th Cir. 2011) (affirming dismissal with prejudice where "[t]he district court made clear

---

[3] Plaintiff argues, confusingly, that he can also represent individuals "deceived by Wells Fargo Home Mortgage" (which has been dismissed from this case) because it "engaged in the same misconduct." Opp. at 13 n.12. Plaintiff misunderstands Wells Fargo Home Mortgage's relationship to WFBNA. Wells Fargo Home Mortgage was a division within the bank, and not a separate entity. Plaintiff's cited case, *Hernandez v. Enterprise Rent-A-Car Co. of San Francisco*, 37 Cal. App. 5th 187 (2019), is inapplicable, because this is not a case of one company acquiring another.

in [its] order that plaintiffs must amend their 'shotgun pleading' to 'state[] clearly how each and every defendant is alleged to have violated plaintiffs' legal rights'" and failed to do so).

### III. PLAINTIFF'S ALLEGATIONS OF WRONGDOING REMAIN IMPERMISSIBLY CONCLUSORY.

The Amended Complaint makes only two allegations of wrongdoing: (1) unidentified "Wells Fargo" personnel "purposefully misrepresent[ed] that he had failed to submit proper documentation" and (2) "[o]n information and belief, 'Wells Fargo' knowingly charged Plaintiff an RLEF even though it knew he was not responsible for any delay in the closing of his mortgage." Dkt. 56, ¶ 38. The Opposition confirms the conclusory nature of these allegations, as it continues to rely on Plaintiff's improper shotgun pleading that lumps WF & Co. with WFBNA: "Wells Fargo Bank, N.A. and WF & Co. – the 'who' – misrepresented to [Plaintiff] that he was responsible for the delay in closing";[4] "'Wells Fargo's' misconduct occurred on loan documents and in New York"; and "'Wells Fargo' falsely told [Plaintiff] that he was responsible for his loan application missing necessary documents." Opp. at 8–9. As Wells Fargo showed in its opening brief, these allegations—which do not differentiate between the two Wells Fargo entities Plaintiff has sued and do not identify any persons allegedly responsible for the misstatements—are woefully insufficient under Rule 9(b). *See, e.g.*, *Vongsvirates v. Wells Fargo Bank, N.A.*, 2020 WL 3841269, at *3 (E.D. Cal. July 8, 2020), *report and recommendation adopted*, 2020 WL 4570697 (E.D. Cal. Aug. 7, 2020) ("For corporate defendants, a plaintiff must allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written."); *see also Green Silk, LLC v. DNE Nutraceuticals, Inc*., 2016 WL 8849712, at *4 (C.D. Cal. Mar. 15, 2016) (dismissing complaint that did not specifically identify who from the defendants made the allegedly false promises).

The "whistleblower" letter cannot save Plaintiff's otherwise deficient claims.[5] That letter

---

[4] Plaintiff's claim that WF & Co. made misrepresentations to him is utterly implausible given that WF & Co. is a bank holding company that does not make loans or interact with customers—a conclusion compelled by Plaintiff's loan documents, which never mention WF & Co.

[5] Apparently relying on the whistleblower letter, Plaintiff says that "Wells Fargo admitted wrongdoing in other cases." Opp. at 10. That is not true, as demonstrated by Plaintiff's failure to cite anything in support.

7

DEFENDANTS WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A.'S REPLY IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:23-CV-03277-HSG

related to the "Greater Los Angeles area," and the alleged "effort" described therein existed from "approximately the beginning of 2014 through about the beginning of 2016," years after Plaintiff closed on his New York home loan. *See* Dkt. 62-8. Plaintiff has no substantive answer for these differences, arguing only that Wells Fargo "provides no basis to believe that this conduct … would be limited to a certain area or why such conduct could not have happened before the time period at issue in the letter." Opp. at 10 n.7. Because "a motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a plaintiff's complaint," *Swanson v. Cnty. of Contra Costa*, 2023 WL 6391472, at *3 (N.D. Cal. Sept. 29, 2023), Wells Fargo has no obligation to offer any such "basis" at this stage. Instead, Plaintiff must make "factual allegations that nudge [his] claims across the line from conceivable to plausible." *Eclectic Props. E., LLC v. Marcus & Millichap Co*., 751 F.3d 990, 997 (9th Cir. 2014). Plaintiff cannot cure his conclusory allegations by relying on a letter that describes events happening 10+ years after his loan closed, in an entirely different region. *See Tuosto v. Philip Morris USA, Inc*., 2007 WL 2398507, at *9 n.9 (S.D.N.Y. Aug. 21, 2007) (the court "cannot make inferences from what is stated in [another] complaint about other factual scenarios in order to fortify conclusory statements within [the challenged] pleadings"); *Gross v. Colorplast Corp*., 434 F. Supp. 3d 245, 253 (E.D. Pa. 2020) (copying from one complaint to another "does not excuse following Rule 9(b)").

Faced with his patently insufficient allegations, Plaintiff is forced to resurrect the illogical, unsupported, and circular reasoning that doomed his original complaint: "'Wells Fargo' effectively admitted to wrongfully charging borrowers by refunding RLEFs, despite its own policy expressly stating that borrowers were not entitled to refunds." Opp. at 1; *see also id*. at 2. This "policy," which apparently comes from Plaintiff's Rate Lock Agreement, states as follows: "You will not be ***entitled*** to a refund or credit of this fee at any time (whether or not your loan is ever approved or closed) for any reason other than willful misconduct on the part of the lender." Dkt. 62-4 (emphasis added). This "entitlement" to a refund would obviously not prevent Wells Fargo from deciding to voluntarily refund customers for business reasons that do not amount to "willful misconduct" (which is not even alleged here). Plaintiff's speculative, illogical leaps cannot sustain his defective claims. *See Lokossou v. Servicesource Int'l, Inc*., 2018 WL 1709926, at *1 (N.D. Cal. Apr. 9, 2018) ("[T]here are many equally plausible possible answers to the questions [plaintiff] poses … And to say—without additional, more

8

specific factual allegations—that 'racial animus' or 'racial hate' are the only possible answers is nothing more than speculation."); *Foster v. Schubert*, 2022 WL 1570870, at *2 (E.D. Cal. May 18, 2022) ("[U]sing the label or conclusion wrongful … does not suffice to state a claim."). Indeed, as the Court observed when dismissing the original complaint, the fact of the refund, while "intriguing," is insufficient without "particularized factual allegations to allow the Court to conclude that any such intrigue provides a legally cognizable basis for [Plaintiff's] claims." Dkt. 52 at 10.

Plaintiff's allegations of wrongdoing remain unsupported by any facts. His claims should be dismissed with prejudice.

## IV.   PLAINTIFF'S NEW ALLEGATIONS CONFIRM THAT HIS CLAIMS ARE TIME-BARRED.

As Plaintiff acknowledges, "[t]he question when a plaintiff actually discovered or reasonably should have discovered the facts for purposes of the delayed discovery rule is a question of fact *unless the evidence can support only one reasonable conclusion*." Opp. at 14 (quoting *Pratt v. Higgins*, 2023 WL 4564551, at *6 (N.D. Cal. July 17, 2023) (emphasis added)). Such is the case here.

Plaintiff's tolling theory is founded on his assertion that he had no reason to suspect any wrongdoing until he received a refund in 2021. Dkt. 56, ¶ 38. But that assertion is plainly contradicted by Plaintiff's own allegations. Plaintiff alleges that he "is intimately familiar with the loan origination process," that he has "expertise in navigating FHA 203(k) loans," and that he "successfully navigated the same loan approval process at least *four times*." *Id*. ¶¶ 30, 32 (emphasis in original). Plaintiff further alleges that he "meticulously gathered and promptly provided the loan originator with all required documentation to close the loan on time," but that someone at "Wells Fargo" informed him "that his loan application ostensibly lacked essential documentation." *Id*. ¶¶ 34-35. Plaintiff, allegedly "fearing foreclosure on his first loan," "agreed to resubmit the relevant documentation *even though he had previously submitted all necessary documents*." *Id*. ¶ 35 (emphasis added). These specific allegations cannot be overridden by Plaintiff's conclusory assertion he "never suspected" any wrongful conduct until receiving the refund check in 2021. *See Yetek v. Dental Bd. of Cal*., 2010 WL 2594543, at *4 (N.D. Cal. June 22, 2010) ("[C]omplaints' conclusory assertions … cannot control in light of the more specific factual allegations."); *Anderson v. Virga*, 2017 WL 1179142, at *3 (E.D.

Cal. Mar. 29, 2017), *report and recommendation adopted*, 2017 WL 2546496 (E.D. Cal. June 13, 2017) ("Plaintiff's factual allegations must be taken as true in evaluating his complaint under Rule 12(b)(6), but where the allegations contradict each other, very little can be inferred factually to supply the essential elements of his claim.").

As the Court explained in its dismissal order, if Plaintiff's allegations reveal that "when he closed in 2005, Plaintiff necessarily would have been able to ascertain which party was at fault for closing-related delays," the applicable statutes of limitation would bar the claims. Dkt. 52 at 7–8. Plaintiff's new allegations do exactly that. Indeed, those allegations support only "one reasonable conclusion": Plaintiff, a self-described lending "expert," believed—in 2005—that "he had previously submitted all necessary documents" and that he himself had not caused, and was not at fault for, any closing-related delays. That is inquiry notice under California law, which requires only that the plaintiff have "a suspicion of wrongoing, which he is charged with once he has notice or information of circumstances to put a reasonable person on inquiry." *McKelvey v. Boeing N. Am.*, 74 Cal. App. 4th 151, 160 (1999).

Plaintiff's claims are time-barred on their face, rendering his tolling allegations irrelevant. The Amended Complaint should be dismissed with prejudice.

## V.   EACH OF PLAINTIFF'S CLAIMS SEPARATELY FAILS AS A MATTER OF LAW.

Even if the Court finds that Plaintiff has adequately pled wrongful conduct by both Wells Fargo entities and that the statute of limitations issue cannot be resolved at this stage, each of his claims fails for independent reasons.

### A.   Plaintiff's Quasi-Contract Claim Fails Because the Parties Had an Express Contract.

Plaintiff acknowledges that he cannot maintain a claim for quasi-contract when an express contract governs, unless that contract was procured by fraud. Opp. at 17. But Plaintiff's conclusory allegations of fraud cannot avoid the preclusive effect of his Rate Lock Agreement. *See Schultheis v. Ocwen Loan Servicing, LLC*, 2016 WL 7443242, at *7 (C.D. Cal. May 6, 2016) (equitable estoppel claim dismissed where plaintiff made conclusory allegations of fraud). Moreover, the allegedly false statements Plaintiff identifies—that "'Wells Fargo' misrepresented to [Plaintiff] that he had failed to

submit essential documentation" and "charged [him] an RLEF despite knowing he was not responsible for the delay in closing," (Opp. at 17) necessarily occurred *after* June 1, 2005, when Plaintiff instructed Wells Fargo to "lock in" his loan terms until August 10, 2005. *See* Dkt. 62-4. As a matter of law, those after-the-fact statements could not have induced Plaintiff to act. *See New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1111 (C.D. Cal. 2004) ("Defendant's after-the-fact statements [could not] be intended to induce an economic transaction"). And finally, as shown above, Plaintiff cannot rely on his unpled, unsupported theory that Wells Fargo "misrepresented the very fee at issue by mislabeling the RLEF as an 'extended lock fee.'" Opp. at 17. Plaintiff cannot amend his claims in his opposition brief, and this new theory is foreclosed by the loan documents he signed, which show that his loan closing was not delayed and he did not pay an RLEF. Plaintiff's new, nonsensical "mislabeling" theory cannot serve as a substitute for Plaintiff's manifestly insufficient allegations.

For all these reasons, Plaintiff's cited cases are distinguishable. In *Cohen v. Ellison First Asia, LLC*, 2022 WL 2903124, at *11 (C.D. Cal. Jan. 4, 2022), a summary judgment case, the evidence showed that the plaintiff had difficulty reading and thus could have justifiably relied on the defendants' false statements. In *Underwood v. Future Income Payments, LLC*, 2018 WL 4964333, at *2 (C.D. Cal. Apr. 26, 2018), the plaintiffs alleged that the defendant falsely advertised its products as "pension advances" that would allow the plaintiffs to obtain cash quickly, when in reality, the arrangements were loans that required the plaintiffs to pay back massive amounts of interest. *Id*. Plaintiff's circumstances are not the same, as he has not identified any misrepresentations that could have induced him to select an extended rate-lock period in June 2005, let alone pled any alleged fraud with particularity, as required.

In a last-ditch effort to salvage this claim, Plaintiff argues that, even if the Rate Lock Agreement was not procured by fraud, it does not govern because it does not address the subject matter of this dispute. Opp. at 18. In particular, Plaintiff posits that he may have paid an "entirely different fee," even though the only fee identified is the $4,087.13 fee listed in his Rate Lock Agreement *and* refund letter. *Id*. Critically, Plaintiff does not dispute the authenticity of the Rate Lock Agreement he signed, and he admits that the document is incorporated by reference into the Amended Complaint. *Id.* at 5. This frivolous argument cannot save Plaintiff's deficient pleading.

Plaintiff's lone cited case on this issue does not help him. In *TSI USA LLC v. Uber Technologies, Inc.*, 2018 WL 4638726, at *5 (N.D. Cal. Sept. 25, 2018), the plaintiff brought a quasi-contract claim based on its assertion that the services it provided fell outside the scope of the parties' agreement. This Court declined to resolve the dispute over the scope of the agreement, noting that it needed "further factual development as to the understanding of the parties regarding the contract and the services delivered by [the plaintiff]." *Id.* "Further factual development" is not needed here, when Plaintiff has merely invented from whole cloth another fee he "may have paid" despite all the documentation to the contrary.

The parties' extended Rate Lock Agreement governs. Plaintiff's quasi-contract claim should be dismissed.

### B.     The Claim for Money Had and Received Fails as a Matter of Law.

Plaintiff's claim for money had and received also fails. For starters, this claim, like the quasi-contract claim, cannot be maintained where an enforceable agreement exists. Accordingly, the claim fails for the same reasons the quasi-contract claim fails—including Plaintiff's failure to allege any facts supporting his conclusory and illogical "fraud in the inducement" theory, which Plaintiff uses to attack the enforceability of his written contract. *See supra* Section V.A.

The money had and received claim fails for the separate reason that Plaintiff has not pled a definite ascertainable sum. *See, e.g.*, *Walter v. Hughes Commc'ns, Inc.*, 682 F. Supp. 2d 1031, 1047 (N.D. Cal. 2010). While Plaintiff need not plead an "exact dollar amount," he must plead something more concrete than "billions of dollars." *See* Dkt. 62 at 16. Plaintiff has no answer for the cases cited in Wells Fargo's opening brief, which presumably is why he ignores them. *See* Opp. at 18–19.

Instead, Plaintiff argues that he only has to allege a sum that is "identifiable or traceable," and because Wells Fargo "has already issued refund checks to customers it improperly charged," this "confirm[s] both the existence of these transactions and their traceability." *Id.* at 19. That argument is off base, as Plaintiff is not seeking the amount of any fees he and the putative class members allegedly paid. Instead, he seeks "billions of dollars" in profits he claims Wells Fargo made from the RLEFs, without any inkling of how those unspecified profits might be determined. Dkt. 56, ¶¶ 3-5, 41, 85. This glaring omission renders Plaintiff's cited cases inapposite.

In *Natomas Gardens Investment Group, LLC v. Sinadinos*, 710 F. Supp. 2d 1008, 1020 (E.D. Cal. 2010), the complaint identified a definite, ascertainable sum in the form of specific funds that were invested and deposited in specifically identified accounts, and that were subject to contractual terms requiring their repayment upon the occurrence of certain events. Of course, no such facts are (or could be) alleged here. In *Haas v. Travelex Insurance Services Inc*., 555 F. Supp. 3d 970, 982 (C.D. Cal. 2021), the plaintiff, who alleged overpayment of insurance premiums, likewise alleged a calculable sum—namely, "the pro rata share of the gross premium which is attributable to each policy benefit purchased by each insured under that person's specific … Insurance Plan." In short, while the law does not require Plaintiff to plead an "exact dollar amount" at this stage, it certainly requires him to allege a definite, ascertainable sum and how that amount might be determined. Plaintiff's allegations—that the "profits" Wells Fargo allegedly earned on the RLEFs "will be determined" in the future, in some undescribed manner—do not meet the mark.

Finally, as shown in the opening brief, "to state a claim for money had and received, the plaintiff must allege that 'the defendant received money that was intended to be used for the benefit of the plaintiff.'" Dkt. 62 at 16–17. Plaintiff acknowledges this requirement, but then advances another unpled theory, that he can use the claim to recover not "profits," but instead "***interest*** on wrongly obtained funds." Opp. at 20 (emphasis added). Although Plaintiff cannot use his opposition brief to advance a new theory (*see supra* p. 2), his cited cases do not support his argument. In fact, none of them awarded extra-contractual interest as "disgorgement" (nor do they support the "disgorgement of profits" theory Plaintiff actually pled). In *Chase Investment Services Corp. v. Law Offices of Jon Divens & Assocs., LLC*, 748 F. Supp. 2d 1145, 1149, 1156 (C.D. Cal. 2010), *aff'd*, 491 F. App'x 793 (9th Cir. 2012), the plaintiff brought a money had and received claim to recover interest to which it was expressly entitled under the underlying contracts. Of course, Plaintiff cannot allege any express entitlement to interest here. *County of San Bernardino v. Walsh*, 158 Cal. App. 4th 533, 543 (2007), *as modified on denial of reh'g* (Jan. 25, 2008), *as modified* (Jan. 28, 2008), did not even concern interest. Instead, it concerned a scheme of government official bribery, and the court held that the disgorgement of profits, despite a lack of nexus to the plaintiff's own funds, was warranted by "a public policy that wrongdoers must give up the money they wrongfully obtain in dealing ***with the***

13

*government*." *Id*. (emphasis added). Finally, in *Utility Audit Co. v. City of Los Angeles*, 112 Cal. App. 4th 950, 958 (2003), the court considered whether governmental immunity applied to the money had and received claim.

Apparently unable to identify any California law condoning his newfound "interest" theory, Plaintiff reverts to the profits theory he actually pled, and invokes the Restatement of Restitution. *See* Opp. at 20. As Plaintiff acknowledges, however, the Restatement can apply only "in the absence of contrary law." *See id*. at n.19. As shown herein and in the opening brief, because Plaintiff's money had and received theory is, in fact, contrary to law, the Restatement cannot rescue the claim.

The Court should dismiss Plaintiff's money had and received claim with prejudice.

**C.      Plaintiff Fails to State a Claim for Conversion.**

Finally, Plaintiff fails to state a claim for conversion. As shown in the opening brief, "[m]oney cannot be the subject of a cause of action for conversion unless there is a specific, identifiable sum involved." *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1491 (2006). There is no "specific, identifiable sum" involved here, and the conversion claim thus necessarily fails.[6] Moreover, "[w]here plaintiff neither has title to the property alleged to have been converted, nor possession thereof, he cannot maintain an action for conversion." *Moore v. Regents of Univ. of Cal.*, 51 Cal. 3d 120, 136 (1990). According to Plaintiff, Wells Fargo "wrongfully interfered with his possession of the profits derived from th[e] payment" of the RLEF. Opp. at 21. But Plaintiff's insistence that he had a right to "possess" Wells Fargo's profits does not make it so. Plaintiff cites no authority supporting his position; his cited authorities are once again entirely unhelpful to him because they all involved lost profits as part of failed business dealings, which are not present here. In *Myers v. Stephens*, 233 Cal. App. 2d 104 (1965), the plaintiff bought a house from the defendant, and the defendant then resold the house to a third party without the plaintiff's knowledge. The defendant's actions prevented the plaintiff from selling the house and making a profit on that sale. *Id*. at 109. In *Second Measure, Inc. v. Kim*, 143 F. Supp. 3d 961 (N.D. Cal. 2015), the defendant's former partner brought a conversion claim based on

---

[6] Plaintiff's lone cited case, *Welco Electronics, Inc. v. Mora*, 223 Cal. App. 4th 202 (2014), is readily distinguishable. There, the plaintiff identified a specific sum: $372,039.01 in overcharges it paid the defendant. *Id*. at 218.

14

DEFENDANTS WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A.'S REPLY IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:23-CV-03277-HSG

his allegation that the defendant wrongfully shut him out of their business. As the court held, the plaintiff "allege[d] the existence of property to which he was entitled because, assuming [his] allegations to be true, [plaintiff] would have had a right to a share of the business's assets and profits." *Id*. at 981. Likewise, in *Carrey v. Boyes Hot Springs Resort, Inc.*, 245 Cal. App. 2d 618 (1966), the plaintiffs sought as damages—not restitution—the profits they lost in connection with their business after the defendant wrongfully evicted them from their business premises.[7] These cases have no application here, where Plaintiff seeks not his but Wells Fargo's profits.

For this reason, the Court should reject Plaintiff's argument that Wells Fargo "caused [him] to lose the ability to invest and earn profits on that money himself." Opp. at 21. The Amended Complaint does not seek profits Plaintiff would have earned "on that money himself." *Id*. It seeks disgorgement of profits ***Wells Fargo*** allegedly earned on the RLEFs. Moreover, as Wells Fargo's November 22, 2021 letter to Plaintiff demonstrates, Plaintiff has already been compensated for this newly claimed "loss of the ability to invest and earn profits" on the amount he paid for his extended rate-lock fee. *See* Dkt. 62-6 ("Your refund includes … $1,410.21 for interest on that fee(s) … [and] $1,307.68 to compensate you for the time you did not have these funds."). Plaintiff's "lost profits" arguments have no basis in the law, and the Court should reject them.

## CONCLUSION

The Opposition confirms that Plaintiff cannot cure the fundamental pleading defects in his claims. Accordingly, the Court should dismiss the Amended Complaint in its entirety, with prejudice.

---

[7] For the same reason, *Vietzke v. Austin Co.*, 54 F. Supp. 265 (E.D. Wash. 1944), is inapposite. There, the plaintiff sought, as damages, ***its*** lost profits—not the profits the defendant purportedly earned as a result of its alleged conversion.

1  DATED: June 18, 2024                    Respectfully submitted,

2                                          **WINSTON & STRAWN LLP**

3
                                    By:    */s/ Amanda L. Groves*
4                                          Amanda L. Groves (SBN 187216)
                                           agroves@winston.com
5                                          WINSTON & STRAWN LLP
                                           333 S. Grand Avenue, 38th Floor
6                                          Los Angeles, CA 90071
                                           Telephone: (213) 615-1700
7                                          Facsimile: (213) 615-1750

8                                          Drew H. Washington (SBN 350107)
                                           dwashington@winston.com
9                                          101 California Street, 35th Floor
                                           San Francisco, CA 94111-5840
10                                         Telephone: (415) 591-1475
                                           Facsimile: (415) 591-1400

11
                                           Kobi K. Brinson (*pro hac vice*)
12                                         kbrinson@winston.com
                                           Stacie C. Knight (*pro hac vice*)
13                                         sknight@winston.com
                                           WINSTON & STRAWN LLP
14                                         300 South Tryon Street, 16th Floor
                                           Charlotte, NC 28202
15                                         Telephone: (704) 350-7700
                                           Facsimile: (704) 350-7800

16
                                           *Attorneys for Defendants Wells Fargo & Company*
17                                         *and Wells Fargo Bank, N.A.*

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A.'S REPLY IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:23-CV-03277-HSG