UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY MORRIS,<br><br>    Plaintiff,<br><br>v.<br><br>WELLS FARGO & COMPANY, et al.,<br><br>    Defendants. | Case No. 23-cv-03277-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 62 |

Before the Court is Wells Fargo & Company and Wells Fargo Bank, N.A.'s motion to dismiss Plaintiff's first amended class action complaint, Dkt. No. 62. The Court finds the matter appropriate for disposition without oral argument and deems it submitted. *See* Civil L.R. 7-1(b). The Court **GRANTS IN PART AND DENIES IN PART** the motion.

**I.  BACKGROUND**

On May 23, 2023, Anthony Morris ("Plaintiff") filed this putative class action against Wells Fargo & Company ("WF & Co."), Wells Fargo Bank, N.A. ("the Bank"), and Wells Fargo Home Mortgage, Inc., in San Francisco Superior Court. Dkt. No. 1. On June 30, 2023, the defendants removed the case to federal court. *Id*.

Plaintiff's lawsuit arises from "[Wells Fargo's] failure to return to its borrowers massive amounts of money Wells Fargo made after it wrongly charged borrowers rate lock extension fees ("RLEFs") on the borrowers' respective Wells Fargo mortgage applications." Dkt. No. 1-1 ("Compl.") ¶ 1. As relevant here, "RLEFs extend the period in which a quoted mortgage interest rate is 'locked in' against potential market fluctuations." *Id*. Whether the borrower or the lender is responsible for paying the RLEF is a matter of "lender policy," but generally the party at fault for the delay in closing bears the cost. *Id*. ¶ 19. According to Plaintiff, Wells Fargo had such a

policy during the relevant time period, which purported to "charge borrowers for RLEFs only when the borrowers [were] at fault for delays and [to] absorb[] those fees itself . . . when the fault [was] Wells Fargo's." *Id*. ¶ 21.  During the same period, the company allegedly also had a policy of limiting their obligation to refund RLEFs to instances of its own "willful misconduct."  *Id*. ¶ 22.

In his initial complaint, Plaintiff alleged that he applied for a home mortgage with Wells Fargo in early 2005, and that Wells Fargo knowingly misrepresented to him that he owed an RLEF in the amount of $4,087.13, which he paid.  *Id*. ¶¶ 27, 29, 50.  Plaintiff only discovered the wrongdoing many years later in 2013 when, unprompted, "Wells Fargo mailed Plaintiff a letter enclosing a purported refund check for the RLEF he was wrongfully charged by Wells Fargo in connection with his mortgage."  *Id*. ¶ 30.  Plaintiff's original complaint asserted state law claims for unjust enrichment, money had and received, conversion, and civil theft on behalf of Plaintiff and a nationwide class of borrowers who received RLEF refunds.  *Id*. ¶¶ 64–99.

The three named defendants moved to dismiss the complaint in its entirety.  Dkt. No. 19.  The Court rejected their arguments that Plaintiff's claims were time-barred and that Plaintiff had failed to sufficiently state claims against WF & Co.  *See Morris v. Wells Fargo & Co.*, No. 23-CV-03277-HSG, 2024 WL 781036, at *4–5 (N.D. Cal. Feb. 26, 2024) ("Order").[1]  But the Court ultimately granted the motion to dismiss with leave to amend on the basis that Plaintiff's allegations as to the exact nature of the defendants' misconduct were too vague and conclusory to state a legally cognizable theory for his claims.  *Id.* at 6.  Specifically, the Court found that Plaintiff failed to plead with particularity facts about "the parties' course of conduct during the loan transaction (for example, whether closing was delayed beyond the rate lock period, and what party contributed to that delay), the specific representations made about the length of the application process and why they were misleading, or anything else that demonstrates Defendants' RLEF-related wrongdoing."  *Id.* at 5.

Plaintiff timely filed an amended complaint against WF & Co. and the Bank ("Defendants").  Dkt. No. 56 ("FAC").  The amended complaint contains additional facts about

---

[1] Plaintiff did not oppose the defendants' request to dismiss Wells Fargo Home Mortgage, Inc., from the lawsuit, which the Court granted.  *See* Order at 4, fn. 1.

Plaintiff's loan transaction. *Id.* ¶¶ 30–39. Plaintiff now alleges that at the point he was conditionally approved for his loan with Wells Fargo on April 14, 2005, he elected to "lock in" a particular interest rate for a certain amount of time because he was "confident in his ability to close the loan on time," and "[had] not been informed of the consequences of the loan not closing within the rate lock period." *Id.* ¶ 33. Then, at some point during the loan closure process, Wells Fargo told him that his application lacked certain documentation, and that he would be "required to (re)submit these documents and pay an RLEF due to the resulting delay in closing his loan." *Id.* ¶ 35. Plaintiff alleges that he agreed to submit the relevant documentation to avoid an increased interest rate, even though he believed he had previously submitted all the necessary documents, and, as a result of the resubmission, the loan "did not close during the rate lock period." *Id.* Then, "[a]ssuming Wells Fargo was applying its stated policy fairly, and not wanting to delay the loan closure even further, Plaintiff subsequently paid an RLEF of $4,087.13." *Id.*

The amended complaint also includes facts summarizing a Wells Fargo employee-whistleblower's allegations that Defendants "orchestrated an effort to shift the cost of RLEFs onto borrowers instead of the bank," which "involved blaming customers for delays in the loan process and improperly charging them RLEFs." FAC ¶ 41. Additionally, Plaintiff restyled his unjust enrichment claim as a quasi-contract claim and removed the civil theft claim. *Id.* ¶ 78. Defendants move to dismiss the amended complaint with prejudice. Dkt. No. 62 ("Mot.") at 3.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that

3

1   the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

2   Rule 9(b) imposes a heightened pleading standard where fraud is an essential element of a
3   claim. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity
4   the circumstances constituting fraud or mistake."); *see also Vess v. Ciba–Geigy Corp. USA*, 317
5   F.3d 1097, 1107 (9th Cir. 2003). A plaintiff must identify "the who, what, when, where, and how"
6   of the alleged conduct, so as to provide defendants with sufficient information to defend against
7   the charge. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). However, "[m]alice, intent,
8   knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P.
9   Rule 9(b).

10  In reviewing the plausibility of a complaint, courts "accept factual allegations in the
11  complaint as true and construe the pleadings in the light most favorable to the nonmoving party."
12  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nevertheless,
13  courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of
14  fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir.
15  2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

### III.  DISCUSSION

#### A.  Request for Judicial Notice

Defendants first argue that Plaintiff's loan documents, which they ask the Court to incorporate by reference into Plaintiff's complaint, contradict Plaintiff's allegations and render them facially implausible. Mot. at 9–10. Defendants assert that the Court "can—and should— consider the actual terms of Plaintiff's loan documents . . . and dismiss the Amended Complaint because those documents do not plausibly support Plaintiff's claims." Dkt. No. 66 ("Reply") at 7; Dkt. No. 62-9 (Request for Judicial Notice) at 2 ("On a motion to dismiss, judicial notice of the full text of documents referenced in a complaint is proper under the doctrine of 'incorporation by reference.'").

Plaintiff does not appear to challenge the authenticity of the loan documents or oppose Defendants' request to incorporate them by reference. *See* Dkt. No. 65 ("Opp.") at 13. But as the Ninth Circuit explained in *Khoja v. Orexigen Therapeutics, Inc.*, while the Court "may assume [an

1  incorporated document's] contents are true for purposes of a motion to dismiss . . . it is improper
2  to assume the truth of an incorporated document if such assumptions only serve to dispute facts
3  stated in a well-pleaded complaint." 899 F.3d 988, 1002 (9th Cir. 2018).  Accordingly, the Court
4  may take judicial notice of the loan documents themselves, but may not assume the truth of any
5  statement in them that "'is subject to varying interpretations, [such that] there is a reasonable
6  dispute as to what the [statement] establishes.'" *Sanchez-Martinez v. Freitas*, No. 23-CV-02508-
7  HSG, 2024 WL 4309277, at *2 (N.D. Cal. Sept. 26, 2024) (quoting *Khoja*, 899 F.3d at 1000).

8  Here, Defendants are asking the Court to do precisely what *Khoja* prohibits.  Defendants primarily rely on a document titled "Price Range Protection Confirmation/Rate Lock Agreement" ("the Agreement") that Plaintiff appears to have signed when his loan closed on August 2, 2005. *See* Dkt. No. 62-4, RJN, Ex. C.  The document states that "the Lender" (presumably Defendants) "received verbal instructions from [Plaintiff] or an authorized agent on 6/01/05 to convert [Plaintiff's] loan registration from a 'floating' (uncommitted rate and discount points) to a price range protection." *Id.*  Further, it indicates that the "Expiration Date of Rate Lock" was "8/10/05" and that the "Extended Lock Fee" was $4,087.13. *Id.*  According to Defendants, this confirms that Plaintiff paid an "up-front, extended lock fee" that guaranteed him a particular interest rate until August 10, 2005, as opposed to an RLEF, and, that because his loan closed on August 2, 2005, prior to the expiration date, the loan was not delayed. *See* Mot. at 4–5.  Defendants argue that this directly contradicts Plaintiff's allegations that "(1) his loan closing was delayed beyond his original rate-lock period; and (2) he paid a RLEF," and that the Court should dismiss the complaint on this basis. *Id.* at 10.

But Plaintiff does not concede that he made any request related to the loan on June 1, 2005, despite what the Agreement says.  Moreover, he advances an alternative interpretation of the Agreement:  because it was executed on August 2, 2005, the day Plaintiff's loan closed, it cannot show that Plaintiff was charged an "up-front" fee as Defendants claim. *See* Opp. at 14.  Further, he contends it is evidence that Defendants "sought to conceal [their] wrongfully charged RLEF by retroactively recharacterizing the charge as an up-front fee when it closed [his] loan." *Id.* at 15.

Defendants' request that the Court adopt their version of the facts based on their disputed

5

interpretation of the face of the loan documents would thus require the Court to "resolve competing theories against the complaint," which is not the purpose or a permissible use of the incorporation-by-reference doctrine. *See Khoja*, 899 F.3d at 998.  While the Agreement certainly raises questions about Plaintiff's ability to ultimately prove his case, because its implication for Plaintiff's theory and claims is reasonably subject to dispute at this stage, the Court cannot adopt Defendants' interpretation as true for purposes of resolving the motion to dismiss.  *See Sanchez-Martinez*, 2024 WL 4309277, at *3 (taking judicial notice of county sheriff press release as a public record that was not subject to reasonable dispute, but declining to treat statements in it purportedly made by correctional officials as evidence of the truth of defendant law enforcement agency's version of the facts). *Cf. Groves v. Kaiser Found. Health Plan Inc.*, 32 F. Supp. 3d 1074, 1079 (N.D. Cal. 2014) (court accepted as true definition of term in pension plan because it plainly contradicted plaintiff's argument that the plan did not provide any definition at all).  So while the Court takes judicial notice of the existence of the documents and what they say on their face under the incorporation by reference doctrine, it does so subject to the limitations discussed above.

### B.  Sufficiency of Plaintiff's Allegations Under Rule 9(b)

Aside from using the loan documents to challenge Plaintiff's complaint, Defendants argue that Plaintiff's amended allegations are too vague and conclusory to survive the heightened pleading standard under Rule 9(b).[2]  Mot. at 12–15.  The Court previously held that Plaintiff must plead "with particularity facts about the parties' course of conduct during the loan transaction (for example, whether closing was delayed beyond the rate lock period, and what party contributed to that delay)."  Order at 5.  Plaintiff now alleges that at some point during his loan closure between April and August 2005, "he was subsequently informed by Wells Fargo that his loan application ostensibly lacked essential documentation and that he was therefore required to (re)submit these documents and pay an RLEF due to the resulting delay in closing his loan."  FAC ¶ 35.  At closing, Plaintiff then paid the RLEF believing that he was at fault and properly owed the fee

---

[2] Here, the Court is only addressing Defendants' general argument that Plaintiff's overall theory of wrongful conduct is insufficiently pled under Rule 9(b).  The Court will then turn to Defendants' separate arguments about the sufficiency Plaintiff's pleading as to each of his legal claims.

1  according to Defendants' misrepresentations. *See id.*

2        Accepting these allegations as true and making all factual inferences in Plaintiff's favor, the Court finds that Plaintiff's amended complaint meets the Rule 9(b) standard. Plaintiff does not provide extensive details about his course of dealing with Defendants, but he does allege several details that he did not plead in his prior complaint, including the purportedly false statement Defendants allegedly made to him, the circumstances and approximate timing of the misrepresentation, and the reasons for Plaintiff's reliance on it. These facts provide Defendants with enough information to adequately defend against Plaintiff's claims, which satisfies Rule 9(b). *See Cooper*, 137 F.3d at 627 (complaint meets Rule 9(b) standard if it "identifies the circumstances of the alleged fraud so that defendants can prepare an adequate answer").

      Defendants insist that the allegations are too vague because Plaintiff only presents a "loosely paraphrased version" of Defendants' alleged misrepresentation. Mot. at 13 (citing *Johnson v. Maker Ecosystem Growth Holdings*, Inc., No. 20-CV-02569-MMC, 2023 WL 2191214, at *3 (N.D. Cal. Feb. 22, 2023)). But the Ninth Circuit has held that Rule 9(b) "does not require absolute particularity or a recital of the evidence." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016). Instead, it is sufficient if a plaintiff identifies the "specific content of any false or misleading statement," *Johnson*, 2023 WL 2191214, at *3, which Plaintiff does here. *See* FAC ¶ 35 (alleging specifically that Defendants "informed" him that "his loan application ostensibly lacked essential documentation and that he was therefore required to (re)submit these documents and pay an RLEF due to the resulting delay in closing his loan"). *Cf. Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231, 1246 (N.D. Cal. 1998) (complaint dismissed under Rule 9(b) because it "repackage[d] defendants' actual oral statements in vague and impressionistic terms" and failed to allege what they "actually said"). While the Court has some doubt as to whether Plaintiff's theory of misrepresentation will prove to be substantively meritorious, he has cured the vagueness issue the Court previously identified such that his allegations are sufficiently pled at this stage. Accordingly, the Court **DENIES** Defendants' motion to dismiss on this basis.

United States District Court
Northern District of California

### A. Claims against WF & Co.

Defendants argue that Plaintiff's "conclusory allegations against Defendant WF & Co., made with zero factual support, are insufficient as a matter of law." Reply at 12. Specifically, Defendants point to the "serial, generalized allegations against 'Wells Fargo'" in Plaintiff's amended complaint that fail to explain "how WF & Co., a bank holding company that does not make loans or engage with customers, would have been involved in his loan transaction or how it would have made any 'misrepresentations' to [Plaintiff]." *Id.* at 10.

This argument retreads ground that the Court already covered in its prior Order, which found that Plaintiff's allegations that WF & Co. "made policy decisions bearing on RLEF charges and refunds" were "minimally adequate" to state a claim against WF & Co. by connecting it to the misconduct involving RLEFs. Order at 5 (citing FAC ¶ 43). Plaintiff's amended complaint additionally alleges that WF & Co. "provides" mortgage-lending services to consumers, and that it "operate[s]" these and other services through the Bank, its wholly owned subsidiary. *See* FAC ¶¶ 13–15. Viewing these facts in Plaintiff's favor, the Court's understanding of Plaintiff's theory of WF & Co's liability still stands: WF & Co. officers made high-level policy decisions regarding RLEFs while the Bank implemented those decisions at the consumer level. *See* Order at 5, fn. 2. These allegations are enough to give both Defendants "a clear statement about what [they] allegedly did wrong" and allow the claims against WF & Co. to proceed. *See Sollberger v. Wachovia Sec.*, LLC, No. SACV 09-0766AGANX, 2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010). Defendants may raise arguments about the merits of Plaintiff's claims against WF & Co. on summary judgment or at trial. The Court thus **DENIES** Defendants' motion to dismiss the complaint on this basis.

### B. Statute of Limitations

Defendants also reassert their contention that Plaintiff's claims are time-barred, this time arguing that Plaintiff has essentially pled himself out of court. According to Defendants, Plaintiff's allegation in the amended complaint that he had "submitted all necessary documents" as part of his loan application amounts to an "admission" that he suspected the falsity of Wells Fargo's statement that Plaintiff was at fault for the paperwork issue when the statement was made

in 2005. Mot. at 1 (citing FAC ¶ 35). The Court disagrees and has already explained why.

As stated in the prior Order, at the motion to dismiss stage, the Court "must assume to be true any specific allegations explaining that the plaintiff did not discover, nor suspect, nor was there any means through which her reasonable diligence would have revealed, or through which she would have suspected the defendant's action as a cause of her injury." *Jaeger v. Howmedica Osteonics Corp.*, No. 15-CV-00164-HSG, 2016 WL 520985 (N.D. Cal. Feb. 10, 2016), at *10. Here, Plaintiff alleges that although he made "diligent efforts" to gather all the necessary documents for his application, he eventually paid the RLEF because he "[a]summe[d] Wells Fargo was applying its state policy fairly" to only charge borrowers a fee only if they caused the delay. FAC ¶ 35. Further, Plaintiff alleges that at the time his loan closed, he "never suspected that a sophisticated financial institution like Wells Fargo would purposefully misrepresent that he had failed to submit proper documentation." *Id.* ¶ 38.

Like the prior version of the complaint, these allegations similarly do not provide a sufficient basis for the Court to conclude that Plaintiff *necessarily* would have known that Wells Fargo was at fault for the delayed closing such that tolling is not available to Plaintiff as a matter of law. Viewing the facts pled and making all inferences in Plaintiff's favor, it is plausible that although Plaintiff believed that he had submitted all of the proper loan documents, he nonetheless trusted Defendants' representation that there was a problem with his paperwork and that he was at fault. As before, Plaintiff's minimally adequate pleading still leaves enough ambiguity in the facts pled such that he conceivably could be entitled to tolling after evidentiary development—for example, if he believed he had submitted the proper paperwork the first time but had no way of confirming that belief. *See* Order at 4. Again, the Court **DENIES** Defendants' motion to dismiss Plaintiff's complaint as time-barred. *See Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) ("When a motion to dismiss is based on the running of a statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.").

//

//

### C.   Claims for Quasi-Contract, Money Had and Received, and Conversion

Finally, Defendants argue that each of Plaintiff's claims fails separately as a matter of law.

####   i.   Quasi-contract

First, Defendants argue that Plaintiff's quasi-contract claim should be dismissed because is it not available where, as here, the parties had "'actual, express agreement,' e.g. the Rate Lock Agreement." Mot. at 17–18. More specifically, Defendants argue that the Agreement has the "preclusive effect" of completely barring Plaintiff's quasi-contract claim because it shows "as a matter of law" that Plaintiff's loan closing was not delayed and that he did not pay an RLEF. Reply at 16–17. Plaintiff counters that his quasi-contract claim is viable because he has pled that his agreement to pay the RLEF was induced by Defendants' misrepresentations, and thus any express contract underlying the agreement is void. Opp. at 25. Alternatively, Plaintiff argues that the Agreement, even if not void as fraudulent, does not govern the fee at issue in his suit (the RLEF) because it pertains to a different type of fee (the up-front Extended Lock Fee). *Id.* at 26.

The Court finds that it is premature at this stage to determine whether the Agreement precludes Plaintiff from bringing a quasi-contract claim. To be clear, the Court is skeptical of the merits of Plaintiff's quasi-contract theory given that his complaint refers to representations Defendants allegedly made in Plaintiff's mortgage loan documents (presumably part of an express, enforceable contract between the parties) as evidence of Defendants' misconduct. *See* FAC ¶ 83. But viewing Plaintiff's pleading in the light most favorable to him, Plaintiff has sufficiently alleged that his RLEF payment claim is not based on any valid express contract, and the Court cannot conclude at this stage that any quasi-contract claim necessarily fails as a matter of law. *See Ellis v. J.P. Morgan Chase & Co.*, 950 F. Supp. 2d 1062, 1091 (N.D. Cal. 2013). Further, the question of whether the Agreement specifically governs the conduct at issue, and the determination of the parties' understanding of the Agreement's terms, cannot be resolved without further factual development. *See TSI USA LLC v. Uber Techs., Inc.*, No. 17-CV-03536-HSG, 2018 WL 4638726, at *5 (N.D. Cal. Sept. 25, 2018) (quasi-contract claim survived motion to dismiss where parties disputed the scope of the express agreements and their terms). As such, the

1  Court **DENIES** Defendants' motion to dismiss Plaintiff's quasi-contract claim.

### ii. Money Had and Received

Second, Defendants argue that Plaintiff has not sufficiently stated a claim for money had and received, and the Court agrees. "The elements of a money had and received claim are: (1) the statement of indebtedness in a certain sum, (2) the consideration, i.e., goods sold, work done, etc., and (3) nonpayment." *Lopez v. Bank of Am., N.A.*, 505 F. Supp. 3d 961, 975 (N.D. Cal. 2020) (citations and quotations omitted). In addition, "to recover on a claim for money had and received, a plaintiff must prove that the defendant received money that was intended to be used for the benefit of the plaintiff." *Id.* Defendants contend that Plaintiff's claim must be dismissed because Plaintiff cannot allege that the money Plaintiff seeks—the profits and/or interest Wells Fargo earned on the RLEFs—was intended to be used for the benefit of Plaintiff. Mot. at 19. Plaintiff counters that he had adequately pled the elements of the claim by alleging that he paid the RLEF "for the purpose of a receiving a rate lock extension," that the money was not used for that purpose, and that Defendants still "withhold [their] earnings" on the RLEFs. Opp. at 26–27.

Plaintiff's response confirms that his claim for money had and received cannot provide a basis for him to recover any amount beyond the RLEF charge itself. Plaintiff's theory is that Defendants' fraudulent receipt of the RLEF fee (which was plainly was intended for Plaintiff's benefit) entitles him to any money Defendants may have earned in retaining it. But Plaintiff fails to cite any legal support for this theory in the context of a claim for money had and received, and instead makes a general argument that disgorgement of profits may be a proper remedy for an unjust enrichment claim. *See* Opp. at 28. The Court finds Plaintiff's argument unpersuasive in the context of a money had and received claim, for which "the measure of the liability is the amount *received*" by the defendant. *Rotea v. Izuel*, 14 Cal. 2d 605, 611 (1939) (emphasis added). *See Zumbrun v. Univ. of S. California*, 25 Cal. App. 3d 1, 14 (1972) (claim for money had and received seeks relief that is "something in the nature of a constructive trust and . . . [o]ne cannot be held to be a constructive trustee of something he has not acquired"); *see also Util. Audit Co. v. City of Los Angeles*, 112 Cal. App. 4th 950, 958 (2003) ("a claim for money had and received can be based upon money paid by mistake"). Here, the only amount Defendants allegedly *received or*

United States District Court
Northern District of California

11

*acquired from Plaintiff* was the RLEF charge, which Plaintiff does not appear to dispute he has been refunded, and which Plaintiff's claim for money had and received does not seek to obtain as relief. *See* FAC ¶¶ 93 (claim seeks "entire amount of profits Defendants earned"). A different theory of liability might allow Plaintiff to recover the profits Defendants earned on the money he alleges that they unlawfully acquired from him, but it is not available as a remedy for a claim for money had or received. Accordingly, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's claim for money had and received without leave to amend.

### iii. Conversion

Third, Defendants argue that Plaintiff's conversion claim fails because Plaintiff has not pled a definite sum to which he and the class would be entitled. Mot. at 18, 19. Specifically, Defendants assert that it is not sufficient for Plaintiff to generally seek "all profits" earned on the wrongfully obtained RLEFs—he must also allege "how that amount might be determined." *Id.* at 19. In a similar vein, Defendants also argue that disgorgement of profits is not an available remedy for conversion under the circumstances here because Plaintiff cannot allege ownership or right to possession of Defendants' profits on the RLEFs. Mot. at 20.[3]

Under California law, "at the motion to dismiss stage of litigation plaintiffs are only required to allege a sum that is capable of identification." *Natomas Gardens Inv. Grp., LLC v. Sinadinos*, 710 F. Supp. 2d 1008, 1023 (E.D. Cal. 2010) (citing California authority). *See Haas v. Travelex Ins. Servs. Inc.*, 555 F. Supp. 3d 970, 982 (C.D. Cal. 2021) ("The law does not require plaintiffs to plead the exact dollar amount of a sum certain at the pleading phase. Instead, it is sufficient to plead facts showing that the amount sought is capable of being reduced to a sum certain."). Defendants cite no authority for their assertion that in order for Plaintiff to allege a sum that is "capable of identification," he must guess at how that sum might be calculated, before any evidentiary record has been developed. Likewise, Defendants provide no authority for their argument that the profits Plaintiff seeks are incalculable as a matter of law, or that Plaintiff cannot

---

[3] Defendants do not appear to specifically challenge the part of Plaintiff's conversion claim that seeks interest earned on the RLEFs. *See* FAC ¶ 104.

allege a right to disgorgement of profits as a matter of law.[4]  By contrast, the cited cases confirm that disgorgement may be available as a remedy for conversion if the plaintiff can show an amount of profits that is specific and identifiable.  *See Second Measure, Inc. v. Kim*, 143 F. Supp. 3d 961, 981 (N.D. Cal. 2015) (court found that business profits were proper subject of conversion claim because plaintiff alleged he was entitled to them); *Carrey v. Boyes Hot Springs Resort, Inc.*, 245 Cal. App. 2d 618, 622 (1966) (disgorgement of defendants' profits available to plaintiffs whose property was converted by defendants and used to service plaintiffs' customers).  Further, California law recognizes that a plaintiff may have an interest in the benefit unjustly received by a defendant even if the plaintiff has not suffered a corresponding loss.  *See Cnty. of San Bernardino v. Walsh*, 158 Cal. App. 4th 533, 542 (2007).

Here, Plaintiff seeks all profits Defendants earned on the RLEFs it allegedly unlawfully charged to Plaintiff and putative class members.  *See* FAC ¶¶ 93, 102.  Plaintiff alleges that he and the class have suffered damages in the form of profits and/or interest they would have earned on the unlawfully converted RLEFs.  *See id.* at 104.  The Court finds that Plaintiff has sufficiently met his burden at this stage to allege that the sum he seeks is "capable of identification."  *See Brock v. Concord Auto. Dealership LLC*, No. 14-CV-01889-HSG, 2015 WL 3466543, at *6 (N.D. Cal. June 1, 2015).  Whether he can actually identify the profits Defendants earned on the RLEFs is a question better reserved for summary judgment.  *See PCO, Inc. v. Christensen*, 150 Cal. App. 4th 384, 397 (2007) (affirming summary judgment on conversion claim because evidence in the record of the allegedly converted sum was "varying by millions of dollars" and too uncertain to be identifiable).  The Court thus **DENIES** Defendants' motion to dismiss Plaintiff's conversion

---

[4] In the cases Defendants rely on, plaintiffs failed to adequately plead an identifiable sum because they could not sufficiently allege an interest in the money at issue.  That is not the case here.  *See Walter v. Hughes Commc'ns, Inc.*, 682 F. Supp. 2d 1031, 1048 (N.D. Cal. 2010) (plaintiff failed to state claim for money had and received seeking termination fees paid to communications company because court already determined that termination provision of relevant contract did not provide cause of action to recover the fees); *Lopez v. Bank of Am.*, N.A., 505 F. Supp. 3d 961, 975 (N.D. Cal. 2020) (no conversion claim or money had and received claim because court already determined plaintiff did not have a right to the possession of the money at issue); *Sundance Image Tech., Inc. v. Inkjetmall.com, Ltd.*, No. 02CV2258-B (AJB), 2005 WL 8173280, at *10 (S.D. Cal. Oct. 14, 2005) (conversion claim failed because plaintiffs "provided no evidence that Defendants took Plaintiffs' product without permission").

13

1  claim.

2  **IV. CONCLUSION**

3  The Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion to dismiss,
4  Dkt. No. 62. The Court **DISMISSES** without leave to amend Plaintiff's claim for money had and
5  received.

6  The Court further **SETS** case a case management conference on January 14, 2025, at 2:00
7  p.m. The hearing will be held by Public Zoom Webinar. All counsel, members of the public, and
8  media may access the webinar information at https://www.cand.uscourts.gov/hsg. All attorneys
9  and pro se litigants appearing for the case management conference are required to join at least 15
10 minutes before the hearing to check in with the courtroom deputy and test internet, video, and
11 audio capabilities. The parties are further **DIRECTED** to file a joint case management statement
12 by January 7, 2024.

13 **IT IS SO ORDERED.**

14 Dated:   12/18/2024

HAYWOOD S. GILLIAM, JR.
United States District Judge