| | |
|---|---|
| ROBBINS GELLER RUDMAN & DOWD LLP<br>Shawn A. Williams (SBN 213113)<br>Post Montgomery Center<br>One Montgomery Street, Suite 1800<br>San Francisco, CA 94104<br>Telephone: 415/288-4545<br>415/288-4534 (fax)<br>shawnw@rgrdlaw.com<br><br>– and –<br><br>Stuart A. Davidson<br>Lindsey H. Taylor<br>Facundo M. Scialpi<br>225 N.E. Mizner Boulevard, Suite 720<br>Boca Raton, FL 33432<br>Telephone: 561/750-3000<br>561/750-3364 (fax)<br>sdavidson@rgrdlaw.com<br>ltaylor@rgrdlaw.com<br>fscialpi@rgrdlaw.com<br><br>[Additional counsel listed in signature block]<br><br>*Counsel for Plaintiff and the Class* | SELENDY GAY PLLC<br>Sean P. Baldwin<br>Zachary Smith<br>Drake Reed<br>Jacob Maiman-Stadtmauer<br>1290 Avenue of the Americas<br>New York, NY 10104<br>Telephone: 212/390-9000<br>212/390-9399 (fax)<br>sbaldwin@selendygay.com<br>zsmith@selendygay.com<br>dreed@selendygay.com<br>jmaimanstadtmauer@selendygay.com<br><br>SEEGER WEISS LLP<br>Christopher L. Ayers<br>Steven J. Daroci<br>55 Challenger Road<br>Ridgefield Park, NJ 07660<br>Telephone: 973/639-9100<br>973/679-8656 (fax)<br>cayers@segerweiss.com<br>sdaroci@seegerweiss.com |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY MORRIS, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>WELLS FARGO & COMPANY, WELLS FARGO BANK, N.A., and WELLS FARGO HOME MORTGAGE, INC.,<br><br>　　　　　　　　　Defendants. | Case No. 4:23-CV-03277-HSG<br><br>STIPULATED ORDER RE ELECTRONICALLY STORED INFORMATION |

4905-3801-2462.v2

The parties stipulate as follows with respect to the production of electronically stored information ("ESI") and offer as a proposed Order:

1. <u>Purpose</u>.  This Order will govern discovery of electronically stored information ("ESI") in the above-captioned matter as a supplement to the Federal Rules of Civil Procedure (but not modifying the parties' obligations under the Federal Rules unless set forth specifically herein).

2. <u>Identification of Relevant Documents and Custodians</u>.  The parties will disclose the custodians and data sources from which they are collecting and producing relevant documents.

3. <u>Meet and Confer Requirement</u>.  The parties will not seek Court intervention without first attempting to resolve any disagreements in good faith, based upon all reasonably available information.

4. <u>Easily Targeted Responsive Documents</u>.  A producing party may collect some documents without using search terms and instead doing "targeted" collections from custodians or sources based on documents custodians identify in interviews or other discussions with counsel or by collecting folders identified as containing responsive materials.  No party has a duty to collect and process all data from certain sources and run search terms if such collection, processing and searching is not proportional to the needs of the case or where targeted collections are a more efficient and effective way to gather the materials.

5. <u>Search Terms</u>.  If the producing party is filtering documents using search terms or other culling methodology, the producing party will disclose the list of search terms to the receiving party and provide the receiving party the opportunity to propose additional terms, where needed.  Where there is a dispute about the search terms, the producing party will provide information to the receiving party regarding the proposed terms, which may include hit reports and/or other information that will assist in resolving the dispute.

6. <u>Technology-Assisted Review/Generative AI</u>.  No party shall use predictive coding/TAR or Generative AI for the purpose of culling the documents to be reviewed or produced without notifying the opposing party prior to use and with ample time to meet and confer in good faith regarding a mutually agreeable protocol for the use of such technologies.  No party shall disclose documents or information received from a producing party to any open Generative AI tool (*i.e.*, ChatGPT) or any substantially similar tool that discloses the information contained therein to third parties not party to this matter.

7. <u>Format for ESI Productions</u>.  The parties agree that all documents maintained in electronic, native format and collected for this case[1] are to be produced in an "imaged" file format, where reasonably feasible, with a corresponding load file containing OCR or extracted text, and metadata fields, as described below.  The parties agree that Excel spreadsheets, Microsoft Access files and .CSV files, presentation files (*e.g.*, PowerPoint), audio, and video will be provided in native format with a TIFF placeholder and that other files that cannot be rendered to TIFF in a readable format will be produced in native format as well, where reasonably feasible.  Documents containing tracked changes will be provided in color (color .JPG or color TIFF) so that the track changes/comments are showing and/or in native.  If the producing party collects short message communications (*e.g.*, text messages, WhatsApp, Slack, iMessage, Teams, Google Chat, Bloomberg chats), the parties will meet and confer about the format/fields to be provided for that data. Other specific information regarding the production format is provided below:

(a) <u>Native</u>.  Microsoft Access files, Excel files, .CSV files, other similar databases and spreadsheet files, presentation files (*e.g.*, PowerPoint), audio, video, and other files

---

[1] If documents were previously collected by the producing party in connection with another case and are not maintained in a format that allows the producing party to reproduce them in the format specified herein, the producing parties should work together to determine a reasonable format in which such documents may be produced and, where necessary, the producing party may produce the documents in the same format used in the previous matter.

that cannot be rendered in a readable TIFF format shall be produced in the format which the electronically stored information was originally created, where reasonably feasible. Native Files will be produced together with a placeholder TIFF image. Each TIFF placeholder will contain language indicating that the document is being produced in native format. A relative file path to the native file shall be provided in the load file as described in item (e), below. To the extent a party obtains through discovery a file or document that they believe is not adequately represented in an image file format, they may request that the producing party produce the file or document in native format, the production of which may not unreasonably be withheld. Excel spreadsheets that are redacted may be redacted natively. All redacted documents, including natively redacted spreadsheets, should indicate that they have redactions using the Redaction field noted in Table 1.

   (b) <u>Imaged File</u>. Documents will be produced in single page TIFF or JPG image format, converted from the native file. The specifications regarding images are:

    (i) All images shall be produced in 300 DPI Group IV black and white Tagged Image File Format ("TIFF") except that if an original document contains color, and the color is necessary to understand the meaning or content of the document, the document shall be produced as single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image;

    (ii) For redacted documents, track changes and comments in Word documents and PowerPoint notes and shall also be imaged in color so that such content is viewable on the images.

    (iii) Bates numbers shall be branded to the images;

    (iv) Images shall be single page image files (one file for each page of a document).

   (c) <u>Image Load Files</u>. An image load file in a standard .opt load file format shall be included;

(d) <u>OCR or Extracted Text File</u>.  An OCR or Extracted text file which corresponds to each produced document shall be provided as follows:

(i) Document level OCR text for redacted documents or Extracted text for ESI not containing redaction are to be located in the same directory as its image file;

(ii) The text file name shall be the same name of the first image page for the document set, followed by .txt;

(iii) An OCR or Extracted text file containing the produced document's content will be provided for all documents whether it is produced as an image file or natively unless the document was originally maintained in image, nonsearchable format and the producing party has chosen not to OCR the document because the expense is not justified, given the types of documents and utility of the OCR.  In that situation, the producing party will produce the document as it was kept in the ordinary course of business, without OCR, and will identify for the receiving party in the production cover letter the Bates numbers of the documents that have not had OCR applied.  If documents are redacted, OCR will be taken of the redacted document and provided.

(e) <u>Load File</u>. A load file shall be provided in a ".dat" file format that contains metadata fields in a delimited text load file.  For the Concordance .dat, the parties should use Concordance standard delimiters (ASCII 020 corresponding to a comma, ASCII 254 corresponding to a double quote, ASCII 174 corresponding to a new line, and a semicolon used to separate values).  The fielded data should include all the below metadata fields for each document produced.  The first line of the data load file should contain the field headers indicating the contents of each field, and each subsequent line should contain the fielded data for each document, where such fielded data is reasonably available. For ESI other than e-mail and e-docs that do not conform to the metadata listed in Table 1, such as text messages, Instant Bloomberg, iMessage, Google

1 | Chat, Yammer, Slack, etc., the parties will meet and confer as to the appropriate metadata fields
2 | to be produced.

## TABLE 1

| FIELD NAME | FIELD DESCRIPTION | APPLICABLE FILE TYPE(S) |
|---|---|---|
| BEGBATES | Beginning production number for a given file/document | Email, E-Doc and Other[2] |
| ENDBATES | Ending production number for a given file/document | Email, E-Doc and Other |
| BEGATTACH | Production number of first page of parent | Email, E-Doc and Other |
| ENDATTACH | Production number of last page of last attachment | Email, E-Doc and Other |
| CUSTODIAN | Person or other source from whom/which files were collected | Email, E-Doc and Other |
| ALLCUSTODIAN | Other custodians the producing party agreed to produce and who had the file but where the file was eliminated through de-duplication | Email and E-Doc |
| FILEEXT | File extension | Email and E-Doc |
| HASH | MD5 Hash Value | E-mail and E-Doc |
| SUBJECT | Subject | E-mail |
| FROM | Sender | E-mail |
| TO | Recipient | E-mail |
| CC | Copyee | E-mail |
| BCC | Blind Copyee | E-mail |
| DATESENT | Date Sent & Time (MM/DD/YYYY HH:MM) | E-mail |
| DATERECEIVED | Date Received & Time (MM/DD/YYYY HH:MM) | E-mail |
| AUTHOR | Author | E-Doc |
| LASTEDITEDBY | The name of the person to last edit the document from extracted metadata | E-Doc |

---

[2] Other is defined as documents maintained in image file format or that were scanned from hard copy.

STIPULATED ORDER RE ELECTRONICALLY STORED INFORMATION - 4:23-CV-03277-HSG     - 6 -
4905-3801-2462.v1
4905-3801-2462.v2

| FIELD NAME | FIELD DESCRIPTION | APPLICABLE FILE TYPE(S) |
|---|---|---|
| CREATE DATE | Date Created & Time (MM/DD/YYYY HH:MM) | E-Doc |
| DATELASTMOD | Date modified & Time (MM/DD/YYYY HH:MM) | E-Doc |
| TRACKEDCHANGES | Y/N indicator whether document contains tracked changes | E-Doc |
| FILENAME | Original file name | E-Doc |
| ALLRECIPIENTS | All recipients on an e-mail thread that has been dethreaded. | E-mail |
| FILEPATH | File path location in which the document was stored in the usual course of business | E-mail, E-Doc |
| NATIVEFILE | Path to native file as produced | Native |
| ISEMBEDDED | Y/N whether the file is embedded in another document | E-Doc |
| REDACTED | "Yes" if document contains redaction | E-mail, E-Doc and Other |
| TEXTPATH | Path to OCR or extracted text file | E-mail, E-Doc and Other[3] |

---

[3] A producing party may not OCR documents originally maintained in hard copy or in imaged file format if the expense is not justified and may produce them as they are kept in the ordinary course of business. In that circumstance, the producing party will identify the Bates numbers of the documents that have not had OCR applied and for which extracted text is not available in the production cover letter.

8.  **Format for Hard-Copy (*i.e.*, non-ESI) Productions and Static Images**.  The following applies to documents that exist in hard-copy format or in static image file format and are therefore unavailable in native electronically stored information ("ESI") format (*e.g.*, documents scanned from hard copy, or documents maintained in static image format, like TIFF or PDF. If an original document contains color, and the color is necessary to understand the meaning or content of the document, the document shall be produced as single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image. All such documents that are amenable to being imaged should be produced in the same format specified for ESI, above, except that the only metadata fields provided will be BegBates, EndBates, BegAttach, EndAttach, Custodian and TextPath.  OCR will also be provided, if reasonably available, instead of extracted text.[4]  For documents collected prior to this litigation, see footnote 1, above.

9.  **Documents from Structured Data/Databases**,  The producing party will produce data exported from databases in a reasonably useable format, such as Excel.  If data from databases or other structured data sources cannot be produced in an Excel format, the parties will meet and confer to discuss the issue.

10. **De-duplication**.  The parties shall de-duplicate ESI across custodial and non-custodial data sources (*i.e.*, global deduplication) as long as Duplicate Custodian information is provided, as specified above.  Duplicates shall only be identified by industry standard MD5 or SHA-1 hash value along with family information so that only exact families are de-duplicated. The parties agree that an e-mail that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an e-mail that does not include content in those fields, even if all remaining content in the e-mail is identical. The Parties shall not remove relevant documents from production

---

[4]  *See* footnote 3.

using email thread suppression.  However, if a particular set of documents or issues arise that creates an undue burden for production without the use of email thread suppression, the producing party will promptly provide notification to the requesting party and the parties will meet and confer on the issue.

11. <u>Embedded Files</u>.  Embedded files that are produced as attachments to the document that contained the embedded file, will be produced with the parent/child relationship preserved. The embedded files will be marked with a "YES" in the load file under the "Is Embedded" metadata field. The parties agree logos need not be extracted as separate documents as long as they are displayed in the parent document.

12. <u>Attachments</u>.  The parties agree that if any part of a communication or its attachments is responsive, the entire communication and attachments will be produced, except any attachments that must be withheld on the basis of privilege.  The parties will meet and confer about whether there is an appropriate basis for withholding a family document for any reason other than attorney-client or work product privilege.  The attachments will be produced sequentially after the parent communication.  The parties will meet and confer regarding the collection, search, and production of hyperlinked files, to the extent such hyperlinked files are identified.

13. <u>Compressed File Types</u>.  Compressed file types (*e.g.*, .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level document or file is extracted.

14. <u>Privileged Documents</u>.  The Parties recognize that some Documents may be redacted or withheld on the grounds of attorney-client privilege, work-product doctrine, or other applicable privilege or immunity from disclosure (collectively, "privilege").  The Parties agree to produce a privilege log on a rolling basis on a schedule agreed upon by the parties.  For each

responsive Document withheld or redacted because of privilege, the parties agree to include the following information on the privilege log unless it creates an undue burden[5];

    (a)    Custodian or source (the name of the person(s) or non-custodial source from which the Document was collected);

    (b)    Date of the Document, based on the metadata, or on the face of the document if the metadata is insufficient;

    (c)    Author(s);

    (d)    For Documents produced, but redacted on the ground of privilege, the starting and ending Bates number and for other documents not produced, a numerical identifier;

    (e)    Recipient(s) fields (To, CC(s), BCC(s) in separate fields) or as stated on the face of the document if metadata is inadequate;

    (f)    General description of the nature and subject matter of the Document;

    (g)    Specification of the privilege claimed; and

    (h)    The basis for the privilege claim.

When the Document is an e-mail thread containing one or more separate e-mails, all of which have been withheld in full, fields (f), through (h), above shall be logged as one entry in the top line email, as long as the Party withholding Documents adequately describes the basis of the privilege claim. The metadata fields described in (a) through (c), and (e), above will be provided separately for each of the lesser inclusive emails in a manner that shows the relationship between those fields and the top-line email with (f), through (h). Each Document within a family for which a Party claims a privilege shall be separately logged. The Parties agree that a Party need not include on its privilege log any Document or communication for which the Party asserts privilege

---

[5] If, due to the number of privileged documents involved, creating a privilege log with the information noted above would create an undue burden, the parties will meet in good faith and discuss whether an alternative logging procedure for certain categories of documents may be appropriate.

STIPULATED ORDER RE ELECTRONICALLY STORED INFORMATION - 4:23-CV-03277-HSG    - 10 -

4905-3801-2462.v2

that is (i) dated after the commencement of this Action; and (ii) covered by the attorney-client privilege, attorney work product protection, and/or any other applicable privilege or protection. If any disputes arise concerning any privilege log, the Parties shall meet and confer to try to reach a mutually agreeable solution. If they cannot agree, the matter may be brought to the Court.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

Dated: March 25, 2025

| | |
|---|---|
| **ROBBINS GELLER RUDMAN & DOWD LLP** | **WINSTON & STRAWN LLP** |
| By: *s/ Stuart. A. Davidson* | By: *s/ Amanda L. Groves* |
| Stuart A. Davidson* | Amanda L. Groves |
| Lindsey H. Taylor* | agroves@winston.com |
| Facundo M. Scialpi** | 333 S. Grand Avenue, 38th Floor |
| 225 N.E. Mizner Boulevard, Suite 720 | Los Angeles, CA 90071 |
| Boca Raton, FL 33432 | Telephone: (213) 615-1700 |
| Telephone: 561/750-3000 | Facsimile: (213) 615-1750 |
| 561/750-3364 (fax) | |
| sdavidson@rgrdlaw.com | Kobi K. Brinson *(pro hac vice)* |
| ltaylor@rgrdlaw.com | kbrinson@winston.com |
| fscialpi@rgrdlaw.com | Stacie C. Knight *(pro hac vice)* |
| | sknight@winston.com |
| Shawn A. Williams | 300 South Tryon Street, 16th Floor |
| Post Montgomery Center | Charlotte, NC 28202 |
| One Montgomery Street, Suite 1800 | Telephone: (704) 350-7700 |
| San Francisco, CA 94104 | Facsimile: (704) 350-7800 |
| Telephone: 415/288-4545 | |
| 415/288-4534 (fax) | *Attorney for Defendants Wells Fargo & Company and Wells Fargo Bank, N.A.* |
| shawnw@rgrdlaw.com | |

Chad Johnson*
Noam Mandel**
Desiree Cummings**
Jonathan Zweig**
420 Lexington Avenue, Suite 1832
New York, NY 10170
Telephone: 212/432-5100
ChadJ@rgrdlaw.com
Noam@rgrdlaw.com
DCummings@rgrdlaw.com
JZweig@rgrdlaw.com

**SELENDY GAY PLLC**
Sean P. Baldwin*
Zachary Smith*
Drake Reed*
Jacob Maiman-Stadtmauer*
1290 Avenue of the Americas
New York, NY 10104
Telephone: 212/390-9000
212/390-9399 (fax)
sbaldwin@selendygay.com
zsmith@selendygay.com
dreed@selendygay.com

STIPULATED ORDER RE ELECTRONICALLY STORED INFORMATION - 4:23-CV-03277-HSG - 12 -

4905-3801-2462.v2

jmaimanstadtmauer@selendygay.com

**SEEGER WEISS LLP**
Christopher Ayers*
Steven J. Daroci*
55 Challenger Road
Ridgefield Park, NJ 07660
Telephone: 973/639-9100
973/679-8656 (fax)
cayers@seegerweiss.com
sdaroci@seegerweiss.com

*Attorneys for Plaintiff and the Proposed Class*

**Pro hac vice*
***Pro hac vice* forthcoming

STIPULATED ORDER RE ELECTRONICALLY STORED INFORMATION - 4:23-CV-03277-HSG   - 13 -

4905-3801-2462.v2

**LOCAL RULE 5-1(I)(3) ATTESTATION**

Pursuant to Local Rule 5-1(i)(3), I attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing of this Stipulation and have authorized the filing of this Stipulation.

Dated: March 25, 2025               By: *s/ Stuart. A. Davidson*
                                         Stuart A. Davidson

1  PURSUANT TO STIPULATION, IT IS SO ORDERED.
2
3
4  DATED: 3/31/2025                    /s/ Haywood S. Gilliam, Jr.
                                       _____
5                                      Hon. Haywood S. Gilliam, Jr.
                                       United States District Judge