UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY MORRIS,<br><br>        Plaintiff,<br><br>    v.<br><br>WELLS FARGO & COMPANY, et al.,<br><br>        Defendants. | Case No. 23-cv-03277-HSG (TSH)<br><br>**DISCOVERY ORDER**<br><br>Re: Dkt. Nos. 124, 126 |

The Court held a hearing on December 1, 2025 concerning ECF Nos. 124 and 126 and now issues the following order.

**A.**    **ECF No. 124**

The dispute in ECF No. 124 concerns the individual loan files the Court ordered Wells to produce in ECF No. 99, which the Court issued on June 13, 2025. The order directed Wells to produce the individual loan files at issue and encouraged the parties to meet and confer to see if sampling would be workable. Those meet and confer efforts were unsuccessful. Plaintiff proposed that Wells produce a sample of 5,000 loan files – a tiny fraction of the 390,000 loan files Wells claims are at issue. Wells proposed a sample of 25 loan files.

At the hearing Plaintiff said he would be satisfied with a sample of 1,000 loan files. Wells contended that it has produced 35 loan files, though Plaintiff's counsel was unable to confirm that at the hearing. Wells contended that if it were ordered to produce 1,000 loan files, that would likely take four to five months because loan files average about 1,000 pages each, so that would amount to about a million pages of documents. In response to the Court's question whether Wells would be done by now had it started collecting 1,000 loan files back in June when the Court issued its discovery order, Wells candidly said yes.

Given that fact discovery has closed, and the parties' meet and confer efforts at sampling were unsuccessful, the Court must now decide what to do. From the parties' positions during meet and confer, and as further made clear during the hearing, neither side thinks that producing all of the loan files is necessary or even useful. Accordingly, to the extent that the order at ECF No. 99 required that, the Court **MODIFIES** its order to remove that requirement. The Court thinks that Plaintiff's proposal that Wells should produce 1,000 loan files is appropriate. That amounts to a sample of 0.256% of the 390,000 loan files at issue, and Wells acknowledged that it was possible and feasible to make that production under the existing discovery deadlines. The Court thinks that Wells' proposal to do a sample of only 25 loan files was not a good faith attempt to work out a sampling compromise. Producing such a small sample would not likely provide insight into whether common factual issues predominate among the alleged class members, and reasonable defense counsel should have known that. The Court does not know whether it will actually take Wells four to five months to produce 1,000 loan files, as Wells claims. But even if that estimate is correct, Wells had plenty of time to do it. Accordingly, the Court **ORDERS** Wells to produce a random sample of 1,000 loan files.

**B.     ECF No. 126**

Wells moves for a protective order concerning Plaintiff's Rule 30(b)(6) deposition topics 6, 7, 11 and 12. The Court grants the motion.

Here is topic 6:

> Wells Fargo's overall use of proceeds from customers or gains therefrom for each year from the Start of the Class Period through the present, including, but not limited to, the facts and circumstances thereof, and:
>
> (a) your annual rate of return on capital for each year;
>
> (b) your rate of return on assets;
>
> (c) your weighted average cost of capital;
>
> (d) your net interest margin;
>
> (e) the average yield on Your loan portfolio;
>
> (f) the cumulative return You earned on a dollar invested at the Start of the Class Period through the end of 2023;

2

    (g) any analysis of the value, cost, or other financial metric of the RLEF or UELF gains and proceeds;

    (h) any other rate You contend is the appropriate measure of Wells Fargo's enrichment, revenues, income, or financial gains from its possession of the RLEF and UELF funds it later refunded; and

    (i) the methodology and formulae used to calculate each of the above.

Topic 7:

  Wells Fargo's use of proceeds from RLEFs, UELFs, or gains therefrom, including, but not limited to, the facts and circumstances thereof, and:

    (a) sale of Mortgages, or assets including Mortgages, and any proceeds;

    (b) your annual rate of return on capital for each year;

    (c) your rate of return on assets;

    (d) your weighted average cost of capital;

    (e) your net interest margin;

    (f) the average yield on Your loan portfolio;

    (g) the cumulative return You earned on a dollar invested at the Start of the Class Period through the present;

    (h) any analysis of assessing the value, cost, or other financial metric of RLEF or UELF proceeds;

    (i) any other rate You contend is the appropriate measure of Wells Fargo's enrichment, revenues, income, or financial gains from its possession of the RLEF and UELF funds it later refunded; and

    (j) the methodology and formulae used to calculate each of the above.

Topic 11:

  Wells Fargo's efforts to retain, preserve, destroy, or delete correspondence, electronic records, and hard copy documents concerning RLEFs and UELFs assessed between the Start of the Class Period and February 28, 2017, or remediation efforts, including, but not limited to, the facts and circumstances thereof, and:

    (a) the date(s) on which Wells Fargo issued litigation hold(s) concerning its RLEF and UELF practices and policies between the Start of the Class Period and February 28, 2017;

    (b) the facts and circumstances that gave rise to a reasonable anticipation of potential RLEF or UELF misconduct litigation at the time Wells Fargo first issued such a hold and not earlier;

    (c) who received each such hold and the facts and circumstances regarding Wells Fargo's choice to send the litigation hold only to those individuals;

    (d) the facts and circumstances regarding the expiration (if any) of any such litigation hold(s); and

    (e) the retention procedures that governed documents related to CFPB or OCC investigations into or enforcement actions concerning Wells Fargo, including the investigations into the RLEFs and UELFs.

And topic 12:

    Wells Fargo's efforts to search for or locate correspondence, electronic records, hard copy documents, or custodians concerning this action.

The deposition notice defines the Start of the Class Period as "the earlier of January 1, 2003, or the earliest date on which a potential borrower initiated or submitted any Mortgage application, inquiry, or request for which Wells Fargo subsequently issued a refund pursuant to RLEF or UELF remediation efforts."

Topics 6, 7 and 11 are unworkable as deposition topics. They might be fine as interrogatories. However, they require a witness to memorize reams of detailed information concerning lengthy periods of time, The Court recognizes that witnesses can take notes with them to a deposition, but even with notes, the level of detail and length of time covered by these topics makes it unlikely that any human being could be prepared to testify competently to the scope of these topics.

Topic 12 does not suffer from that problem. Rather, it's discovery about discovery, and it's not proportional to the needs of the case because there's no particular reason for it. The Court agrees with Plaintiff that detailed information about another party's information systems and other information resources can be relevant and proportional. But that's not what topic 12 is about. It doesn't identify any information source or database and seek testimony about it to help Plaintiff's counsel understand how Wells stores and organizes certain types of information. Rather, topic 12 is a general inquiry into everything Wells did to find documents or custodians, and the Court does not think that is proportional to the needs of the case.

1   Accordingly, Wells' motion for a protective order is **GRANTED**.

2   **IT IS SO ORDERED.**

4   Dated: December 1, 2025

THOMAS S. HIXSON
United States Magistrate Judge